# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **OSCAR SALAZAR, *et al.*,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 93-452 (GK)** |
| | : | |
| **DISTRICT OF COLUMBIA, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

On July 10, 2006, this Court entered an Order addressing Defendants' persistent and long-standing failure to comply with Court deadlines ("Penalties Order") **[Dkt. #1175]**. After setting forth a long history of missed deadlines, the Order requires Plaintiffs to "monitor Defendants' compliance with meeting deadlines," including those contained in the January 22, 1999 Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997 ("Settlement Order") **[Dkt. #663]**, other Court Orders, and the negotiation requirement in paragraph 80 of the Settlement Order. ¶ 2, July 10, 2006 Order. The Penalties Order also requires Plaintiffs to file a Praecipe if Defendants miss one or more of these deadlines. Paragraph 4 of the Penalties Order also provides that "[a]fter each calendar quarter, if any penalties accrue during the quarter, Plaintiffs shall file a <u>praecipe</u> with this Court documenting the penalties that accrued."

Paragraph 2 of the Penalties Order sets out the sanctions for failure to comply with designated deadlines:

> $100 per day for every day within 5 days of the deadline that Defendants fail to complete the required action, $250 per day for every day from 6 to 15 days, $500 per day for every day from 16 to 30 days, $1,000 per day for every day from 30 to 60 days, and $5,000 per day for every day over 60 days.

The Court explained in its accompanying Memorandum Opinion at p. 3 [**Dkt. #1176**] that:

> by setting out in black and white what financial penalties the Defendants will face if they continue their failure to adhere to well-established deadlines, Defendants will be put on full notice of the sanctions which will be imposed.  Thus, by warning Defendants of the risk they face for violation of Court Orders and relevant Court rules, they should be deterred by this civil, coercive remedy from similar conduct in the future.

In conformity with paragraph 4 of the Penalties Order, Plaintiffs have filed praecipes for the third quarter of 2006 [**Dkt. #1234**], the fourth quarter of 2006 [**Dkt #1261**], the second quarter of 2007 [**Dkt. #1296**], the third quarter of 2007 [**Dkt. #1317**], and the first quarter of 2008 [**Dkt. #1354**].  The Court will now address each of these praecipes separately.

1.      For the third quarter of 2006, Plaintiffs request that the Court require Defendants to pay $1,500 in penalties.[1]  Plaintiffs argue that Defendants were required to provide responses to discovery which were due August 14, 2006, that Defendants waited until August 22, 2006 (after Plaintiff had filed a praecipe notifying the Court of Defendants' failure) to file a Motion for Extension of Time within which to provide such responses [**Dkt. #1206**], and that Defendants submitted their discovery responses and document production on August 24, 2006, before the Court had ruled on the Motion for an Extension of Time.

Defendants provide no valid reason for their failure to comply with Court deadlines.  Their excuse of "inadvertent error" is simply unacceptable.  Filing twenty days late does not constitute "inadvertent error."  Therefore, for the third quarter of 2006, $1,500 in penalties have accrued and are assessed against Defendants.

---

[1]      Plaintiffs requested in all their Praecipes that the penalties be paid to the Clerk of Court for placement in an escrow account.

2.      For the fourth quarter of 2006, Plaintiffs request that the Court require Defendants to pay $39,800 in penalties.

a.      Defendants failed to distribute the Dental Brochure on April 15, 2006, as required by the Dental Order of October 18, 2004 [**Dkt. #1033**].  Paragraph 2(b) of that Order requires distribution of the Dental Brochure to "licensed dentists and pediatric health care providers." After admitting to the Court that the Brochure was mailed to Medicaid providers on May 2, 2006, rather than as required on April 15, 2006, Defendants also admitted the notice had not been sent, as required by the October 18, 2004 Order, to all licensed dentists and pediatric health care providers regardless of whether they were Medicaid providers.  Defendants promised the Court they would do so by October 1, 2006.  Defendants failed to do so.  On December 15, 2006, 43 days after the Brochure should have been mailed or Defendants should have requested an extension of time, Defendants finally filed a motion seeking an extension of time until February 7, 2007 within which to distribute the Dental Brochure [**Dkt. #1255**].  What is more, in a letter of December 22, 2006 to Plaintiffs, Defendants stated that they were not able to identify "pediatric health care providers" and therefore could not send them the required Brochure.  As of December 31, 2006, no Brochure had been sent to any pediatric health care providers.

