# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

OSCAR SALAZAR, *et al.*,                    :
                                            :
     Plaintiffs,                         :
                                            :
     v.                                  :     **Civil Action No. 93-452 (GK)**
                                            :
DISTRICT OF COLUMBIA,                       :
*et al.*,_____ :
                                            :
     Defendants.                         :

## MEMORANDUM OPINION

Plaintiffs have filed a Motion for an Award of Litigation Costs for Representation of Class Members from January Through June 2007 [Dkt. No. 1419].  They seek a total, at this time,[1] of $361,507.23 for attorneys' fees, which includes out-of-pocket litigation expenses of $8,143.46.[2] Upon consideration of the Motion, the Opposition, the Reply, and the detailed exhibits, the Court concludes that the Motion should be **granted in part and denied in part** for the following reasons.

Defendants have raised a number of substantive objections to the requests submitted by Plaintiffs.  They argue that much of the work for which compensation is being sought was related to issues that were either not litigated in the original trial, not related to the findings by the Court in

---

[1]    Plaintiffs have agreed to hold in abeyance $29,147.41 in fees for work on their Motion to Enforce the Order of October 18, 2004 ("Dental Order") until it is ruled on.  Plaintiffs have also, in the exercise of their billing judgment, reduced the fees requested for work on their Motion to Enforce the Settlement Order and the Order of February 28, 2003 ("Blood Lead Order") by $19,368.44 to $48,221.60.

[2]    Defendants do not challenge the amount sought for out-of-pocket litigation expenses.

its Opinion subsequent to trial,[3] and/or not addressed in the Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997 ("Settlement Order") [Dkt. No. 663] . In addition, Defendants continue to argue that Plaintiffs' time spent representing individual members of the class should not be compensated, and that their time entries are inadequate.[4] The Court will address each of Defendants' objections *seriatim* and in detail.

1.     First, Defendants argue strongly that one of the largest items for which Plaintiffs seek attorneys' fees, namely the issue of "medical necessity,"[5] is not compensable. The majority of Plaintiffs' work in this area covered their representation of individual Plaintiffs in administrative due process hearings, who were challenging the decision of their provider, HSCSN, to deny particular treatments and therapies as not medically necessary, even though prescribed by the child's doctor. In addition, Plaintiffs also sought discovery from HSCSN regarding the procedures and guidelines that this managed care organization (MCO) used in reaching its medical necessity decisions. Finally, in 2007, Plaintiffs submitted comments regarding proposed District of Columbia regulations on medical necessity determinations and reviews.

There is absolutely no question that all these activities by Plaintiffs were appropriate, necessary to adequately represent the welfare of members of the Plaintiff class, and were covered by both the Medicaid statute and the Settlement Order. The Court has already ruled that litigation

---

[3]     Salazar v. District of Columbia, 954 F. Supp. 2d 278 (D.D.C. 1996).

[4]     The Court appreciates that in this Opposition to Plaintiffs' request for attorneys' fees as compared with prior Oppositions, Defendants have raised substantive issues rather than nitpicking items in the many pages contained in Plaintiffs' Exhibit 8.

[5]     "Medical necessity" is a shorthand reference to situations involving denial of EPSDT services which have been specifically prescribed by a child's physician.

of individual claims including the issue of medical necessity are covered by the Settlement Order. See Mem. Op. of June 4, 2008, at 2 [Dkt. No. 1373] (stating that "[t]here is no question that Plaintiffs are entitled to be compensated for their work on individual claims. . . ."). Moreover, the Court has consistently awarded attorneys' fees for work related to EPSDT fair hearings. See Mem. Op. of May 29, 2008, at 4 [Dkt. No. 1367]. There is no point in Defendants rearguing this issue every time Plaintiffs file a request for attorneys' fees.

Defendants vigorously challenge the number of hours (405.36) and the amount ($46,211.38) that Plaintiffs request for their work in litigating the fair hearings claims of 11 children with severe disabilities, who are members of the class and who were denied therapeutic after-school services which had been prescribed by their physicians. It should be noted that of the 405.36 hours included in this category, more than half, 284.68 hours, were billed for the work of practicing attorneys who only charged at the paralegal rate, pursuant to the terms of the Settlement Order.

