## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OSCAR SALAZAR, <u>et al.</u>,       :
                                 :
            **Plaintiffs,**        :
                                 :
            **v.**            :        **Civil Action No. 93-452 (GK)**
                                 :
DISTRICT OF COLUMBIA, <u>et al.</u>,   :
                                 :
            **Defendants.**     :

### MEMORANDUM OPINION

The District of Columbia has filed a Motion to Vacate the Court's Order Granting Injunctive Relief Dated October 18, 2004 ("Motion to Vacate the Dental Order") [Dkt. No. 1153]. Upon consideration of the Motion, Opposition, Reply, Surreply, Supplemental Brief, the many exhibits submitted by the parties, and the long, tangled, and complex history of this important case which focuses on the provision of medical services to poor children in the District of Columbia, Defendants' Motion is **denied**.

## I.     PROCEDURAL HISTORY

In 1993, Plaintiffs brought this far-reaching class action to provide and arrange for a range of medical services, guaranteed under the federal Medicaid statute, 42 U.S.C. § 1396, <u>et seq.</u>, to poor children in the District of Columbia. During lengthy pre-trial proceedings before Judge Norma Holloway Johnson, to whom the case was originally assigned, discovery was completed, and many motions (both dispositive and non-dispositive) were decided. Thereafter the parties settled several claims prior to trial with the help of a mediator appointed under the Court's Alternative Dispute Resolution Program.

In July of 1994, the case was re-assigned to this Judge.  After a seven-day trial in April of 1996, this Court issued a 56-page opinion finding Defendants to be in violation of several provisions of the Medicaid statute.  See Salazar v. District of Columbia, 954 F. Supp. 258, 334 (D.D.C. 1996). By the time of trial, many of the issues pled in the original Complaint had been substantially narrowed and the trial itself focused primarily on whether Defendants were complying with the statute's requirement to provide EPSDT services ("early and periodic, screening, diagnostic, and treatment services") to children entitled to them.  Since that time, the parties have focused virtually all their attention on the EPSDT issue.

The District of Columbia took an appeal from the decision.  On the eve of oral argument in the Court of Appeals, the parties entered into a detailed and complex agreement. A public hearing was held. On January 25, 1999, after various proceedings, the Court approved and entered the parties' final settlement as an Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997 ("the Settlement Order") [Dkt. No. 663].  Since that date, January 25, 1999, the Settlement Order, which contains several provisions relating to dental services for class members, has been the governing document in this case.[1]

On April 23, 2004, Plaintiffs filed a Motion to Enforce the Settlement Order of January 25, 1999 and the Order of February 28, 2003, Concerning Dental Services [Dkt. No. 1010].  After full briefing, on October 18, 2004, the Court granted the Motion in large part and issued its Memorandum Opinion and Dental Order ("Dental Order of October 18, 2004" or " Dental Order") [Dkt. No. 1034]. The District of Columbia took an appeal on December 4, 2004; however, on

---

[1]     Over the years, the parties have agreed upon a number of relatively minor and technical changes to the Settlement Order.  Those changes have always been incorporated into the Settlement Order by Consent Orders.

January 27, 2005, it requested the Court of Appeals to hold its appeal in abeyance as it "expect[s] to file in the near future a motion [in the district court] to dissolve that injunction."  Motion to Hold Appeal in Abeyance, Court of Appeals, District of Columbia Circuit, No. 04-7200.  No such motion was ever filed in this Court.  On December 2, 2005, the District of Columbia withdrew its appeal of the Dental Order.

On May 26, 2006, the District of Columbia filed the present Motion to Vacate the Dental Order.  Plaintiffs filed their Opposition on July 7, 2006, Defendants replied on September 12, 2006, Plaintiffs filed a Sur-Reply on December 14, 2006 and a Supplemental Brief on April 4, 2008.  Oral argument was held on January 12, 2007.[2]

---

[2]      The Court is well aware that the District of Columbia has filed a Petition for Mandamus in the Court of Appeals because its Motion to Vacate has not been decided.  That is certainly its procedural right, and the Court understands and sympathizes with its desire to resolve as soon as feasible the extent and scope of the Government's obligation to provide dental care to class members.

