# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

OSCAR SALAZAR, *et al.*,          :
                                  :
       **Plaintiffs**,  :
                                  :
    v.                          :   Civil Action No. 93-452 (GK)
                                  :
DISTRICT OF COLUMBIA, *et al.*,   :
                                  :
       **Defendants.**  :

## MEMORANDUM OPINION

Upon consideration of the Motion of Non-Parties HSCSN and MHS ("Non-Parties") to Reconsider the Court's Order Granting Plaintiff's [sic] Motion to Compel and for Stay Pending Reconsideration, and the Motion for Protective Order of those same Non-Parties, the Oppositions, the Replies, and the lengthy history of this case, the Court concludes that the Motion for Reconsideration is **granted in part and denied in part**, and the Motion for Protective Order is **granted in part and denied in part**.

Plaintiffs and Non-Parties have been battling over the discovery issue raised in these Motions for a long period of time. By now, the issue has narrowed down to whether a Protective Order should be granted to Non-Parties and, if so, how restrictive it should be.[1]

On December 19, 2006, the Court granted in part and denied in part Plaintiffs' Motion for Leave to Conduct Limited Discovery Concerning Compliance with Paragraph 36 of the Settlement Order [Dkt. No. 1256]. Specifically, Plaintiffs were allowed to obtain discovery of "the general

---

[1] The Court is well aware that the Motion for Protective Order has been ripe since February 20, 2009 and the Motion for Reconsideration has been ripe since March 9, 2009. The Court regrets its inability to have resolved them earlier, but notes that it has already issued two earlier Opinions [Dkt. Nos. 1256 and 1430] on this same discovery issue. Moreover, the Court believes that all this delay could have been avoided if Plaintiffs and the Non-Parties had worked more diligently and reasonably to reach an agreement about the Protective Order in issue.

polices and procedures" of the Non-Parties for authorizing, re-authorizing, and terminating certain health services. On February 6, 2009, the Court granted Plaintiffs' Motion to Compel Specific Discovery Concerning Compliance with Paragraph 36 of the Settlement Order as it Pertains to the Provision of Home Health Care, Private Duty Nursing, and Personal Care Services [Dkt. No. 1430]. Specifically, Plaintiffs were granted access to the InterQual® Clinical Decision Support Criteria ("InterQual® Criteria"), which are evidence-based treatment guidelines developed and copyrighted by MHS. Shortly thereafter, Non-Parties filed the two Motions which are now under consideration.

Non-Parties are seeking reconsideration of the Order of February 6, 2009, granting Plaintiffs' Motion to Compel Production of the InterQual® Criteria and a Stay pending such reconsideration, as well as a Protective Order. Plaintiffs oppose those Motions on both procedural and substantive grounds. The Court will now address, albeit briefly, the main issues raised by the Non-Parties and Plaintiffs.[2]

1.    Initially, Plaintiffs argue that Non-Parties have failed to meet the high standard for reconsideration required by Fed. R. Civ. P. 59(e). While it is true, as Plaintiffs state, that the Rule 59(e) standard is a stringent one, <u>Firestone v. Firestone</u>, 76 F.2d 1205, 1208 (D.C. Cir. 1996), such a motion may be granted in order "to correct a clear error or prevent manifest injustice." Upon consideration of all the arguments made by the Parties, the Court concludes, as will be explained, <u>infra</u>, that it does "need to correct a clear error." <u>Id</u>.[3]

---

[2]    Defendants have taken no position on either the Motion to Reconsider or the Motion for Protective Order.

[3]    Non-Parties also cite Rule 60(a) as support for their request for reconsideration. That Rule is clearly inapplicable since it applies only to minor clerical mistakes and omissions. Given the Court's ruling under Rule 59(e), it is not necessary to reach the argument of Non-Parties that
(continued...)

2. In the December 19, 2006, Memorandum Order, p. 3, the Court granted in large part Plaintiffs' request, opposed by Non-Party HSCSN and the Defendants, for "limited discovery regarding HSCSN's general policies and procedures for authorizing, re-authorizing, and terminating home health care services, private duty nursing services, and personal care services when such services are prescribed for children." After conducting a significant amount of discovery, Plaintiffs filed their Motion to Compel Specific Discovery. In particular, Plaintiffs sought production of the InterQual® Criteria, the protection of which is at issue in the two pending Motions.

