# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OSCAR SALAZAR, *et al.*,                       :
                                               :
                          Plaintiffs,          :
                                               :
              v.                               :        **Civil Action No. 93-452 (GK)**
                                               :
DISTRICT OF COLUMBIA, *et al.*,                :
                                               :
                          Defendants.          :

## <u>MEMORANDUM OPINION</u>

Plaintiffs have filed a Motion for an Award of Litigation Costs, Including Attorneys' Fees and Expenses, for July Through December 2007 and for 2008. They seek a total of $1,010,438.12 for this work. Upon consideration of the Motion, the Opposition, the Reply, and the extensive record in this case, the Court concludes that the Motion should be **granted in part and denied in part**.[1]

Paragraph 64 of the Settlement Order entered January 25, 1999, provides that Plaintiffs' counsel shall be paid $75 an hour for handling the claims of individual class members, regardless of the experience level of the lawyer who performs the work. "This hourly rate shall be adjusted annually, beginning on January 1, 1999, based on the U.S. Department of Commerce Consumer Price Index for Legal Services" ("National Legal Services CPI").

---

[1]      This Motion for work performed in 2007 and 2008 was not filed until December 1, 2009, almost one year after completion of the work for which fees are sought. The Motion was not fully briefed until April 28, 2010. The Court was unable to reach the merits of the Motion and, as explained in its Order of December 21, 2010 [Dkt. #1672], felt it only fair to grant Plaintiffs' Motion for an Award of Uncontested Litigation Costs, Including Attorneys' Fees and Expenses for July Through December 2007 and for 2008, despite the fact that the Motion was in fact opposed by Defendants. As the Court cautioned in granting that Motion, it was not a ruling on the merits, and the parties' arguments on the merits would be fully considered when the underlying Motion for Attorneys' Fees and Expenses was decided, as the Court will now do.

Paragraph 65 of the Settlement Order provides that Plaintiffs' counsel shall be paid at the rates of $315 an hour for the time of Bruce J. Terris and Lynn Cunningham, and $265 an hour for the time of Kathleen L. Millian and Jane Perkins, for monitoring Defendants' Compliance with the Settlement Order. Reasonable paralegal time shall be compensated at the rate of $75 an hour. "These hourly rates shall be adjusted annually, beginning on January 1, 1999, based on the U.S. Department of Commerce Consumer Price Index for legal services."

Paragraph 66 of the Settlement Order states that "the parties do not intend these rates [in Paragraphs 64 and 65] to apply for any purpose other than those set forth in [those paragraphs]."

As to work not specifically covered by Paragraphs 64 and 65, this Court ruled on October 30, 2000, that the Laffey matrix rates, which had been upheld by our Circuit,[2] should be updated by application of the National Legal Services CPI rather than the D.C. All-Items CPI. Salazar v. D.C., 123 F. Supp.2d 8, 11-15 (D.D.C. 2000) ("Legal Fees Opinion").

1.　　Defendants' primary argument is that the Index used to update the agreed hourly rates specifically set forth in ¶¶ 64 and 65 of the Settlement Order and in determining the appropriate rates for other work described in ¶ 66 of the Order, should be changed. It is a little late for Defendants to be making this argument. This Court decided, way back on October 30, 2000, how attorneys' fees were to be calculated and what Indexes were to be used for updating those calculations as time wore on in implementing the Settlement Order. Salazar, id.. In other words, to state the obvious, that decision was issued more than 10 years ago. At least seven Orders and explanatory Opinions awarding attorneys' fees to Petitioners have since been issued. Defendants took no appeal from the

---

[2]　　Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996); Save our Cumberland Mountains v. District of Columbia, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc).

2000 ruling, nor did they ever file a motion for reconsideration and/or modification of the Settlement Order under Rule 60(b) of the Federal Rules of Civil Procedure.

Even if Defendants had filed such a Motion, in a somewhat more timely fashion, they would not have met the requirements of Rule 60(b)(5). First, that Rule requires, that any motion made under Rule 60(b) be made within a reasonable time and "no more than a year after the entry of the judgment or order or the date of the proceeding." Obviously, Defendants have not meet that requirement.