In explanation, Defendants claim first that the delay in mailing the Dental Brochure occurred because the District of Columbia lacked funds at the end of Fiscal Year 2006 to produce and mail them.  However, this excuse is of little help to Defendants.  If the Brochure had been mailed by April 15, 2006, a date in the middle of the Fiscal Year, when it was supposed to have been, Defendants

would not have faced the lack of funds  at the end of the Fiscal Year, which ended on September 30, 2006.[2]

Second, Defendants argue that when they promised the Court to send the Brochure by October 1, 2006, they did not mean October 1, 2006, immediately after the beginning of the new Fiscal Year, but meant they would send the Brochure only after completion of what is always a lengthy process of soliciting, negotiating and awarding a contract, as well as performing the work required.  This argument is equally unpersuasive.  The simple answer is that if Defendants meant October 15 or October 30 or November 1 or November 30, they should have said so, instead of saying October 1.  The bottom line is that Defendants did not even file their request for an extension of time until six months after the original Dental Order deadline of April 15, 2006, and two and a half months after the date they themselves promised to distribute the Brochure,  namely, October 1, 2006,

Third, if, as Defendants argue, they believed that the term "pediatric care providers" in the Dental Order was ambiguous and/or vague, they should have sought clarification as to its meaning long before the April 15, 2006 deadline.  The Dental Order was signed October 18, 2004.  Thus, Defendants had well over a year to obtain a clarification of the language.

Fourth, Defendants complain that Plaintiffs are partly to blame because they could have suggested a list of providers that would satisfy the requirement in the Dental Order.  This argument is totally disingenuous.  Aside from the fact that it is not Plaintiffs' responsibility to help Defendants comply with Court Orders, Plaintiffs in fact did specifically suggest that, at the very least,

---

[2]      Importantly, none of Defendants' excuses would have been necessary had they simply filed timely requests for extension of time, as suggested by the Court in its July 10, 2006 Order, at p. 3-4.

Defendants provide notice to all members of the District of Columbia Chapter of the American Academy of Pediatricians in order to comply with the October 18, 2004 Order.

Finally, Defendants argue that the Court should stay its ruling until it rules on Defendants' pending Motion to Vacate the Dental Order.  Defendants are wrong.  They are under an obligation to comply with existing Orders unless and until any pending motions to vacate are granted.  Were the Motion to Vacate to be granted in the future, appropriate refunds from the Court Registry could be made.

        b.     Defendants do not contest a $300 sanction for their failure to timely seek an extension of time within which to oppose Plaintiffs' Attorneys' Fees Petition for the second half of 2005.

Therefore, for the fourth quarter of 2006, $39,800 in penalties have accrued and are assessed against Defendants.

        3.     For the second quarter of 2007, Plaintiffs request that the Court require Defendants to pay $124,000 in penalties.

        a.     Plaintiffs argue that Defendants failed to provide a complete Annual Oral Health Summary Report by April 15, 2007, as required by the Dental Order of October 18, 2004. Plaintiffs acknowledge that Defendants submitted the Report in question on April 17, 2007, but argue that penalties should be imposed because the report did not include data for those children who are class members enrolled in the fee-for-service Medicaid program.  No such information had been provided by July 2, 2007, the end of the second quarter of 2007, and Plaintiffs request $110,500 in penalties.

Defendants acknowledge that the information relating to children in the fee-for-service program was not provided, but explain that data collection issues precluded submission of any reliable or accurate data.[3]  The Court is well aware of the difficulties Defendants have had in obtaining accurate dental data for all children and particularly those in the fee-for-service program. That fact, in and of itself, does not justify failure to submit what data is available or to ask to be relieved of the obligation to do so.  Unfortunately, the District has enormous data problems which impact many important provisions of the various Orders entered in this litigation.  That situation cannot constitute an excuse for simply ignoring those Orders, which were crafted "to ensure compliance with the consent decree and ensure that members of the Plaintiff Class obtain the medical services to which the Medicaid statute entitles them."  Memo Op. of July 10, 2006, at p. 3.

However, the Court is also well aware that a very small fraction, only about 10 percent, of the Medicaid-eligible children are enrolled in the fee-for-service program, and that the remaining 90 percent are enrolled in the managed care program.  Given the fact that the failure to submit data affects such a small proportion of the class, the Court concludes that the request for $110,500 is excessive, and no penalties will be assessed.

      b.     Defendants failed to provide timely Blood Lead Corrective Action Plans ("CAPs") as required by the Order of February 28, 2003 [**Dkt. #928**].  The Blood Lead CAPs should have been  submitted to Defendants by the managed care organizations ("MCOs") by May 1, 2007, and Defendants should then have provided those CAPs to Plaintiffs by May 10, 2007.  Plaintiffs did

---

[3]     Defendants renew their argument that the Court should stay its ruling until the Defendants' pending Motion to Vacate the Dental Order is decided.  As the Court has already ruled in paragraph 2a, *supra*, the existence of the Dental Order does not relieve them of their obligation to comply with it as long as it is in effect.

agree to wait to receive those CAPs until May 28, 2007.  As of the end of the second quarter of 2007, Defendants had failed to submit any Blood Lead CAPs, and failed to file any request for an extension of time.