Plaintiffs respond that it was the litigation strategy adopted by Defendants that forced them to spend so many hours litigating the individual children's claims. As Plaintiffs explained, in each one of the EPSDT fair hearings for failure of HSCSN to provide services, the MCO intervened. Thereafter, Defendants allowed HSCSN's outside counsel, Drinker, Biddle and Wreath, LLP, to take the lead role and to fully and aggressively litigate the administrative proceeding. That litigation involved motions to dismiss, related discovery, designation of expert witnesses, and requests to depose the parents of each child. After conducting the litigation in a full-blown fashion, HSCSN reversed its position on the merits of each of these cases just before depositions were to be conducted and reinstated the therapeutic after-school services for each child who was challenging their denial through the fair hearing process. One can only wonder whether, if Plaintiffs had not represented

each of those children, each one of them would have been deprived of the EPSDT services to which they were entitled under Federal law.[6]  In short, Plaintiffs were giving their clients the same quality of representation that Drinker, Biddle & Wreath was giving its client, HSCSN.

Second, Defendants claim that Plaintiffs are not entitled to fees for preparation of comments on the draft regulations published by the Department of Health regarding Therapeutic After-School Programs ("TASP") for children entitled to EPSDT services.  The proposed regulations contained the standards Defendants would use in the future to govern the extent of EPSDT medical assistance to be provided to children.

As Plaintiffs succinctly stated in their Reply, "[p]laintiffs' clients will be seriously affected by the District's medical necessity regulations as the regulations could potentially be used to deny children services under EPSDT in violation of paragraph 36 of the Settlement Order. . . .  Plaintiffs would have been negligent as representatives of members of the class if they did not review and comment on the District's proposed regulations in an effort to ensure that the regulations would comply with the federal Medicaid statute regarding provision of care and that the plaintiff class would not be harmed in any other way by the regulation." Pls.' Reply, at 10.  See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561-62 (1986) ("[W]e agree that participation in these administrative proceedings was crucial to the vindication of Delaware Valley's rights under the consent decree and find that compensation for these activities was entirely proper and well within the 'zone of discretion' afforded the District Court.").

---

[6]      It is noteworthy that in their Opposition, Defendants did not dispute any of the facts related by Plaintiffs.

Third, Defendants also object to Plaintiffs' request for fees for discovery requests to HSCSN and Defendants regarding the provision of home health care services.[7]  Again, Defendants argue that work on this issue does not implicate the claims in this law suit or the requirements of the Settlement Order.  Plaintiffs argue that "the manner in which the District determines medical necessity is not related to any of the claims litigated in this case," Defs.' Opp'n at 4, and speculate that the final bill for discovery on this issue "will be well over $200,000." Id., at 5.

Plaintiffs initially sought discovery about provision of home health care services because local health advocates were concerned that class members might not be receiving the EPSDT home health services to which they were entitled under paragraph 36 of the Settlement Order.  In the Memorandum Opinion of December 19, 2006 [Dkt. No. 1256], the Court granted Plaintiffs' discovery request in part and said that "[i]t is hard to understand what possible legitimate objection Defendants or HSCSN can have to producing such 'policies and procedures' [about provision of home health care services] so long as they do in fact exist."  Moreover, in the Memorandum Opinion of May 29, 2008 [Dkt. No. 1370], the Court reiterated that Plaintiffs' work on discovery "falls within the parameters of both the Settlement Order and the EPSDT claims Plaintiffs litigated and on which they prevailed."   Finally, Plaintiffs were again awarded fees for this subject matter in the Memorandum Opinion of June 4, 2008 ]Dkt. No. 1373], at 1-2.  Given the fact that this issue has already been decided -- twice -- by this Court, Plaintiffs shall be awarded the full amount of expenses on their discovery requests for the first half of 2007, an amount of of $14,611.24.[8]

---

[7]      Plaintiffs seek $14,611.24 for this item.