However, in brief explanation of what has admittedly been a very lengthy delay, the Court must note that the underlying Dental Order, the enforcement issues relating to it, and the Motion to Vacate, have never been ignored.  There have been extensive and frequent informal discussions with the parties, the Court's Monitor Dr. Henry T. Ireys, and the Court, about resolution of the substantive issues, of the administrative difficulties in carrying out the provisions of the Dental Order, and of the profound technical problems concerning measurement of compliance with the Dental Order as well as with other provisions of the Settlement Order.  Dr. Ireys has issued three reports regarding dental services in the District of Columbia.  See June 17, 2003, Methods Used by the District of Columbia and the Managed Care Organizations to Inform Medicaid Recipients about Preventive Dental Services; January 27, 2006 Strategy to Achieve Implementation of Paragraph 2 of the Dental Order of October 18, 2004; and February 2008 Report on the District of Columbia's EPSDT Program with a focus on dental services for children.  On page 1 of the 2006 Report, Dr. Ireys noted that the "parties in this case agree that the majority of children in the District of Columbia's EPSDT program are not receiving adequate dental care."  He also stated at page 1 that according to official reports which Defendants have filed with the federal Government (although the parties have always acknowledged that the accuracy of these official reports is questionable), "73 percent of the EPSDT-eligible children aged 3 to 20 years received no preventive dental care and 68 percent received no dental services at all" (emphasis added).

(continued...)

## II.     ANALYSIS

In its Motion to Vacate, the Defendants argue that the Dental Order is not supported by evidence that the Settlement Order was violated or that the District of Columbia has failed to provide and arrange for appropriate dental services when requested, and that the injunctive relief ordered is not tailored to cure a Constitutional or statutory violation.  In addition, the Defendants make the curious argument that by mandating the provision of dental services which are required by the Medicaid statute,  the Dental Order is "imping[ing] upon the free will of the Medicaid recipient to force dental care participation.  The District cannot and should not be ordered to ensure that every District child who may be eligible for EPSDT services actually receive these services."  Mot. to Vacate, at 8.

### A.     There Is No Federal Rule of Civil Procedure Authorizing Defendants' Motion at this Late Date, More than 19 Months after Entry of the Dental Order

Defendants have failed, in their opening Motion papers, to cite any authority whatsoever under either the Federal Rules of Civil Procedure or case law which would authorize the filing of their Motion to Vacate the Dental Order, more than 19 months after its entry.  They had numerous opportunities to seek reconsideration, reversal, or modification of the Order and failed to do so.  It is now simply too late, because of Defendants' inexplicable delay, to relitigate issues which were fully briefed and decided more than five years ago.

---

[2](...continued)

At times the parties -- sometimes on their own and sometimes with Dr. Ireys' help -- have made good faith efforts to resolve their differences.  The Court strongly encouraged all of the parties' informal efforts because of the complexity of the compliance issues, the importance of providing such services to the children of the District of Columbia who are eligible for them and are not receiving them, and its belief that it was far better for the parties to craft a solution they could live with rather than have one imposed on them by court order.  All of these efforts took time.

In their Reply to Plaintiffs' procedural arguments, Defendants argue, for the first time, that "resulting orders [from motions to enforce a consent decree] do not take on the character of a judgement" and therefore the Court has "equitable power" to vacate them for reasons not specifically provided in the Federal Rules of Civil Procedure. There is no legal support for that proposition, nor would the facts justify its application in this instance if such legal support existed.

### 1.    The Federal Rules of Civil Procedure

An examination of those Federal Rules which might authorize the Motion to Vacate demonstrates why Defendants have failed to cite any of them: Defendants have failed to meet their requirements.

### a.    Rules 52 and 59

Rule 52(b) allows a party to file a motion to amend a court's findings, but such motion must be "filed no later than 10 days after the entry of judgment."[3]  District of Columbia v. Stackhouse, 239 F.2d 62, 65 (D.C. Cir. 1956).  See Harvest v. Castro, 531 F.3d 737, 745 n. 5 (9th Cir. 2008); Verma v. United States, Civ. No. 87-2294, 1992 WL 611259, at *1 (D.D.C. Aug. 26, 1992). Obviously, filing the Motion 19 months after entry of judgment fails to meet the 10-day requirement. Moreover, use of Rule 52 cannot be a substitute for an appeal. "A party who failed to prove his [or her] strongest case is not entitled to a second opportunity to litigate a point, to present evidence that was available but not previously offered, or to advance new theories by moving to amend a particular finding of fact or conclusion of law." 9C Wright, et al., Federal Practice and Procedure, § 2582 (3d ed. 2009).  Guiterrez v. Ashcroft, 289 F. Supp. 2d 555, 561 (D.N.J. 2003).