Non-Party McKesson Health Solutions, LLC ("MHS") holds two patents on the InterQual® Criteria and now licenses use of the Criteria to various entities. See Affidavit of Laura Coughlin ("Coughlin Aff."), Exhibit 1 to Non-Parties' Motion for Protective Order, ¶ 20, 26. The Criteria are a support tool, consisting of three basic elements, for the making of clinical care management decisions. Id. ¶ 11. The InterQual® Criteria address admissions, continued stays and transitions across the continuum of care, from acute settings through outpatient treatment and home care. The InterQual® Criteria are used to provide answers to critical questions about the appropriateness of levels of care and resource use. Id. ¶ 7.

The first element consists of information and clinical data which is distilled from the medical literature. Id. ¶¶ 11-12. The second element contains a set of unique rules developed by MHS that compiles and organizes the data to create appropriate care decisions based on what the medical literature has reported to be evidence of "best practices," or on expert clinical opinion where such evidence of "best practices" is lacking. Id. ¶¶ 11, 13. Elements 1 and 2 are combined to constitute

---

[3](...continued)
reconsideration is also warranted under Rule 56(b).

a "criteria set." The third element is a specific methodology used to apply the InterQual® Criteria to individual patients' cases in a consistent and objective manner. Id.¶ 15.

The InterQual® Criteria are peer reviewed, edited, revised, and updated annually by MHS. Id. ¶ 16. According to MHS, the Criteria, i.e., the specific review methodology, as well as the aggregate or "unique combination" of the three elements, is not "generally known or readily ascertainable to the public," nor is it "generally known within the industry." Id.

Non-Party MHS derives substantial value from what it believes to be the unique combination of elements that comprise the InterQual® Criteria. MHS licenses use of the Criteria to more than 4,000 health care plans, hospitals, academic medical centers, government agencies, and managed care organizations. Id. ¶ 9. These health care providers pay license fees for the right to access and use the InterQual® Criteria. Id. ¶¶ 26, 28.

3. In its Opinion of February 6, 2009, granting Plaintiffs' Motion to Compel Specific Discovery, namely, the InterQual® Criteria, the Court explained that:

> Plaintiffs' counsel have an obligation to monitor compliance with the Settlement Agreement, including paragraph 36 concerning the provision of in-home services. In particular, Plaintiffs' counsel need to know what criteria HSCSN is relying upon in making decisions, which are of great significance to their clients, regarding the authorization, re-authorization, and/or termination of services which are often vital to the parents and caretakers of children with special needs.

Salazar v. Dist. of Columbia, 596 F. Supp.2d 67, 68 (D.D.C. 2009).

The Court pointed out that:

> Parents and caretakers of children with special needs have a particularly challenging situation to manage. First, they have to perform demanding physical tasks which are often required for the care of children with special needs. Second, they have the difficult

> intellectual tasks of understanding what services are available to their children, under what conditions, and for what duration, so that they can make responsible decisions for their care. It is essential that they know the limits of Medicaid coverage so that they can attempt to compensate for any gaps in that coverage and make appropriate plans to fill such gaps. Finally, children with special needs often receive services from a range of health care providers. Once again, it is up to the parents and caretakers to coordinate those many services. In order to navigate such a multi-layered system for children who themselves have a set of complex needs, it is essential that those parents and caretakers, as well as their lawyers and health care advocates, be knowledgeable about "the amount, duration, and scope of benefits," and the "procedures for obtaining benefits, including authorization requirements."

Id. at 69.

Because of the importance of counsel, parents, caretakers, and health care advocates being knowledgeable about "the amount, duration, and scope of benefits," as well as the "procedures for obtaining benefits, including authorization requirements," the Court concluded that Plaintiffs' Motion to Compel should be granted. In denying the request of Non-Party MHS for imposition of a Confidentiality Agreement, the Court emphasized that Plaintiffs were "not requesting widespread public dissemination of InterQual® Criteria." Id. at 70.