Second, our Court of Appeals has stated clearly that when a settlement agreement is involved, as in this case, Rule 60(b) relief is "an extraordinary remedy, as would be any device which allows a party . . . to escape commitments voluntarily made and solemnized by a court decree." NLRB v. Harris-Teeter Supermarkets, 215 F.3d 32, 35 (D.C. Cir. 2000).

Third, our Circuit has also emphasized that "[t]he case law makes clear that Rule 60(b)(6) is not an opportunity for unsuccessful litigants to take a mulligan." Kramer v. Gates, 481 F.3d 788, 792 (D.C. Cir. 2007). More specifically, the Circuit has said "[r]ule 60(b) . . . cannot be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." So. Pacific Communications Co. v. Am. Tel. & Tel. Co., 740 F.2d 1011, 1017 (D.C. Cir. 1984).

Fourth, Defendants also rely upon Rufo v. Inmates of Suffolk Cty. Jail, 501 U.S. 367 (1992). In Rufo, the Supreme Court "carefully delineated the three conditions under which modification of a consent decree under Rule 60(b)(5) may be appropriate, (1) when changed factual conditions [or law] make compliance with the decree substantially more onerous, (2) when a decree proves to be unworkable because of unforeseen obstacles, or (3) when enforcement of the decree without modification would be detrimental to the public interest." See this Court's extensive

discussion of <u>Rufo</u> and <u>Horne v. Flores</u>, __ U.S. __, 129 S.Ct. 2579, 2596-97, 174 L.Ed.2d 748 (2009) in <u>Salazar v. D.C.</u>, 685 F. Supp.2d 72, 77 (D.D.C. 2010). None of these three conditions have been satisfied by Defendants.

In sum, Rule 60(b) cannot form the procedural vehicle for Defendants to now raise this issue, more than 10 years after the Court first ruled on it. Consequently, the law-of-the-case doctrine applies and the original Legal Fees Opinion stands. <u>Kimberlin v. Quinlan</u>, 199 F.3d 496, 500 (D.C. Cir. 1999); <u>LaShawn A. v. Barry</u>, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (<u>en</u> <u>banc</u>).

2. Turning to the merits, Defendants argue that use of the National Legal Services CPI to update the agreed-upon hourly rates set forth in ¶¶ 64-65 of the Settlement Order and to determine the appropriate rates for other work described in ¶ 66 of the Order, should not be applied because "it is no longer equitable to apply this index and doing so results in paying counsel in this case far more than is necessary to attract competent counsel in fee-shifting complex litigation in the District of Columbia." Defs.' Opp. at 2. In its Legal Fees Opinion deciding this issue, the Court explained at some length why use of the National Legal Services CPI, rather than the updated <u>Laffey</u> matrix, which relies on the D.C. All-Items CPI, should be used. Those reasons still persuade the Court of the correctness of that decision.

Most significantly, the Court still believes that use of the National Legal Services CPI "has the distinct advantage of capturing the more relevant data because it is based on the legal services component of the Consumer Price Index rather than the general CPI on which the U.S. Attorney's Office matrix is based." <u>Salazar</u>, 123 F. Supp.2d at 14-15. As the Court explained in the Legal Fees Opinion, relying upon the explanation of Plaintiffs' expert Dr. Michael Kavanaugh, the D.C. All-Items CPI "does not contain a separate component for legal services -- and that such services are

included in a much larger, more generalized category of 'other goods and services.'" Id. at 15. Dr. Kavanaugh's explanation makes good sense: "[e]conomists use as specific an index as possible to determine changes in prices in a part of an industry" and therefore "components of the Consumer Price Index are the better tool to use to update an industry's prices rather than the entire Consumer Price Index." Id. Defendants failed to offer any adequate substantive rebuttal to this reasoning back in 2000, and still have no answer to this reasoning.