In response, Defendants acknowledge that the corrective action plans were not timely filed and that no motion for extension of time was filed.  Defendants' basic defense is that because the CMS Form 416 data, which is the statistical basis for formulation of the CAPs, is unreliable and undercounts the number of blood lead screenings ordered and actually given to Medicaid-eligible children, they have no obligation to either comply with the Order of February 28, 2003, or to file a motion for an extension of time, or to file a motion to be relieved of their obligation to comply because of the data's inaccuracy.

The issue of blood lead testing is of great importance in the District of Columbia, as this Court has reiterated in prior Orders it has entered.  See Salazar v. District of Columbia, 954 F. Supp. 278, 306 (D.D.C. 1996).  The Defendants may speculate that the Form 416 data undercounts the number of blood lead level screenings given to Medicaid-eligible children, but the fact is that we still do not know what percentage of children are receiving these important blood lead level tests.  The February 28, 2003 Order has been in place for more than four years, and we still do not have accurate data to inform us whether that Order is or is not being complied with.  Without that data, we lack an extremely significant measuring rod for reducing children's blood lead levels in the District of Columbia.  Given this longstanding situation (the complexity of which the Court does acknowledge), at a minimum, the Defendants should be requiring the MCOs to provide CAPs which will suggest what concrete actions must be taken to correct this persistent data problem.  Finally, to emphasize what has been stated earlier, Defendants cannot simply ignore the provisions of the Order of

February 28, 2003 mandating submission of this information.  As the Court has noted, the Defendants' failure "definitely interfere[s] with the Court's ability to ensure compliance with the consent decree and ensure that the members of the Plaintiff class obtain medical services to which the Medicaid statute entitles them."  Lead poisoning has long been a problem of great concern in the District of Columbia.  It continues to be a problem of great concern.  Defendants cannot blithely ignore a Court deadline as if it never existed.

       c.     Defendants failed to provide a Provider Education Report as required by paragraph 41 of the Settlement Order.  Defendants did not even respond to Plaintiffs' argument in their Opposition briefing.  Consequently, they have waived all opposition to the $10,000 in penalties sought for the 29 days during which they failed to comply with paragraph 41.

Therefore, for the second quarter of 2007, $13,500 in penalties have accrued for failure to provide blood lead level CAPs and $10,000 in penalties have accrued for failure to submit a Provider Education Report; a total amount of $23,500 in penalties have accrued and are assessed against Defendants.

       4.     For the third quarter of 2007, Plaintiffs request that the Court require the Defendants to pay $1,088,000 in penalties.

       a.     Plaintiffs argue that Defendants failed to file their Annual Oral Health Summary Report, as discussed in paragraph 3a, *supra*, which was required to be filed by April 15, 2007, under the Dental Order of October 18, 2007, until August 23, 2007 -- 126 days late.  The facts cited by Plaintiffs are accurate.  However, as noted in paragraph 3a, *supra*, Defendants did in fact file the Annual Oral Health Summary Report on April 17, 2007 as required, but it was not complete.  The portion that was not complete, that which concerned children enrolled in the fee-for-service

Medicaid program, consisted of a very small portion (approximately 10 percent) of the entire Medicaid-eligible class population.  Penalties of $110,500 for the second quarter of 2007 have already been ruled excessive.  Id.  To add additional penalties of $265,000 would obviously be even more excessive.  Therefore, no penalties will be assessed for the failure to provide a complete Annual Oral Health Summary Report by April 15, 2007.

    b.  Plaintiffs argue that Defendants failed to provide timely Blood Lead Corrective Action Plans as required by the Order of February 28, 2003.  Plaintiffs agreed to wait for those CAPs until May 28, 2007.  None were filed by the end of June 2007.  On August 23, 2007, an additional 52 days late, Defendants submitted the Blood Lead CAPs.  No motion for extension of time was filed.  For the reasons discussed in paragraph 3b, *supra*, additional penalties of $152,000 are assessed against Defendants.

    c.  Plaintiffs argue that Defendants failed to provide a Provider Education Report as required by paragraph 41 of the Settlement Order.  Those reports were due June 1, 2007.  The Report was finally submitted on  September 24, 2007.