[8]      Both of those awards substantially reduced the amounts sought by Plaintiffs.  The billing records for 60.67 hours of work performed during the time period covered by this Motion do

(continued...)

Defendants' argument that attorneys' fees for discovery could exceed $200,000 is pure speculation. We will cross that bridge if and when we come to it.

2.      Defendants also argue that Plaintiffs' fees for assisting individuals ($54,138.30)[9] should be reduced by 70 percent because they are "not remotely of a legal nature nor . . . related to any claim the individual class member has brought against the District." Defs.' Opp'n at 6-7. As part of this objection, Defendants also argue that the majority of the entries in this category "show no indication that the issue involved was the result of an error on the part of the District. . . ." Id. at 7.      The Settlement Order does not restrict Plaintiffs' counsel from assisting class members who have not brought individual claims against the District. Paragraph 64 of the Settlement Order specifically states that: "Plaintiffs' counsel may respond to all calls which come to their office and make reasonable inquiry to determine whether the caller is a member of the plaintiffs' class. If the caller is a member of the plaintiff class, Plaintiffs counsel may provide the caller with legal assistance." In short, Paragraph 64 clearly authorizes Plaintiffs' counsel to take all calls from individuals seeking EPSDT assistance, to respond to those callers to ascertain whether the caller is a member of the class and, upon ascertaining that the caller is a member, to provide that caller with legal assistance.

Defendants' objection is particularly unfounded in view of the fact that the MCOs are required, under the Settlement Order and the Order of September 2, 2005 [Dkt. No. 1082] to send

---

[8](...continued)
not justify a reduction in this instance.

[9]      The figure of $54,138.30 is included in the total amount of $100,349.68 requested for work representing individuals. The remainder of that amount, $46,211.38, pertained to work on individual claims related to medical necessity, as discussed above.

written notice to all class members who are claiming reimbursement for out-of-pocket expenses that, in order "to obtain free legal assistance with your reimbursement claim, please contact Terris, Pravlik and Millian, LLP, 1121 12th Street, N.W., Washington, D.C. 20005, 202-682-0578."

Finally, Defendants' argument that the work done by paralegals in response to these callers is not legal in nature is both wrong in substance and irrelevant given that, under Paragraph 64 of the Settlement Order, attorneys are compensated at the paralegal rate for any work they do related to individual claims.[10]

Moreover, as the affidavit of Emily Ryder, one of Plaintiffs' paralegals, demonstrates, it is often very difficult for class members with reimbursement and/or recertification claims to even reach any employee of the District of Columbia government, to get their calls returned, and to get answers from District of Columbia employees so as to receive assistance with their claims.[11] Ms. Ryder also points out that many of the class members seeking either reimbursement and/or recertification are not well educated, or have limited reading skills, or do not speak English. Some have mental health problems and, by virtue of the income limitations to which all class members are subject, these callers do not have access to photocopiers, fax machines, computers, or other office equipment.

---

[10]     Defendants complain about the description of the entries in the individual caller chart in Exhibit 13 and the billing time records in Exhibit 8.  As Plaintiffs point out, the parties reached agreement as to the individual caller chart over five years ago.  See Joint Praecipe Concerning Partial Settlement of Plaintiffs' Fees and Expenses for the Second Half of 2002 [Dkt. No. 962].  Defendants do not claim that Plaintiffs have failed to abide by that agreement.  While the additional information requested by Defendants might not appear to be very burdensome, it would in fact involve a significant expenditure of time and reprogramming of Plaintiffs' computer system.  All such additional time and expense would ultimately be charged to the Defendants.

[11]     Ms. Ryder estimates that, in 75 percent of calls she personally has made to the telephone number which is given to recipients for a Medicaid Recipient Claims Research Team information line -- which is supposed to assist callers with reimbursement claims -- she has gotten the message that the mailbox is full, and therefore she cannot even leave a message to return the call.