Nor can Defendants rely on Rule 59.  Once again, the Rule provides that any motion to alter

---

[3]        In 2009, the deadline was extended to 28 days.  Fed. R. Civ. P. 52(b).

or amend a judgment "must be filed no later than 10 days after entry of the judgment."[4]  Fed. R. Civ.

P. 59(e).  Again, Defendants failed to meet the 10-day requirement.  As with Rule 52, Rule 59

motions "[m]ay not be used to relitigate old matters, or to raise arguments or present evidence that

could have been raised prior to the entry of judgment."  11 Wright, et al., Federal Practice and

Procedure, § 2810.1 (2d ed. 2009).  Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n. 5 (2008);

Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993); Klayman v. Judicial

Watch, Inc., Civ. No. 06-670, 2007 WL 1034936, at *2-3 (D.D.C. Apr. 3, 2007); United States v.

Western Elec. Co., Inc., 690 F. Supp. 22, 25 (D.D.C. 1988).

Thus, neither Rule 52 nor Rule 59 can support the filing of the Motion to Vacate.  Defendants

have missed the filing deadlines, and are making the same arguments which they made -- and lost--

in the underlying Motion to Enforce.

### b.    Rule 60

Rule 60(b) provides six potential avenues for relief for Defendants, none of whose

requirements they can satisfy.  Above all, Rule 60(b), like Rules 52 and 59 "is not a substitute for

appeal, and motions under the rule have been denied when made to avoid the party's decision to

settle the litigation or forego an appeal, after a deliberate dismissal, or when the defendant

voluntarily elects not to appeal."  11 Wright, et al., Federal Practice and Procedure, § 2851 (2d ed.

2009) (emphasis added).  Here, the District of Columbia chose to appeal the Order, as is its right,

and then voluntarily chose to seek a stay from the Court of Appeals until it could file some unnamed

motion with this Court, never filed any such motion, and then voluntarily chose to dismiss its appeal.

Such actions are hardly within the purview of Rule 60(b) which, in addition to precluding its use as

---

[4]        In 2009, the deadline was extended to 28 days.  Fed. R. Civ. P. 59(b).

a substitute for appeal, also requires that such motions be filed "within a reasonable time" and "within a year after the entry of the judgment" for motions brought pursuant to Rule 60(b)(1), (2), and (3).  See Ackermann v. United States, 340 U.S. 193, 198 (1950); Twelve John Does v. District of Columbia, 841 F.2d 1133, 1141 (D.C. Cir. 1988); Friedman v. Wilson Freight Forwarding Co., 320 F.2d 244, 247 (3d Cir. 1963) (failure to raise an available contention by a direct appeal, followed by an attempt to litigate the matter under Rule 60(b),  is not a proper use of that Rule).

Plainly, Subsections 1-4 of Rule 60(b) do not apply; nor do Defendants assert that any of these provisions do apply.

Rule 60(b)(5) authorizes a motion for relief from a final judgment when "applying it prospectively is no longer equitable."  Rule 60(b) motions "shall be made within a reasonable time." As recently as last year, in Horne v. Flores, 129 S. Ct. 2579, 2596-97, (2009) the Supreme Court re-affirmed the vitality of Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 368 (1992), the leading case setting forth the standards for modifying a final judgment under Rule 60(b)(5) in institutional reform cases.

In Rufo, the Supreme Court held that the "party seeking modification of a consent decree" bears the burden of establishing "that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance."  Id. at 393.  In discussing Rufo, the Flores opinion noted that "[s]atisfaction of an earlier judgment is one of the enumerated bases for Rule 60(b)(5) relief," although it made clear that it was not the only basis for such relief.  Flores, 129 S. Ct. at 2597 (emphasis in original).

In particular, the Supreme Court in Rufo explained that Rule 60(b)(5) does not authorize relief just because " it is no longer convenient to live with the terms of a consent decree."  Id. at 383.

Nor, it continued,  should modification ordinarily be granted when a party relies upon events that were anticipated when the decree was entered.  Id. at 385.