4.  The Court recognizes that MHS does derive substantial income from the use of its InterQual® Criteria and that the creation, marketing, and licensing of the Criteria creates jobs for its employees. See Coughlin Aff. at ¶¶ 10, 38-42. While MHS has failed to provide any specific financial data, it is highly probable that making the Criteria publicly available without any restrictions would cause an economic loss to MHS since it would either end or diminish MHS's ability to earn revenue from its licensing of the InterQual® Criteria. Id. ¶ 40-41. Thus, it is clear

that MHS has a strong interest in protecting its property rights to license use of the Criteria to health care providers and related public and private organizations in the health care field.

5.    The competing interests of Plaintiffs and Non-Party MHS need to be balanced and, if possible, harmonized. Upon reconsidering the litigants' arguments, the Court concludes that this can be accomplished by imposing a protective order, and that it was "clear error" for the Court to fail to do so in its ruling of February 6, 2009.

However, MHS has insisted upon inclusion of a number of provisions in any such protective order, see Docket No. 1438-5, which are far too restrictive and would inhibit Plaintiffs from carrying out their obligations to serve their clients in compliance with ¶ 38 of the Settlement Agreement.[4]

6.    In particular, MHS has insisted on requiring Plaintiffs to obtain the written, prior consent of both Non-Parties before releasing or disclosing, at any time, the InterQual® Criteria (see Docket No. 1438-5, at 12-13); on prohibiting Plaintiffs from, at any time, copying or duplicating the Criteria in whole or in part; on limiting the use of the Criteria by Plaintiffs to instances of denial, limitation, or termination of home care benefits for specific members of the Plaintiff class; on requiring the use of "anti-copy" paper; on requiring return of any and all copies of the Criteria which had been given to Plaintiffs' counsel; and on returning copies of the Criteria to one or both Non-Parties.

As already noted, these restrictions are far too limiting and would seriously impair Plaintiffs' ability to monitor compliance with the Settlement Agreement and to represent individual members

---

[4]    It must be remembered that MHS has licensed the use of InterQual® Criteria to <u>more than 4,000 health care providers and government agencies</u>. It is hard to believe that, given such widespread distribution, there has been total compliance with the restrictions MHS seeks, even assuming they were included in the licensing agreements.

of the class. Perhaps the most far-reaching restriction sought by the Non-Parties is limiting disclosure of the Criteria to cases in which authorization for specific services has already been denied. As noted in the Court's earlier ruling granting Plaintiffs' Motion to Compel, federal regulations entitle Medicaid beneficiaries enrolled in HSCSN, as well as those eligible to be enrolled in HSCSN, to access the InterQual® Criteria. Indeed, it seems that HSCSN itself is aware of its obligations to make the Criteria available to Medicaid beneficiaries and providers, since its October 2006 Policy Memorandum states that providers and covered individuals are to be made aware of the InterQual® Criteria and that the Criteria are to be made available to them upon specific request. See "Medical Necessity Criteria Development, Evaluation, And Approval."

There is much force to Plaintiffs' argument that they need access to standards, such as the InterQual® Criteria, used by a Government agency, or its contractors such as HSCSN, to make decisions regarding the provision of Medicaid benefits in order to enable them to effectively advocate for their clients. Moreover, Plaintiffs have emphasized that they never intended widespread public disclosure of the Criteria, and that they have limited those to whom they have sought to disclose the Criteria. As this Court has repeatedly said in its ruling on Plaintiffs' initial Motion to conduct limited discovery and on their second Motion to compel specific discovery, it is essential for them to know what criteria HSCSN relies upon in making its decisions about authorization, as well as termination, of services for children with special needs. Without knowing these criteria, beleaguered caretakers of those children cannot effectively advocate for the services to which they are entitled. Nor can they, in the absence of knowledge about the Criteria, make alternative plans to provide care for their children even if they are not entitled to Medicaid benefits.

While there are intangible joys and rewards for caring for a child with special needs, the day-to-day burdens of such care can challenge the strength of even the most loving caregiver.

In sum, the Motion of Non-Parties for a Stay of the February 6, 2009 Order is **denied as moot**, and the Motion of Non-Parties for Reconsideration of the February 6, 2009 Order and for a Protective Order is **granted in part and denied in part**.


November 12, 2010                               /s/
                                                Gladys Kessler
                                                United States District Judge


**Copies via ECF to all counsel of record**