It is clear that Defendants' main justification for seeking a change in the calculation of the updates of attorneys' fees indexes is the fact that the U.S. Attorney's Office Matrix produces lower rates than use of the National Legal Services CPI. While that justification is certainly understandable from Defendants' perspective, and it is undeniable that the District of Columbia, like so many municipalities throughout the country, faces extremely difficult budgeting decisions because of its revenue shortfalls, that is not an adequate or appropriate reason to change the Index used for updating the Laffey matrix rates for legal services not specified in Paragraphs 64 and 65 of the Settlement Order.

The D.C. All-Items CPI, which Defendants wish to apply, measures the goods and services consumed by ordinary citizens on a regular basis, including food, housing, gas, clothes, etc. While it does include legal services, it is significant that 99.7 percent of that Index includes other consumer items that do not relate to the rate of change in fees for legal services. In contrast, the National Legal Services CPI includes only the rate at which prices change for various kinds of legal services. In addition, while the National Legal Services CPI update does include flat or fixed fees for simple legal services, as Defendants contend, it also includes numerous other activities performed by

attorneys, many of which are activities involving complex litigation. In other words, it is a composite of flat fee and hourly rate based services.

Finally, although Defendants are correct that the National Legal Services CPI does include some legal services which are not particularly relevant to the hourly rates for complex federal litigation which are the basis for this fee petition, the totality of legal services included in that Index is clearly far more relevant than the tiny portion of legal services (3 percent) which is included in the D.C. All-Items CPI. As already noted, the D.C. All-Items CPI overwhelmingly considers a whole range of consumer products that have nothing to do with legal services, whereas the National Legal Services CPI involves only legal services, many of which are those involved in complex litigation, including Supreme Court litigation.[3]

The affidavit submitted by Dr. Laura Malowane, Defendants' expert, does not refute the proposition that the National Legal Services CPI remains a more accurate reflection of the actual costs of litigation in the District of Columbia than the D.C. All-Items CPI. Moreover, in her affidavit, Dr. Malowane relies heavily on a series of figures that she identifies as "Billing Rates (Greater Washington, D.C.)." However, she does not identify the source of this data, nor did she provide it, when requested, to Plaintiffs to review. Thus, the Court cannot evaluate the reliability or accuracy of her computations and conclusions.

---

[3]    For example, the National Legal Services CPI includes research and analysis, discovery, drafting legal documents, preparing and questioning witnesses and consulting experts. Those lawyers surveyed are asked to classify the complexity of their services, whether such services were performed in Federal or State courts, and whether the activities took place at the Trial court, Appellate court or Supreme Court level.

3.     Plaintiffs are requesting $48,538 to prepare for and attend ten of the regularly scheduled informal, but now on-the-record, Status Conferences.[4]  Plaintiffs concede that they are requesting approximately $4,800 per Status Conference. While this amount is substantially less than those previously submitted for the same activity, which the Court reduced, the amount is still high given that three attorneys routinely attend these Conferences for Plaintiffs.  Therefore, the Court will reduce the total amount of $48,538 by 10 percent.

4.     Defendants argue that Plaintiffs have spent an enormous amount of effort and time regarding the manner in which MCOs, in particular HSCSN, make determinations of medical necessity.  The Court has already ruled that work on this issue is within the scope of Plaintiffs' duty to monitor the Settlement Order.  Plaintiffs are requesting in this fee petition slightly more than $85,000 for litigating the discovery issues, including those regarding HSCSN.  The total amount of fee requests made by Plaintiffs for this activity, as of the end of 2009, amount to $174,289.28.  Defendants have asked that the $85,000 sought on this issue be held in abeyance pending a final decision on a Motion to Reconsider the Court's ruling allowing discovery.  The docket does not indicate that any such Motion is still pending, and therefore, the Court will now rule on this request.

As this Court noted in <u>Smith v. District of Columbia</u>, 466 F. Supp.2d 151, 158 (D.D.C. 2006), "the ultimate inquiry is whether the total time claimed is reasonable." Asking for a total of $174,289.28 for litigation of discovery requests is simply not reasonable.  Consequently, the Plaintiffs' request of $85,000 in this fee petition must be reduced by 10 percent.