    In their Praecipe for the second quarter of 2007, Plaintiffs did not request penalties because they had not filed an individual praecipe notifying the Court of Defendants' failure to comply with paragraph 41, as required by paragraph 4 of the Penalties Order.  However, Plaintiffs warned that if Defendants did not produce the required Provider Education Report within 10 days, Plaintiffs would request fees for the violation in a future quarterly Praecipe.  As noted, Defendants neither submitted the Report nor requested an extension of time from the Court.  Nor, as noted in paragraph 3c, *supra*, did Defendants even respond to Plaintiffs' argument in their Opposition briefing.  Defendants argue in their response to Plaintiffs' Praecipe for the third quarter of 2007, that the

Provider Education Report was delayed because information was not relayed from the PICHQUE. That may well be, but again, that does not justify ignoring a Court Order, nor does it excuse Defendants' failure to file the necessary motion for extension of time.[4] Thus, $290,500 in penalties for 112 days, from June 4, 2007 to September 23, 2007, have accrued.[5]

        d.      Plaintiffs complain that Defendants failed to negotiate appropriately pursuant to Paragraph 80 of the Settlement Order over problems with reimbursement procedures for out-of-pocket expenses paid by parents or guardians of class members. Defendants respond that they assumed that the settlement of three individual cases which Plaintiff brought regarding the issue of reimbursement procedures had resolved the class-wide issue. Parties disagreed as to whether the class-wide issues had or had not been resolved by the completed litigation.

Plaintiffs point out that Defendants' position is not credible in view of the fact that Plaintiffs sent letters on March 23, May 11, and September 7, 2007, asking Defendants to issue a memorandum to employees of the Medical Assistance Administration ("MAA") informing them what the correct reimbursement procedures are. Because it was known that an MAA employee had been giving inaccurate information, and that more than the three individual cases were involved, it

---

[4]     Defendants complain that Plaintiffs failed to file the Praecipe required in paragraph 2 of the Penalties Order. Plaintiffs recognized that failure, indicated that they were not asking for penalties for that entire quarter, and warned Defendants that if the Report was not filed within 10 days, they would feel free to request fees for past violations in a future quarterly Praecipe. Thus, Defendants had 10 days to alert the Court that they felt unable to comply and request an extension of time.

[5]     For the reasons set forth in paragraph 3, *supra*, $10,000 in penalties already has been granted for this time period, resulting in a total penalty of $300,500 for Defendants' failure to comply with the Court's deadline for Provider Education Reports.

had to have been clear to Defendants that there was a broader problem. Defendants did finally agree to negotiate in October 2007, more than seven months after Plaintiffs' first request to confer.

Thus, Defendants failed to comply with paragraph 80 of the Settlement Order for a period of 126 days (May 28, 2007 to September 30, 2007). While the requested penalties of $370,500 seem very high, the fact of the matter is that this was a violation of a particular provision of the Settlement Order -- which the parties themselves negotiated in order to forestall unnecessary litigation -- which could have had (and may well have had) serious consequences for low income parents of Medicaid-eligible children. As noted, an MAA employee was systematically giving out incorrect information about procedures for reimbursement of out-of-pocket medical expenses. For low income parents who struggle every day to pay their rent and buy food for their families, unnecessary payment of even the lowest medical expenses could have a profound impact on their limited budgets. Had Defendants responded by May 27, 2007, when they should have, to Plaintiffs' first request to discuss the matter, it could have been resolved many months earlier.[6] For these reasons, even though the penalty for this infraction is high, it is appropriate because the problem could have so easily been avoided and it may well have caused real suffering to low income families in the District of Columbia who must stretch every penny as far as it will go in these difficult economic times.

Therefore, for the third quarter of 2007, $813,000 in penalties have accrued and are assessed against Defendants.

5. For the first quarter of 2008, Plaintiffs request that the Court require the Defendants to pay $159,250 in penalties.

---

[6] Plaintiffs also sent follow-up letters on June 27, 2007, August 17, 2007, and September 9, 2007.

a.      The Defendants failed to submit the Dental Corrective Action Plan required by the Dental Order to have been submitted by January 15, 2008.  It was not submitted until February 15, 2008.

Defendants have stated, in response, that in January of 2008, Ms. Wolfe, Ms. Holt, and Ms. Johnson were dealing with serious health issues and were out of the office on sick leave for significant periods of time.  They are three essential programmatic staff people without whom substantial work could not be completed.  The Court does not question those facts.  However, all Defendants had to do is file a motion for extension of time.  The Court has already rejected Defendants' arguments that the deadlines in the Dental Order should be suspended because of the pendency of their Motion to Vacate that Order, and that no penalties should accrue because Plaintiffs did not file the Praecipe required by paragraph 2 of the Penalties Order.