Finally, contrary to what the Defendants argue, there is no wording in the Settlement Order limiting Plaintiffs' counsel to representing only individual claimants who allege the Defendants made some kind of error.  It should be remembered that Paragraph 26 of the Settlement Order specifically authorizes Plaintiffs to assist individuals with recertification problems or inquiries, and Paragraphs 61 and 62 of the Settlement Order specifically authorize Plaintiffs to assist individuals with reimbursement problems or inquiries.  Finally, it should be noted that Plaintiffs are only seeking compensation for a maximum of 15 minutes to screen and provide referrals to callers who are found not to be members of the plaintiff class.[12]

3.     Defendants argue that Plaintiffs are not entitled to fees for their work related to the Blood Lead Order, since that Motion is still pending.  Plaintiffs respond that the Motion is not pending, because the parties agreed to resolve the issue, at least temporarily, by agreeing that Dr. Ireys, the Court Monitor, would conduct a study at the Defendants' expense to determine the number of children actually receiving blood lead tests and the reasons children fail to get such tests after they are ordered by their physicians.  Defs.' Resp. to Pls.' Praecipe Regarding Penalties for the First Quarter of 2008, May 14, 2008, at 7 [Dkt. No. 1360].  In the Memorandum Opinion of August 13, 2008 [Dkt. No. 1394], the Court noted that "it would be inequitable and inappropriate to assess penalties" for late filings because the parties "settled their discovery dispute and reached agreement as to a more productive way to obtain information."  Id., at 13.  The Defendants have submitted nothing to contradict what appears to be the clear meaning of the Praecipe filed by the parties.

---

[12]     During the time in question, Plaintiffs point out that Defendants were informing members of a non-Medicaid District of Columbia Medical Assistance Program to call the Plaintiffs' law firm for free legal assistance.  This assistance was unquestionably not covered by the Settlement Order.  Plaintiffs had to write Defendants and ask them to stop spreading that misinformation. Defendants agreed and complied with the request.

For this reason, the Motion is no longer pending, and therefore payment of attorneys' fees is appropriate.

4.      Defendants argue that Plaintiffs' time entries lack the requisite specificity for an award of fees and cite to what they consider to be "generic time entries" in support of their argument. The examples they give do not support their position.  The particular language that they cite on page ten of their Opposition to the fee request is perfectly adequate.  Nor do Defendants specify what additional information they would expect or desire.  Plaintiffs do specify in their billing entries the subject matter of each task, which is of course absolutely essential.  Defendants ask for a 30 percent reduction in whatever fee the Court awards "for failure to adequately document time entries."  That request is without merit, especially in view of the fact that Plaintiffs have summarized the fees requested by category and by attorney, have provided an individual caller chart describing the 402 calls that their office received between January and June of 2007, have provided a lengthy narrative explanation of the work performed in the affidavit of Bruce Terris, and have submitted further explanation in the affidavit of Emily Ryder.

Were this Court to require even more specificity from Plaintiffs, it would be a pyrrhic victory for Defendants.  Were Plaintiffs required to amass additional details for every billing entry, such a task would take a great deal more time, and Defendants would, at the end of the day, pay far more in attorneys' fees.

5.      Plaintiffs seek a total of $30,556.67 for the work performed in preparation for and attendance at the three Status Conferences held during the period covered by the Motion.  This total, if averaged out, would amount to slightly more than $10,000 in attorneys' fees for each Status Conference.  That is simply too high a fee.  Moreover, it is clear from looking at the billing entries

in Plaintiffs' Exhibit 8 that way too much time is being spent in the drafting, redrafting, and editing

of the agenda letter for these conferences.  The Court has ruled in earlier opinions that while these

letters are both informative and helpful, the amounts sought had to be reduced by 20 percent.  <u>See</u>

Mem. Op. of May 29, 2008, at 5 [Dkt. No. 1367]; Mem. Op. of June 4, 2008, at 4 [Dkt. No. 1373].

It simply should not take 93.14 hours to prepare for five status conferences, only three of which were

actually held.  Consequently, the amount sought for this item is again reduced by 20 percent, or

$6,111.34.

For all these reasons, the Court concludes that Plaintiffs' Motion is **granted in part and

denied in part**.


October 28, 2009                          /s/
                                          Gladys Kessler
                                          United States District Judge


**Copies via ECF to all counsel of record**