Rather, the Rufo Court carefully delineated the three conditions under which modification of a consent decree under Rule 60(b)(5) may be appropriate: (1) "when changed factual conditions [or law] make compliance with the decree substantially more onerous," (2) "when a decree proves to be unworkable because of unforeseen obstacles," or (3) "when enforcement of the decree without modification would be detrimental to the public interest."  Id. at 384.[5]  Defendants do not argue that any of the conditions  have been met -- because they cannot.

---

[5]      It is true that Rufo involved modification of a consent decree, whereas in this case Defendants seek modification of a final court order entered in order to achieve compliance with the underlying consent decree (the Settlement Order).  However, there is nothing in Rufo to suggest that its Rule 60(b)(5) requirements would not apply to the procedural posture of this case.  Indeed, the Court specifically noted that consent decrees are agreements that "will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees."  Id. at 378.

While Defendants argue that there is a distinction between an order enforcing a consent decree and the consent decree itself, and that the Court has the "inherent equitable authority to interpret and enforce the consent decree outside the context of Rule 60," Defs.' Reply, at 2, they cite only one case for that proposition, Pigford v. Veneman, 292 F.3d 918, 923 (D.C. Cir. 2002). However, that case says nothing of the kind.  Rather, it says that "[d]istrict courts possess two types of authority over consent decrees.  First, they may interpret and enforce a decree to the extent authorized either by the decree or by the related order . . . .  Second, they may modify a decree pursuant to Federal Rule of Civil Procedure 60(b)(5)."  Pigford, 292 F.3d at 923 (citing Rufo, 502 U.S. at 378-79).  There is no mention in Pigford of the "inherent equitable authority to interpret and enforce the consent decree outside the context of Rule 60."  Quite the contrary -- Pigford reversed the district court's grant of a Rule 60(b)(5) motion and held that "the district court's interpretive and enforcement authority depends on the terms of the decree and related court order, rather than on some 'ancillary' or 'inherent power.'"  Pigford, 292 F.3d at 925.

Defendants also argue that the Dental Order is a modification of the Settlement Order.  That is simply not correct.  The Dental Order resulted from Plaintiffs' Motion to Enforce the Settlement order of January 25, 1999 and the Order of February 28, 2003 Concerning Dental Services.  It was what it was titled -- a Motion to enforce Paragraph 37 of the Settlement Order, not to modify it.

First,[6] there is no question that there has been no change in conditions "which would make compliance with the decree substantially more onerous."  Defendants have always known that the District of Columbia's poor children were not getting anywhere near the amount of preventive dental care or treatment to which they were entitled (albeit there have always been great difficulties in obtaining truly reliable and accurate data about the number of visits children made for both kinds of services).  See January 27, 2006 Strategy to Achieve Implementation of Paragraph 2 of the Dental Order of October 18, 2004 ("January 27, 2006 Ireys Report"), at 1, 14, 22.  Defendants have also always known that there was an insufficient number of pediatric dentists either available or willing to treat Medicaid children, and that certain actions, such as raising reimbursement rates, would have to be taken to ameliorate that problem. Id., at 5-8.  Finally, Defendants have also always known that parents, custodians, and guardians of the children would have to be educated about the importance of routine preventive care, and that substantial outreach would be necessary to accomplish that task. Id., at 8-10.

In short, Defendants point to no new facts or conditions which would meet the Rufo definition of "changed factual conditions" so as to "make compliance with the decree substantially more onerous."  Rufo, 502 U.S. at 384.

Second, Defendants point to no "unforeseen obstacles" which would make enforcement of the Dental Order "unworkable."[7]  Again, the obstacles already discussed  have existed for many, many years in the District of Columbia.  For example, we have not suddenly lost a substantial

---

[6]      It is undisputed that there has been no change in the governing Medicaid statute or any possibly relevant case law.

[7]      The Defendants concede that "[i]t is a fact that utilization rates are not what the Court, Plaintiffs or the District would like."  Defs.' Mot. to Vacate, at 16.

number of pediatric dentists who are willing to treat class members -- a situation which could, arguably, fall under this exception to the general rule.  Nor, it must be noted, does the District of Columbia base its Motion to Vacate on such a justification.