---

[4]     Four of these status conferences were cancelled after Plaintiffs had fully prepared for them.

5.     Plaintiffs seek $17,472 for their work monitoring the Dental Order.  Defendants request in their Opposition filed on February 12, 2010, that the Court defer ruling on this issue until it has decided the then-pending Motion of Defendants to Vacate the Dental Order.  That decision has been made and a Memorandum Opinion was issued on February 18, 2010, denying the Motion. Salazar v. D.C., 685 F. Supp.2d 72 (D.D.C. 2010).  However, Plaintiffs are not seeking these fees at this time so as to give Defendants an opportunity to raise any objections they may have.

6.     Plaintiffs request $39,468 for their work relating to blood lead testing.  After Plaintiffs filed their Enforcement Motion regarding blood lead testing, the parties agreed that it was more productive to have Dr. Ireys perform a study to determine the actual blood lead testing rate in the District of Columbia and what obstacles exist to children receiving the blood lead screenings which are so important, than to litigate the Motion.  It is not fair to say, as Defendants argue, that Plaintiffs "have not prevailed on their Motion."  Defs.' Opp. at 13.  Applying the general principle that when parties are able to settle an issue, each side wins approximately 50 percent of what they sought, the Court will allow 50 percent of Plaintiffs' attorneys' fees regarding their work on the blood lead testing issue.

6.     Defendants argue that the reductions Plaintiffs have made in their fee request for billing judgment are extremely minor and that, after taking into account specific reductions, the total amount awarded should be reduced by 10 percent to account for failure to exercise realistic billing judgment, as well as for providing inadequate billing records.  Defendants have made this argument in just about every fee petition request made.  Defendants are correct that there was a very minor reduction made by Plaintiffs for the exercise of billing judgment.  However, Defendants' claim of inadequate billing records is not justified.  In a fee request containing some 7,000 plus entries, there

are bound to be a few that are less than clear. In the instances cited by Defendants, they admit that the entries related to the InterQual issue. The Court finds that sufficient.

The Court has frequently noted the extremely high amounts of attorneys' fees requested by Plaintiffs. Indeed, the pending fee request, which is for an 18 month period, is proportionally higher than the previous fee request which was for only six months. Even if the Court were to triple that former fee request of $345,683.39 to account for the 18 month pending request, this request for over $1 million would now be one of the highest ever submitted by Plaintiffs. The Court remains convinced that, while the quality of Plaintiffs' work remains excellent, there is overstaffing, too much time is spent on particular activities such as preparing for Status Conferences and discovery, and Plaintiffs submit Court filings that are simply too long.[5] For these reasons, the Court concludes that an across-the-board reduction of 10 percent is appropriate for those categories of fees that have not already been specifically addressed in this Opinion.

---

[5]    A few examples will suffice. Plaintiffs request $10,471.48 for 28.32 hours expended by five separate attorneys on vague "Strategy Discussions" for July - December 2007. Plaintiffs request nearly $9,500 for 26.28 hours of work spent by four attorneys on a September 2007 scheduling/status conference. Plaintiffs seek $4,295.04 for 13.83 hours of unspecified "Legal Research" conducted by four attorneys. Plaintiffs seek nearly $19,000 to cover the costs of 55.15 hours spent by three attorneys and two paralegals in drafting a reply brief for an attorneys' fees application. Plaintiffs request $22,641.28 for more than 44 hours devoted by five separate attorneys and 9.72 hours by a paralegal for drafting an attorneys' fees application. Plaintiffs seek a total of $25,800.95, representing more than 70 hours of work, for four scheduling/status conferences for January - June 2008. For three of these four conferences, Plaintiffs seek fees for the work of four separate attorneys. Finally, Plaintiffs request over $18,000 for more than 55 hours spent by six attorneys drafting a single motion to compel.

For all these reasons, the Court concludes that Plaintiffs' Motion should be **granted in part and denied in part**.


January 4, 2011                                    /s/
                                                   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                                   Gladys Kessler
                                                   United States District Judge

**Copies via ECF to all counsel of record**