Therefore, the sum of $11,500 in penalties have accrued and are assessed against Defendants.

b.      Plaintiffs continue to request the assessment of penalties for the Defendants' failure to submit that portion of the Annual Oral Health Summary Report pertaining to children enrolled in the fees-for-service Medicaid program.  The Court has already rejected that argument in paragraph 3a, *supra*.

c.      Defendants failed to notify Plaintiffs and the Court, in accordance with the Order of January 10, 2008 **[Dkt. #1333]**, "regarding whether they have in their possession additional documents responsive to Plaintiffs' requests for discovery regarding health care, private duty nursing, personal health care, etc."  Penalties of $2,250 have accrued and are assessed against Defendants.

-12-

      d.      Defendants failed to respond to Plaintiffs' discovery requests regarding blood lead testing.  On January 10, 2008, the Court ordered Defendants to respond to Plaintiffs' discovery requests by February 8, 2008.  Defendants then filed a Consent Motion for an Extension of Time **[Dkt. #1340]**, granted by Minute Order on February 7, 2008, which extended the deadline for production of Defendants' discovery response until February 15, 2008 so that the parties could engage in settlement discussions.  Prior to February 15, 2008, the parties agreed that instead of discovery and litigation, they would ask the Court Monitor, Dr. Henry Ireys, to conduct a study, at Defendants' expense, to determine the number of children actually receiving blood lead tests and the reasons why children fail to get those tests after they are ordered by their treating physicians.

The Court agrees that, in this instance, it would be inequitable and inappropriate to assess penalties.  The parties settled their discovery dispute and reached agreement as to a more productive way to obtain the necessary information.

      e.      Defendants failed to provide the annual notification to providers regarding reimbursement procedures.  Defendants' only explanation is that "a simple error caused them to reverse two deadlines," Reply at 10, which resulted in their sending the annual notification regarding the EVS system in February instead of May when they were due, and failing to send the reimbursement procedures annual notification in February when it was due.

In their Reply, Plaintiffs point out that in fact, both annual notifications regarding reimbursement procedures and EVS are due in February of each year.  In addition, Defendants claim that they mistakenly sent out the EVS notifications in February, but Plaintiffs state they never received a copy of these notifications -- if they were actually sent.

There is simply no justification for such errors when the Settlement Order of January 22, 1999 has been in effect for over nine years.  Therefore, penalties of $39,500 are assessed against Defendants.

For the first quarter of 2008, $53,250 in penalties have accrued and are assessed against Defendants.

* * *

Based on the foregoing findings, the District of Columbia has incurred $931,050 in penalties for failure to comply with prior Court Orders and applicable Federal Rules of Civil Procedure.  The Court takes no pleasure in entering the accompanying Order against the Defendants.  As all parties know, this case has a long history spanning approximately 15 years.  The case affects the most vulnerable of our District of Columbia citizens -- the children of the poor.

It must be remembered that this case is not about individuals who work for the District of Columbia Government -- such as Ms. Wolf, Ms. Holt, Mr. Utiger, etc., all of whom have demonstrated that they are conscientious,  hard working, and dedicated civil servants trying to do their honest best to provide health services to those children.  What the case is about is institutional failure to provide those necessary services -- the failure of the District of Columbia Government, as a governmental entity, to comply with the Federal Medicaid statute, with Orders of this Court, and with the Settlement Agreement which it negotiated with the Plaintiffs approximately nine and a half years ago.

Most significantly, it is about failure of the political leadership in the District of Columbia Government to make available the resources necessary to achieve compliance with the Medicaid

-14-

statute and the Settlement Agreement.[7]  This decision is not written on a blank slate.  Rather, these

penalties are being assessed more than two years after the Penalties Order itself was entered, warning

the District of Columbia about exactly what penalties it would incur, so as to induce compliance with

the statute, Court Orders, and the Settlement Agreement it helped craft.  The Court can no longer

ignore the failure of the District of Columbia to comply with the very Agreement it negotiated, as

well as outstanding Court Orders.  As the accompanying Order states, these penalties have accrued

and are assessed against the Defendants.  The next step in this litigation will be determining the most

appropriate and effective use of these monies.

August 13, 2008                                   /s/
                                                  Gladys Kessler
                                                  United States District Judge


**Copies via ECF to all counsel of record**

---

[7]        A not inconsiderable benefit of achieving such compliance would be dismissal of this case and termination of this Court's supervision.

-15-