Third, the <u>Rufo</u> opinion does state that modification of a consent decree is appropriate where its enforcement "would be detrimental to the public interest."  <u>Rufo</u>, 502 U.S. at 384.  Can the Government really be arguing that it would be "detrimental to the public's interest" to ensure that poor children see a dentist <u>once a year</u> for preventive cleanings (as the Dental Order provides) and obtain treatment if needed?  <u>See</u> ¶ 49 of the Dental Order.[8]

While the District of Columbia does not base its Motion to Vacate on this justification, it does raise an argument which might -- conceivably -- fit under this rubric.  The District of Columbia paints an Orwellian picture in which enforcement of the Dental Order would require a paternalistic and authoritarian government to, literally, force unwilling parents to present their children for preventive dental care and treatment.  Such conduct, the Defendants argue, would interfere with the parents' right to participate or not participate in the EPSDT program and substitute the Government's judgment for that of parents.  Defs.' Mot. to Vacate, at 8, 19; Defs.' Reply, at 9-10.  This picture is patently ridiculous.  There is not a word in the Dental Order which would interfere with parents' Constitutional rights to make medical decisions for their children or to force them to take advantage of dental services that are being made available.

What the Dental Order does do is enforce, with great specificity, Paragraphs 36, 49, 52, and

---

[8]     It must be remembered that District of Columbia law requires the Mayor to establish requirements for periodic dental examinations for children entering school and to develop the necessary standard forms for documenting the results of the oral health assessments.  D.C. Code § 38-602 (2009).

57 of the underlying Settlement Order.  There can be no question that the Court has such authority.
Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 286 (D.C. Cir. 1993) (it is a "well-established
principle that a trial court retains jurisdiction to enforce consent decrees and settlement agreements").

Even if a party is able to satisfy one of the three conditions under which Rufo allows
modification of a consent decree, it must then show that the proposed modification is suitably
tailored to the changed circumstance.  Rufo, 502 U.S. at 383.  Putting aside the fact that there are no
such changed circumstances in this case, it is clear that the Defendants' proposal to vacate the Dental
Order in its entirety is certainly not "suitably tailored" to enforcement of the provisions of the
Settlement Order.  Plaintiffs correctly state that granting Defendants' Motion to Vacate the entire
Dental Order "would result in the perpetuation of the District's violation of federal EPSDT law and
paragraph 36 of the Settlement Order."  Pls.' Opp'n, at 13.

Finally, Rule 60(b)(5) motions must also be made "within a reasonable time."  In a case with
a procedural posture similar to ours, the Court of Appeals for this Circuit held that a subsequent
motion to vacate was properly dismissed as "sixteen months is not 'a reasonable time' under these
circumstances."  Gilmore v. Hinman, 191 F.2d 652, 652-653 (D.C. Cir. 1951).  Given the
circumstances of this case, where an appeal was filed in a timely manner, but then, at the request of
the Defendants, was allowed to linger for 10 months before being withdrawn, with a total of 19
months elapsing between the issuance of the Dental Order and the filing of the present Motion, the
Motion is clearly untimely.  What is particularly disturbing is the failure of Defendants to provide
any justification or explanation for their extended delay.  The 19-month delay, combined with the
total lack of explanation, establish that the Motion was not made "within a reasonable time."

Rule 60(b)(6) is a catch-all provision providing that a motion for modification may be made

for "any other reason that justifies relief."  The Supreme Court has held that only exceptional or extraordinary circumstances can justify relief under this subsection of Rule 60.  <u>Ackermann v. United States</u>, 340 U.S. 193, 199-202 (1950); <u>Twelve John Does</u>, 841 F.2d at 1141.  As already discussed, Defendants have cited no such exceptional or extraordinary circumstances which would justify vacating the Dental order.

Moreover, just as with the other subsections of Rule 60, the moving party can not  avoid the consequences of its failure to appeal "because hindsight seems to indicate to him that his decision not to appeal was probably wrong," <u>Ackermann</u>, 340 U.S. at 198.  <u>See also</u> 11 Wright, <u>et al.</u>, <u>Federal Practice and Procedure</u>, § 2864 (2d ed. 2009) ("[I]t ordinarily is not permissible to use this motion to remedy a failure to take an appeal.").

Thus, for all the foregoing reasons, none of the provisions of Rule 60 authorize the bringing of this Motion to Vacate 19 months after issuance of the Dental Order.

### B.    Defendants' Arguments Have Been Previously Made and Rejected by the Court

Virtually all the arguments made by Defendants in their Motion to Vacate the Dental Order were made, examined, and rejected in the Court's Opinion of October 18, 2004, granting Plaintiffs' Motion to Enforce the Settlement Order as to dental services.

Specifically, Plaintiffs argued that Defendants were in violation of Paragraph 36 of the Settlement Order and Defendants denied it.  The Court ruled, at pp. 5-6 of its Opinion, that Defendants' argument was unpersuasive, and squarely rejected their argument that the Medicaid statute was not violated because the District of Columbia had never refused to provide dental services "when requested."

-12-

In addition, the Defendants argued that the Court had no discretion to enter those provisions of the proposed Order requiring development of a dental periodicity schedule, development of a comprehensive and detailed Corrective Action Plan to remedy the violations of Paragraph 36 of the Settlement Order, and preparation of an annual oral health assessment of EPSDT-eligible children which would identify the number of such children who had received preventive care and treatments.

The Court ruled, at pp. 7-15 of its Opinion, that it had authority to issue such an order to enforce the Settlement Order (citing Frew v. Hawkins, 540 U.S. 431, 439 (2004) and Beckett, 955 F.2d at 286), and that the provisions proposed by Plaintiffs were appropriate to remedy the failure to comply with the underlying Settlement Order.

### C.      The Court Has Authority to Order Relief Exceeding Federal Statutory and/or Administrative Agency Standards and Had Authority to Issue the Dental Order

The one new argument that Defendants make in their Motion is that the Dental Order should be vacated because the relief mandated exceeds the federal standards established by the Centers for Medicare and Medicaid Services ("CMS").

Defendants are correct that there is no federally-established mandate regarding utilization rates of dental services.  The Department of Health and Human Services has set a specific national "goal" of a 57% participation rate for preventive dental services by this year, 2010.  Obviously, this goal is much lower than the participation rates contained in the Dental Order.

The simple answer to Defendants' argument is provided in Frew.  Because the Settlement Order embodies an agreement between the parties, they are held to complying with that voluntarily-entered into agreement.[9]  As the Supreme Court said in Frew, in words particularly applicable to the

---

[9]      Paragraph 79 of the Settlement Order clearly provides that this Court "shall retain
(continued...)

-13-

facts of this case:

> The decree does implement the Medicaid statute in a highly detailed way, requiring the state officials to take some steps that the statute does not specifically require.  The same could be said, however, of any effort to implement the general EPSDT statute in a particular way.  The decree reflects a choice among various ways that a State could implement the Medicaid Act.  As a result, enforcing the decree vindicates an agreement that the state officials reached to comply with federal law.[10]

540 U.S. at 439.

## III.   CONCLUSION

This Court fully recognizes that district courts must "defer to local government administrators who have the 'primary responsibility for elucidating, assessing and solving' the problems of institutional reform."  Rufo, 502 U.S. at 392.  Throughout the very long pendency of this case, the Court has consistently tried to work with the parties on a collaborative, rather than adversarial, basis because of the practical administrative problems in enforcing the Settlement Order. That approach has been moderately successful until changes were made in the leadership of the Attorney General's Office.[11]

As to the pending Motion, the bottom line is that the Defendants have failed to establish any change in circumstances, no less significant ones, which would warrant vacating the Dental Order, as the Supreme Court mandated in Rufo and just this past year in Flores.

---

[9](...continued)
jurisdiction of this matter to make any necessary orders enforcing or construing this Order."

[10]     See also cases cited in Pls.' Opp'n, at 20-21.

[11]     The overwhelming problem, as noted in this Opinion, has been the seemingly unsolvable inability to obtain reliable data regarding compliance with the Settlement Order.

The Defendants have presented all their arguments in previous proceedings and they have been rejected.  Defendants had an opportunity to further test the strength of those arguments before the Court of Appeals and, inexplicably, after waiting ten months, chose to withdraw their appeal. They have presented no explanation for this tactical decision.  As the Supreme Court said in Ackermann, 340 U.S. at 199, the litigant's "choice was a risk, but calculated and deliberate . . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."

For all the reasons set forth herein, the Court concludes that there is no justification -- no change in the law or the facts, no unforeseen obstacles which have made the Order unworkable, and no evidence that its enforcement would be detrimental to the public interest -- that would support vacating the Dental Order.  Consequently, Defendants' Motion to Vacate is **denied**.


February 18, 2010                           /s/_____
                                            Gladys Kessler
                                            United States District Judge


**Copies via ECF to all counsel of record**