# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| OSCAR SALAZAR, <u>et al.</u>, | : |
| Plaintiffs, | : |
| v. | :     Civil Action No. 93-452 (GK) |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | : |
| Defendants. | : |

## <u>MEMORANDUM OPINION</u>

Plaintiffs' counsel have filed a Motion for an Award of Litigation Costs, Including Attorneys' Fees and Expenses, for 2012 and for Work in the District Court That Had Been Held in Abeyance Related to Defendants' Motion to Terminate the Consent Decree [Dkt. No. 1850]. The Court has already awarded Plaintiffs' counsel $482,663.13 for fees undisputed by Defendants [Dkt. No. 1891]. Therefore, the amount remaining to be dealt with in this Motion is $851,853.46, and Plaintiffs' counsel seek a total award of $1,334,516.59.[1] Upon consideration of the Motion, the Opposition [Dkt. No. 1882], the Reply [Dkt. No. 1903], Defendants' Surreply [Dkt. No. 1909], an Errata [Dkt. No. 1912], Plaintiffs' Supplemental Brief [Dkt. No. 1943], and

---

[1] Plaintiffs' counsel originally sought $1,352,052.28 in fees and expenses. Mot. at 2. However, in their Reply, Plaintiffs' counsel reduced their request by $17,535.69. See Pls. Ex. 26 [Dkt. No. 1903-5].

the extensive record in this case, the Court concludes that the Motion should be **granted in part and denied in part**.

Defendants raise many arguments that were addressed at length in the Court's recent Memorandum Opinion [Dkt. No. 1922] granting in part and denying in part Plaintiffs' Motion for an Award of Litigation Costs, Including Attorneys' Fees and Expenses, For 2011 and Certain Categories and Work from 2010 Through 2012 That Had Previously Been Held in Abeyance or Not Decided. Salazar v. Dist. of Columbia, No. 93-452, __ F. Supp. 2d __, 2014 WL 342084 (D.D.C. Jan. 30, 2014) ("Salazar III"). The Court will incorporate the analysis in Salazar III and focus this opinion on the resolution of arguments that were not previously raised.

## I. APPROPRIATE BILLING RATES FOR COUNSEL

In Salazar III, 2014 WL 342084, at *1-*3, this Court upheld the use of the Legal Services Index ("LSI") of the Nationwide Consumer Price Index ("CPI") to update the Laffey rates at which Plaintiffs' counsel are compensated. For all of the reasons laid out in Salazar III, the Court again concludes that the LSI is a more reasonable and accurate index for the costs of legal fees than the All-Items CPI for the Washington, D.C. area. See id.; see also Eley v. Dist. of Columbia, No. 11-309, __ F. Supp. 2d __, 2013 WL 6092502, at *9-*10 (D.D.C. Nov. 20, 2013) (a

-2-

thorough and comprehensive decision by Judge Beryl Howell that reached the same conclusion). Thus, Defendants' request to apply the All-Items· CPI for the Washington, D.C. area shall be **denied**.

## II. **APPROPRIATE BILLING RATES FOR SERVICES OF PARALEGALS TO INDIVIDUAL CLASS MEMBERS, PURSUANT TO PARAGRAPH 64 OF THE SETTLEMENT ORDER**

Defendants argue that Paragraph 64 of the Settlement Order prohibits Plaintiffs' counsel for charging for the work non-lawyers provide to individual class members. See Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997, at 40 (emphasis added) [Dkt. No. 663] ("Settlement Order"). In Salazar III, this Court ruled that paralegals may be compensated for such work under the Settlement Order. 2014 WL 342084, at *3-*4. Defendants raise no new arguments, and, thus, their request to deny fees for work done by paralegals is again **denied**.

## III. **LEGAL WORK ON BEHALF OF INDIVIDUAL CLASS MEMBERS**

### A. **Adequacy of Time Records**

Defendants challenge Plaintiffs' counsel's "pervasive use of vague billing descriptions and block billing." Defs.' Opp'n at 13-18. They seek a 10% across-the-board reduction for vagueness and a 5% across-the-board reduction for block billing.[2]

---

[2] Defendants also request a 5% reduction for "duplicative work by multiple attorneys." Defs.' Opp'n at 18-19. The substance of Defendants' claim overlaps with their request for a general

-3-

Defendants cite several cases establishing that time records which include unrelated tasks that do not specify how much time was spent on each task are insufficient. Defs.' Opp'n at 17. However, that is not the situation here.

The Court finds that Plaintiffs' counsel's time records, including those cited by Defendants, contain a high level of detail. Plaintiffs' counsel have summarized how much time was spent on each type of case (i.e. reimbursement, reimbursement fair hearings, recertification, recertification fair hearings, referrals for non-class members, EPSDT). They use categories and subcategories to further identify the type of work described in the time entries. The time spent on each individual task for each class member is specified down to the minute.

Thus, the time records for individual claims are presented in a fashion that allows this Court to review Plaintiffs' counsel's records for reasonableness. Because the time records are adequate and for the same reasons the Court rejected this argument in Salazar III, 2014 WL 342084, at *4, Defendants' request for across-the-board reductions for vagueness and block-billing shall be **denied**.[3]

---

across-the-board reduction for overstaffing, Defs.' Opp'n at 9-10, and will be addressed below in Section XIV.
[3] The Court also encourages the parties to confer about providing Plaintiffs' counsel's time records in an electronic format that

**B.    Unsuccessful Individual Claims**

Defendants object to $22,132.11 in fees that Plaintiffs' counsel have requested for work on four individual claims where Plaintiffs did not prevail. Defs.' Opp'n at 19-22.

The Court has recently emphasized that "Plaintiffs are entitled to attorneys' fees for the work they do to monitor Defendants' compliance with the extensive and detailed Settlement Order, negotiated and consented to by all parties in this case, as long as the efforts of Plaintiffs' counsel are 'reasonably related to the claims upon which Plaintiffs were definitely successful.'" 2014 WL 342084, at *4 (quoting Turner v. Orr, 785 F.2d 1498, 1504 (11th Cir. 1986)); see also Blackman v. Dist. of Columbia, 390 F. Supp. 2d 16, 20 (D.D.C. 2005) (noting that "test is whether the later issues litigated were inextricably intertwined with those on which the plaintiff prevailed in the underlying suit") (quotation and citation omitted).

This does not mean, as Defendants suggest, that this Court has granted de facto prevailing party status to Plaintiffs for every claim they make. However, Plaintiffs' counsel are clearly entitled to compensation for the work they do representing individual class members on claims related to denials or

might permit Defendants to sort and search them in a more efficient fashion.

reduction of services to EPSDT-eligible children and for failures to reimburse beneficiaries for out-of-pocket expenses, issues that were long ago decided in Plaintiffs' favor by this Court. See Salazar v. Dist. of Columbia, 954 F. Supp. 278, 328-34 (D.D.C. 1996). By the same reasoning, Plaintiffs' counsel are not entitled to fees for work done on "a claim that is distinct in all respects from [Plaintiffs'] successful claims." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983).

Three of the individual claims challenged by Defendants involved representing individuals in administrative hearings on issues "inextricably intertwined" with those on which Plaintiffs prevailed in this suit. First, Plaintiffs' counsel requested a fair hearing for "R.E." to challenge a decision to suspend or terminate the child's chiropractic therapy services without adequate advance notice. Second Affidavit of Bruce J. Terris, at ¶ 20 (Dec. 5, 2013) ("Second Terris Affidavit") [Dkt. No. 1903-3]. Eventually, a third party paid for the services, so a fair hearing was no longer necessary. Id.

Second, Plaintiffs' counsel requested a fair hearing for "D.H." to request reimbursement for significant out-of-pocket expenses owed to her for medical services rendered to her children. Id. at ¶ 21. Near the date of the hearing, D.H.

withdrew her request for reasons beyond the control of counsel. Id.

Third, Plaintiffs' counsel requested a fair hearing for "R.H." to challenge a decision by the DC Healthy Smiles Program denying payment for deep gum and root cleaning and surgical bone reshaping services. Id. at ¶ 22 (incorporating Second Affidavit of Bruce J. Terris, at ¶ 29 (Aug. 26, 2013) [Dkt. No. 1859-1]).[4] R.H. eventually was unable to keep dental appointments for a period of time, and Plaintiffs' counsel eventually lost contact with him and his mother. Id.

All three claims involved representing individuals in administrative hearings on issues "inextricably intertwined" with those on which Plaintiffs prevailed in this suit. The Court has already found that Plaintiffs' counsel are entitled to compensation for representing class members within the scope of the Settlement Order, even if the client chooses to withdraw her case or if the firm loses contact with the client. Salazar III, 2014 WL 342084, at *5. Thus, Defendants' request to deny fees for these three claims because Plaintiffs' counsel were unsuccessful shall be **denied**.

---

[4] This Court already found that "Defendants identify no evidence that indicates the representation of [R.H.] was outside the scope of the Settlement Order, nor that the dismissal[] [was] on the merits." Salazar III, 2014 WL 342084, at *5.

However, Defendants are correct that they should not be billed $6,002.13 for the 44.792 hours of work Plaintiffs' counsel did on behalf of "A.S." Defs.' Opp'n at 21-22. The issue in that case was whether the Social Security Administration erroneously withheld a portion of A.S.'s Supplemental Security Income. Plaintiffs concede that the District of Columbia did not act in error and the relief Plaintiffs' counsel pursued and obtained was from the federal government, not the District of Columbia. Id. at ¶ 23. Thus, the claim is "distinct in all respects" from Plaintiffs' claims against the District of Columbia, Hensley, 461 U.S. at 440, and the $6,002.13 billed for representing "A.S." shall be **denied.**

## C. Alleged Excessive Billing

Defendants argue that Plaintiffs' counsel have billed an excessive amount of time for work on individual claims, and seek a 40% across-the-board reduction to all fees claimed for individual work. Defs.' Opp'n at 22-24.

First, Defendants note that Plaintiffs' counsel are seeking more compensation for work done in calendar year 2012 than they sought for work done in calendar year 2011. Defs.' Opp'n at 22. Plaintiffs' counsel explained that there was a significant increase in the number of individuals requesting assistance, particularly because of Defendants' continuing failure to

-8-

provide timely reimbursement notices and an increase in recertification processing problems. Pls.' Mot. at 19-22.

Plaintiffs' counsel are obligated under the Settlement Order to assist the members of the class, and Defendants have not provided any reason to doubt Plaintiffs' counsel's assertions that the number of individuals requiring assistance increased. Thus, the fact that Plaintiffs' counsel billed a higher amount this year than last year does not, in and of itself, signify that their requested amount is excessive.

Second, Defendants argue that comparing the time spent on individual claims by Plaintiffs' counsel to the time spent by counsel for their adversaries reveals that Plaintiffs' counsel are overlitigating. Defs.' Opp'n at 22. The Court has already found such comparisons inapt. Salazar III, 2014 WL 342084, at *6 n.7 (noting that "[s]o many different factors enter into the reasons for the differences between [hours spent by Plaintiffs' counsel and hours spent by counsel for a Managed Care Organization ("MCO")] that the Court finds the comparison of no help whatsoever"); id. at *6 n.5 (stating that comparison between Plaintiffs' counsel and Defendants' counsel "would, for many reasons, be of little use to the Court").

The Court notes that although the amounts and services sought in these claims may be relatively small to the Defendants

-9-

and their MCOs, the amounts are both large and incredibly significant to Medicaid beneficiaries. Thus, in the absence of any compelling justification, the across-the-board reduction for all work on individual claims sought by Defendants shall be **denied**.

The Court will address the specific examples raised by Defendants in turn. First, Plaintiffs' counsel billed Defendants $12,837.33 for 95.801 hours of work related to the case of "R.P." Defendants argue that this amount of work for a single status hearing is "grossly excessive" and particularly object to being billed 1.68 hours for basic research and 1.32 hours for reviewing Office of Administrative Hearing rules. Defs.' Opp'n at 23. Plaintiffs' counsel argue that they "spent substantial time developing RP's case," including sending cease and desist letters, making document requests, drafting a discovery motion, negotiating settlement, and monitoring compliance with the settlement agreement. Pls.' Reply at 18. Based on the record, the Court concludes that the claim for $12,837.33 shall be **reduced by 10%**.

Second, Plaintiffs' counsel billed Defendants for 30.748 hours of work related to the case of "D.K." Defendants argue that the amount is excessive because the case was resolved prior to an evidentiary hearing. Defs.' Opp'n at 23. Plaintiffs note

that only 27.56 hours were charged for work on the "D.K." case. Id. at 18 n.15. They also insist that the amount of time charged is reasonable because there were seven status conferences. They eventually engaged in direct negotiations with the provider's attorney and obtained a favorable resolution of the case without an evidentiary hearing. Pls.' Reply at 18.

Plaintiffs' counsel should not be penalized for obtaining a settlement rather than trying their case. Thus, the Court concludes that fees for the 27.56 hours requested for this work are reasonable and shall be **granted.**

Third, Plaintiffs' counsel billed Defendants for 21.367 hours of work related to the case of "E.C."[5] Defendants again argue that is excessive given that there was only one status conference held in this case. Defs.' Opp'n at 23. Plaintiffs' counsel argue that E.C.'s services were improperly terminated due to a mistake by Defendants, and that it took a substantial amount of time to identify how and where the error had occurred and obtain a reinstatement of E.C's eligibility and services. Pls.' Reply at 19-20. Based on the record, the Court concludes that the amount billed for the 21.367 hours spent on the "E.C." matter shall be **reduced by 5%.**

---

[5] One of Defendants' specific objections was that Plaintiffs' counsel billed almost an hour to file a Notice of Appearance. Defs.' Opp'n at 23. In their Reply, Plaintiffs removed their request for that time. Pls.' Reply at 19; Pls. Ex. 26.

Fourth, Plaintiffs' counsel billed Defendants for 217.29 hours of work related to the case of "T.M.," including over 60 hours of work for reviewing medical records. Defs.' Opp'n at 23-24. Plaintiffs' counsel explain that T.M. is a severely disabled child and that the claim challenged a decision to reduce his nursing hours by more than half. Pls.' Reply at 19. They insist that T.M.'s complex medical problems, which changed over the course of the representation, required detailed review of thousands of pages of medical records. Id. Even though it is a large amount of hours, the Court concludes that the fees for 217.29 hours of work for this matter are reasonable and shall be **granted.**

Fifth, Plaintiffs' counsel billed Defendants for 86.967 hours of work related to the case of "J.C." Defendants' only argument is that the MCO spent less than half of that time defending the claim. Defs.' Opp'n at 24. Plaintiffs' counsel explain that they met several times with the child's parent, therapists, and physicians, and eventually obtained a settlement agreement re-establishing that speech and language therapy services were medically necessary. Pls.' Reply at 20. Based on the record, the Court concludes that Plaintiffs' counsel's request for 86.967 hours for work on the "J.C." case is reasonable and shall be **granted.**

## IV.  SETTLEMENT DISCUSSIONS

During 2012, the parties engaged in settlement discussions for which Plaintiffs' counsel bill the District of Columbia $245,548.83[6] for over 585 hours of work.[7] Defendants argue this is excessive and ask the Court to reduce that amount by 50%.

The Court addressed the same arguments in 2011. Salazar III, 2014 WL 342084, at *8. The Court found that comparing the number of individuals each party brought to settlement discussions was "a comparison between apples and oranges." Id. Moreover, the Court noted that Plaintiffs' counsel are billing for settlement discussions at the monitoring rate set forth in Paragraph 65 of the Settlement Order, rather than the higher rates charged for non-monitoring work under Paragraph 66. Id. Thus, for the same reasons set out in Salazar III, Defendants' request for a reduction of fees billed for settlement discussions shall be **denied.**

## V.  MOTION TO TERMINATE CONSENT DECREE

On March 18, 2009, Defendants filed a Motion to Terminate Consent Decree and Subsequent Remedial Orders and To Dismiss the

---

[6] Defendants originally identified $130,936.44 as the amount of fees requested for work related to settlement, but filed an Errata clarifying the amount. Errata Concerning Defs.' Opp'n to Pls.' 2012 Fee Application [Dkt. No. 1912].

[7] This does not include the significant amount of hours charged for work done by co-counsel related to settlement, an issue addressed below. See infra Sec. XIII.

Case ("Motion to Terminate") [Dkt. No. 1456, refiled at Dkt. Nos. 1481, 1482]. The Court issued an Order concluding that the most efficient way to resolve the Motion to Terminate was to first consider the discrete legal question of whether or not Plaintiffs have a private right of action to enforce the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") services provision of the Medicaid Act under 42 U.S.C. § 1983. Order of May 26, 2009 [Dkt. No. 1489].

On August 5, 2010, the Court concluded that the Supreme Court's decision in Gonzaga University v. Doe, 536 U.S 273 (2002), did not preclude Plaintiffs' assertion of a private right of action. Salazar v. Dist. of Columbia, 729 F. Supp. 2d 257, 268-271 (D.D.C. 2010).

The Court has not yet addressed the District's other grounds for moving to terminate the consent decree -- namely, that Defendants are now in compliance with federal law and are unlikely to violate those laws in the future. See Motion to Terminate, at 20-50. In part, this is because the District appealed the Court's ruling on the private right of action issue without first seeking a ruling on its alternative argument. On March 13, 2012, that appeal was dismissed by the Court of Appeals for lack of jurisdiction. Salazar ex rel. Salazar v. Dist. of Columbia, 671 F.3d 1258 (D.C. Cir. 2012).

-14-

In the two years since the Court of Appeals ruled, Plaintiffs have not renewed their request for discovery[8] and the District has not sought a ruling on its alternate argument. The Court understands that this issue is being addressed in the comprehensive settlement negotiations that the parties have been engaged in over the last few years. The Court fully supports these efforts.

Plaintiffs' counsel now seek $170,838.89 in fees for 282.75 hours spent on work related to Defendants' motion. They argue that Defendants have "effectively abandoned" the remaining issue. Mot. at 23. Defendants raise two arguments. First, they argue that it is premature for Plaintiffs' counsel to bill for this work because a significant part of the Motion remains pending. Defs.' Opp'n at 31. They cite the Court of Appeals determination dismissing their appeal as evidence that no "final order" has been issued. Id. (citing 671 F.3d at 1259). Second, they argue that the Court should reduce the amount requested by Plaintiffs' counsel by at least $29,996.03 because the billing is excessive and unreasonable. Defs.' Opp'n at 22-23.

---

[8] Plaintiffs originally filed a motion for discovery stating that Plaintiffs "need to conduct substantial discovery" in order to respond to the portion of Defendants' motion that claims they are now in compliance with the Medicaid Act. Pls.' Mot. to Take Discovery [Dkt. No. 1472]. That motion was denied in light of the Court's determination to first resolve the legal issue. Order of May 26, 2009 [Dkt. No. 1489].

The Court will not address the second of Defendants' arguments because it agrees with the first. Only four months before this Motion was filed, Plaintiffs acknowledged that the Motion to Terminate "remains pending in this Court." Pls.' Mem. of Law in Support of Their Mot. for an Award of Litigation Costs, Including Attys.' Fees & Expenses, For 2011 & Certain Categories of Work From 2010 Through 2012 That Had Previously Been Held in Abeyance or Not Decided, at 3 n.2 [Dkt. No. 1803-1]; see also id. at 5 (noting that they were holding in abeyance their request for fees relating to this matter as a matter "which ha[s] not yet been resolved"). Nothing has changed in these four months. Thus, the Court will again defer ruling on this issue until the Motion to Terminate has been resolved, and Plaintiffs' request for $170,838.89 in fees at this time shall be **denied.**

However, in order to clarify the record, the parties shall confer and file a Notice **by April 15, 2014,** informing the Court whether the Motion should be held in abeyance pending the ongoing settlement discussions, whether the Motion should be denied without prejudice, or whether the parties wish the Court to set a briefing schedule and a date for an evidentiary hearing on the remaining issues.

## VI. FEES ON FEES

Plaintiffs' counsel have billed Defendants $91,367.19 for four attorneys and three paralegals for approximately 175 hours spent preparing several fee requests and attempting to settle fee disputes. Defendants argue that the Court should reduce those fees by at least $20,063.34. The Court will address each request in turn.

### A. Settlement of Fee Request for the Second Half of 2010 and Preparation of Motion

Plaintiffs' counsel seek $19,077.90[9] for the 31.899 hours they spent settling their fee request for the second half of 2010 and preparing the undisputed Motion for fees. Defendants challenge two billing records and ask the Court to deny the $2,972.73 requested in those records,. Defs.' Opp'n at 27-28.

First, Defendants object to paying $2,165.30 for 2.95 hours used by Mr. Terris to "edit various orders," "edit praecipe," and "edit papers." Id. at 27. Plaintiffs' counsel argue that amount was reasonable because the work Mr. Terris reviewed was drafted by an Of Counsel lawyer, not a fellow partner. Pls.' Reply at 25. Based on the record, the Court concludes that the $2,165.30 shall be **reduced by 10%**.

---

[9] Plaintiffs originally sought $19,383.98, but agreed to not charge for time spent distributing fees awarded to co-counsel, and reduced their request by .419 hours, or $306.08. Pls.' Reply at 25 n.20; see Pls. Ex. 26.

Second, Defendants object to paying $660.64 for the 1.183 hours it took to prepare and file Plaintiffs' undisputed Motion for fees. Defs.' Opp'n at 27-28. Plaintiffs' counsel argue that was a reasonable amount of time to file a motion with fourteen exhibits and the required public notices. Pls.' Reply at 25. Based on the record, the Court concludes that this amount is reasonable and Defendants' request for reduction shall be **denied.**

## B. Attempted Settlement of Fee Requests for 2011 and Preparation of Motion

Plaintiffs' counsel seek $68,399.66 for 137.084 hours spent attempting to settle the amount of fees due for work in 2011 and time spent preparing the disputed Motion for fees. Defendants challenge four billing records and ask the Court to deny the $16,345.53 requested in those records. Defs.' Opp'n at 28-29.

First, Defendants object to paying $5,438.37 for an associate to "work on co-counsel fees." Plaintiffs' counsel argue that the amount of time was reasonable, and note that Defendants' overstated the billed amount by approximately $200. Pls.' Reply at 25-26, 25 n.21. Based on the record, the Court concludes that this amount is reasonable and Defendants' request for reduction shall be **denied.**

Second, Defendants object to paying $1,986.61 for Plaintiffs' counsel to "communicate with paralegal re settlement letter," "instructions to staff re settlement letter," "instruct paralegal on creating charts," and "review templates for charts." Plaintiffs' counsel argue that this amount of time spent "providing supervision and guidance" to paralegals was reasonable. Pls.' Reply at 26. Based on the record, the Court concludes that the $1,986.61 shall be **reduced by 5%**.

Third, Defendants object to paying $3,334.55 for an associate to "export time slips to database," "review timeslips," and "work on database for expenses." Plaintiffs' counsel argue that this work was part of "reviewing, supervising, and editing a paralegal's preparation of time records and other exhibits." Pls.' Reply at 26. Based on the record, the Court concludes that the $3,334.55 shall be **reduced by 5%**.

Fourth, Defendants object to paying $5,585 for Ms. Millian to respond to an email from the District of Columbia. Plaintiffs' counsel argue that there were in fact two emails from the District of Columbia requesting detailed information and asking several detailed questions. Pls.' Reply at 26. They insist that their ten page single-spaced response email, at a minimum, established the types of information Plaintiffs will

-19-

produce in future requests and explained Plaintiffs' counsel's billing requests to Defendants' counsel. Id. Based on the record, the Court concludes that this amount is reasonable and Defendants' request for reduction shall be **denied**.

### C. Attempted Settlement of Fee Requests for 2012 and Preparation of Motion

Plaintiffs' counsel seek $3,889.62 for the 5.467 hours of time spent attempting to settle the amount of fees due for work in 2012. Defendants challenge as vague one billing record, in which Mr. Terris billed $439 for speaking with other attorneys in the firm about settlement. Defs.' Opp'n at 29. Based on the record, the Court concludes that this amount is reasonable and Defendants' request for reduction shall be **denied**.

## VII. AGENDA LETTERS AND STATUS CONFERENCES

Plaintiffs' counsel request $70,843.12 for preparing for seven and attending six status conferences during 2012. In Salazar III, the Court held for the fifth time that Plaintiffs' counsel were overcharging for this type of work. 2014 WL 342084, at *8-*9. The Court reduced Plaintiffs' counsel's request of $52,730.52 for six status conferences by 35%. Defendants now seek to cap the amount awarded to Plaintiffs' counsel for each status conference at $4,895.83.[10] Defs.' Opp'n at 34. For the

---

[10] In its Opposition to Plaintiffs' 2011 Motion for Attorneys' Fees, Defendants requested that Plaintiffs receive a maximum of

seven conferences this year, that would permit Plaintiffs'
counsel $34,271.51 in fees.

Plaintiffs' counsel argue that the Court should instead
award the much higher "average" amount it has permitted for
status conferences over the years, namely, $8,759. Pls.' Reply
at 27; Pls. Ex. 58. They agreed to reduce their total fee
request to $61,313, which reflects an amount of $8,759 for each
of the seven conferences held in 2012.[11]

The Court notes that the chart made by Plaintiffs' counsel
to calculate the average amount awarded per status conference
contains an error.[12] Moreover, the chart does not reflect the
Court's decision in Salazar III that Plaintiffs' counsel should
receive only $5,172 for the six status conferences held in 2011,
a rate significantly below the $8,759 rate they now suggest.
2014 WL 342084, at *9.

As the Court noted in Salazar III, "[t]he Court is still of
the view that the letters are informative and are very helpful

$4,800 per status conference, based on the Court's decision in
Salazar v. Dist. of Columbia, 750 F. Supp. 2d 70, 75 (D.D.C.
2011). Their suggestion adjusts the $4,800 rate for inflation.
[11] Plaintiffs' counsel deducted an erroneous charge for $1,967,
Pls.' Reply at 28, but that amount was reduced from the total
amount they seek in fees, not the amount they seek per status
conference. Pls. Ex. 26.
[12] The Opinion addressing Plaintiffs' Motion for Fees for January
through June 2007 awarded fees for agenda letters and status
conferences based on five scheduled status conferences, not
three, as Plaintiffs' counsel presented. Mem. Op. of Oct. 28,
2009, at 10 [Dkt. No. 1520].

-21-

in highlighting important issues, . . . the Court firmly believes useful letters can be produced in less time." Id. at *9 n.12. Moreover, given that Defendants often bring two attorneys from the Attorney General's office and two experienced and knowledgeable agency administrators to each conference, it is not unreasonable for Plaintiffs to bring the two attorneys who are most well-versed in this case.

Even after taking into account those considerations, Plaintiffs' counsel still fail to offer any convincing justification for the high fees charged for preparing and participating in these conferences. Thus, based on the $5,172 awarded per status conference in 2011, the Court will award Plaintiffs' counsel $5,277.87 ($5,172 adjusted for inflation) for each of the seven status conferences held in 2012. See Pls. Exs. 6, 58 (setting forth method for calculating inflation of rates from year to year).

## VIII. INTRA-OFFICE CONFERENCES

Defendants claim that approximately $166,582.59 has been billed to the District "that involve some intra-office conference and much of this is duplicate billing." Defs.' Opp'n at 34. They ask the Court to reduce the amount billed by at least 25%.

In Salazar III, the Court found that a 20% reduction in fees sought for intra-office conferences was appropriate, noting that there were "[c]ertainly instances in the billing entries in which 3, 4, or 5 lawyers attended, and presumably participated in" intra-office conferences. 2014 WL 342084, at *6. However, the amount sought in that fees petition was only $25,000. Id. Here, however, Defendants have identified an amount more than six times as high. This appears to be because Defendants' estimate includes the total time on all billing records that mention a conference, but does not exclude time listed in those records spent on other tasks. Pls.' Reply at 28-29.

As already noted and as discussed further below, infra Sec. XIV, the overstaffing of this case is a serious issue. Our Court of Appeals has noted that it is problematic when the "hourly rates charged are of such magnitude as to indicate that the attorneys should have been able to decide on the proper strategy without the great number of strategy conferences attended by numerous firm lawyers." In re Olson, 884 F.2d 1415, 1429 (D.C. Cir. 1989) (noting that four principal lawyers worked on the case, but that the "number of conferences among the twenty-one attorneys who did some work on the matter were excessive"). Thus, the Court continues to be very concerned about Plaintiffs'

counsel's practices regarding intra-office conferences and how time is billed for these conferences.

Moreover, given the state of Plaintiffs' counsel's time records, it is difficult to ascertain exactly how many intra-office conferences occurred, how many attorneys attended each one, how much time each of the attorneys actually spent at each conference, and for how many of those attorneys Plaintiffs' counsel requested fees. Thus, in all future Motions for Fees, Plaintiffs' counsel <u>shall</u> identify the total amount they are requesting for time spent in intra-office conferences, the number of participants, the participants for whom they are billing Defendants, and the amount being billed for each participant.

Because the Court does not have a reasonable estimate of how much time Plaintiffs' counsel is billing for the 2012 intra-office conferences, and the burden is on Plaintiffs' counsel to provide sufficient information so that the Court can make a determination as to the reasonableness of the fees sought, the $166,582.59 sought in all time records that reference an intra-office conference shall be **reduced by 25%**.

## IX. ATTENDANCE AT MEETINGS OF THE D.C. MEDICAL CARE ADVISORY COMMITTEE ("MCAC")

Defendants challenge Plaintiffs' counsel's request for $8,250.71 for three lawyers and two paralegals to attend the monthly conferences of the MCAC. Defs.' Opp'n at 35-36. In Salazar III, the Court awarded fees for attending these meetings, noting that it was important to "keep up to date on plans and announcements of the District of Columbia Department of Health Care Finance about the Medicaid program," and recognized that Plaintiffs' counsel often send paralegals instead of lawyers to keep costs down. 2014 WL 342084, at *8.

The Court notes that Plaintiffs' counsel are requesting almost double the amount they billed in 2011. Plaintiffs' counsel argue that this is reasonable because, in 2012, the District sought a new set of MCOs, implemented major health reform and information technology initiatives, and issued several new policies and rules affecting class members. Pls.' Reply at 30. Given the need for Plaintiffs' counsel to be up to date on developments that affect class members, especially developments of this magnitude, the amount billed is reasonable and Defendants' request shall be **denied.**

## X.  **EXPERT REPORTS**

Defendants challenge Plaintiffs' counsel's request for $7,570.24 for reading reports and attending conferences sponsored by the National Health Law Program ("NHeLP"). Defs.' Opp'n at 35; Defs. Ex. 19.[13] Plaintiffs' counsel agreed to deduct the amount of time counsel spent attending the National Health Law Program, which amounts to 13.7 hours, or $5,610.10.[14] Thus, the amount remaining in dispute is $1,960.14.

Plaintiffs' counsel seeks fees for four types of work: 1) participating in NHeLP conference calls (Billing Records 5030, 4416, 4404); 2) reviewing NHeLP draft comments on regulations (Billing Record 4539); 3) reading NHeLP letters (Billing Records 3841 and 3855); and 4) "confer[ring] with NHeLP colleague re strategy for mediation" (Billing Record 4638). Defs. Ex. 19.

The first three of these categories reflect work that is unrelated to this case. Thus, the $1,802.63 in fees requested for those billing records shall be **denied.** However, the fourth category of work relates to mediation in this case, and thus,

---

[13] Defendants erroneously added $2,677.50 to the total $7,570.24 challenged, which already included the $2,677.50. See Defs. Ex. 19; Pls.' Reply at 29 n.24.
[14] Plaintiffs' counsel erroneously state in their reply that the reduced amount is only $5,110.10. Pls.' Reply at 29. However, the actual reduction is $5,610.00. Pls. Ex. 26.

Plaintiffs' counsel's request for $157.51 for such work shall be **granted**.

## XI. CLERICAL ACTIVITIES

Defendants again challenge $17,572.12 billed for "Document/Database Management" as clerical work that is not a billable expense. Defs.' Opp'n at 36. Plaintiffs' counsel assert that this work is not clerical, but rather an essential part of monitoring motions in the federal courts and tracking individual claims in an Access database. Pls.' Reply at 31 (incorporating Second Affidavit of Bruce J. Terris, ¶¶ 131-33 (Aug. 26, 2013) [Dkt. No. 1859-1]). They also note that it would cost Defendants far more if lawyers had to enter, manage, and track the relevant information. Id.

The Court addressed this issue in Salazar III and found that "billing $14,401.09 for document and database management over a period of more than a year is not unreasonable or excessive." 2014 WL 342084, at *8. Based on the record, the Court concludes that the amount requested, $17,572.12, shall be **reduced by 5%**.

## XII. BILLING MORE THAN EIGHT HOURS A DAY

Defendants again challenge the handful of occasions where Plaintiffs' counsel billed for more than eight hours in one day, for which Plaintiffs' counsel request $27,524.50. In Salazar

III, the Court observed that, "[w]hile this Court does not endorse forcing lawyers to work exhausting hours, it has absolutely no business telling them how many hours a day they should work if they are capable of doing so." 2014 WL 342084, at *9. For the same reasons, Defendants' request shall be **denied**.

## XIII. FEES REQUESTED BY CO-COUNSEL

Plaintiffs' counsel billed the District of Columbia $84,609.00 for 136.6 hours of legal services provided by co-counsel Jane Perkins, Legal Director of NHeLP, and $21,431.25 for 35 hours worked by co-counsel Rev. Lynn E. Cunningham. In Salazar III, the Court recognized that "[b]oth of these individuals have extensive experience in public interest litigation attempting to secure the rights of poor people for adequate health care." 2014 WL 342084, at *9. However, in light of the over-lawyering in this case and the failure by Plaintiffs' counsel to establish that the work done by co-counsel could not "easily have been done by Plaintiffs' lawyers or paralegals in their District of Columbia office, or brief telephone consultations about written pleadings being prepared for filing," the Court limited the fee request for co-counsel to 50% of what was being sought. Id. at *9-*10.[15]

---

[15] The Court also denied payment for fees requested for co-counsel to review National Academy for State Health Policy reports, 2014 WL 342084, at *11, and denied fees requested for

The Court first notes that Plaintiffs' counsel seek $52,935.90 in fees for work done by Perkins and $4,932.15 for work done by Cunningham on the Motion to Terminate. Pls.' Mot. at 24. As discussed above, supra section V, that Motion has not yet been fully resolved and thus any award of fees for work on that Motion is premature. Thus, the Court will not award fees for work on that Motion at this time. Therefore, Plaintiffs' counsel's request for that amount for the work done by Cunningham and Perkins on that Motion shall be **denied** at this time.[16]

As to the remaining $48,172.20 sought for the work of co-counsel, Defendants make four arguments. The Court will address each in turn.

First, Defendants argue that neither Perkins nor Cunningham provided contemporaneous billing records and that the records they did provide are vague, unspecific, and "mere summaries of activity." Defs.' Opp'n at 41-43. The Court finds that the time records submitted by Perkins and Cunningham contain "sufficiently detailed information about the hours logged and the work done" to permit the Court to evaluate the

---

Cunningham's work associated with agenda letters and status conferences, id. at *9.

[16] Thus, the Court does not need to address Defendants' other arguments related to the request for fees for Perkins' work on this Motion. See Defs.' Opp'n at 40-41.

reasonableness of their request for fees. See Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam); see also Affidavit of Jane Perkins, at 4-8 [Dkt. No. 1850-17]; Affirmation of Lynn E. Cunningham, at 2-8 [Dkt. No. 1850-18]. Thus, co-counsel will not be denied fees on this basis.

Second, Defendants argue that Perkins and Cunningham should receive the customary rates for their current local jurisdictions (North Carolina and Wyoming, respectively) rather than being compensated at the rates for the District of Columbia.

The parties agree that the general rule is that counsel is compensated based on the rates paid in the community where the district court is located. See Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982); see also Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. E.P.A., 169 F.3d 755, 757-58 (D.C. Cir. 1999). Thus, the presumption is that both Perkins and Cunningham would be entitled to District of Columbia rates.

Our Court of Appeals has identified two exceptions to this rule. First, the attorney's local rate should apply "when an out-of-town attorney is used because of special expertise or the unwillingness of local counsel to take the case." Davis, 169

F.3d at 758 (discussing <u>Donnell</u>, 682 F.2d at 251-52). Second, the attorney's local rate should apply "where out-of-jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory." <u>Davis</u>, 169 F.3d at 758.

Defendants argue that Perkins and Cunningham fall under the second exception, because they work outside the District of Columbia in jurisdictions where attorneys presumably charge lower rates.[17] In support of their argument, Defendants cite a Report and Recommendation by Magistrate Judge Facciola recommending that a Massachusetts attorney, Monica Wagner, be compensated for her work on a D.C. case at Massachusetts rates. <u>Palmer v. Rice</u>, No. 76-1439, 2005 WL 1662130, at *20 (D.D.C. July 11, 2005) (holding that Massachusetts rate was appropriate because the "great majority of Wagner's time was spent working on this case in Massachusetts, and because the difference in the rate she charges her clients ($140 per hour) and the rate the Terris firm seeks for her work ($370 per hour) is substantial").

Defendants fail to note – and <u>should have noted</u> – that Judge Henry Kennedy rejected Magistrate Judge Facciola's recommendation related to Wagner's rates. Mem. Op & Order of Jun 27, 2007, at 6-8 [Case No. 76-1439, Dkt. No. 664]. Judge Kennedy

---

[17] Neither Perkins nor Cunningham specified the rates at which attorneys are compensated in their local jurisdictions.

-31-

concluded that the Donnell exception did not apply because Wagner's expertise stemmed from her familiarity with the underlying litigation, not to any expertise related to Massachusetts, where the work was performed. Id. at 7.

He then concluded that the Davis exception did not apply because "[a]t all times that Wagner worked on this litigation, plaintiffs understood that they had engaged the Terris firm, which is based in the District of Columbia, and plaintiffs had no reason to know of Wagner's relocation nor to imagine that she would be paid at Massachusetts rates." Id. at 8. Thus, he concluded that "the circumstances here are simply not the 'extreme situation' warranting an exception to the general rule that attorneys are compensated at the prevailing rate in the forum of the litigation." Id.

The situation in Palmer is similar to the situation in this case. Both Perkins and Cunningham have worked on this case since its filing in 1993. [Dkt. Nos. 1, 32]. Neither Perkins nor Cunningham has a local litigation practice, but work as co-counsel in a variety of jurisdictions on cases involving Medicaid, child health, and poverty. See Affidavit of Jane Perkins [Dkt. No. 1850-17] (describing expertise in Medicaid and child health issues); Affirmation of Lynn E. Cunningham [Dkt. No. 1850-18] (describing expertise in federal challenges to

actions taken by District of Columbia). Much like Palmer, Defendants have failed to show that the work done by co-counsel falls under either exception identified by our Court of Appeals to the general rule that forum rates should be paid. Thus, to the extent that Perkins and Cunningham should be compensated for their work, it will be at District of Columbia rates.

Third, Defendants argue that Cunningham's work is duplicative of work done by other members of Plaintiffs' counsel's firm. They argue that a large portion of his billing entries are for reviewing documents and participating in conference calls, and Plaintiffs have failed to show why this work must be done by one of the two highest billing counsel involved in this litigation. Defs.' Opp'n at 43-44. Plaintiffs' counsel insist that Cunningham provides "significant legal advice" to Plaintiffs "on matters such as settlement offers made to defendants, compliance by MCO's, legal arguments in response to defendants' motions, and numerous issues raised at status conferences." Pls.' Reply at 37-38.

A review of Cunningham's time records supports Defendants' arguments. Very few of Cunningham's time records reflect substantive work on the issues in this case. His request for $16,488.10 is primarily for reviewing documents, assisting Plaintiffs' counsel in preparing his fee requests for

submission, and participating in conference calls with the other three highest-billing attorneys working for Plaintiffs. For example, Cunningham billed $5,676.20 for work on agenda letters and status conferences. Defs.' Opp'n at 33 n.10. As the Court noted in Salazar III, 2014 WL 342084, at *9 n.13, it "cannot imagine what Rev. Cunningham had to contribute to the preparation of these conferences," and no additional information has been provided to the Court on that issue.

In sum, Cunningham's submissions and the affidavits of Plaintiffs' counsel do not support a finding that the work he is doing is necessary and reasonable for adequate representation of the class in this litigation. Thus, the $16,499.10 requested for Cunningham's work in 2012 shall be **reduced by 50%.**

Fourth, Defendants argue that Perkins is functioning as a non-testifying expert consultant, not a practicing lawyer. Defs.' Opp'n at 38-39. They insist that fees for experts are not appropriately billable under section 1988. Defs.' Surreply, at 12 (citing Harvey v. Mohammed, 951 F. Supp. 2d 47, 73-74 (D.D.C. 2013) (holding that, with one small exception, expert fees are not compensable under 42 U.S.C. § 1988).

The Court need not decide whether expert costs are compensable because Perkins' time records show that she was acting as an attorney. She performed legal research, helped

draft legal motions for filing in court, and participated in settlement meetings and mediation sessions. <u>See</u> Affidavit of Jane Perkins [Dkt. No. 1850-17]. This is work generally performed by counsel, not experts. Thus, Defendants are incorrect that she should be treated as a non-testifying expert consultant and be denied fees on that basis.

Moreover, Perkins' affidavits adequately demonstrate that she provides a crucial national perspective on issues related to the ongoing mediation to provide dental care for the members of the class. Given her well-documented experience on these issues, the Court finds that she is entitled to fees for her work related to the dental mediation. <u>See</u> Third Affidavit of Bruce J. Terris, at ¶¶ 4-5, 7-8 (Feb. 3, 2014); Third Affidavit of Jane Perkins, at ¶ 4-5 (Feb. 3, 2014).[18]

However, because the fees requested on behalf of Perkins include amounts billed for participating in conference calls on other issues, including status conferences, for which Plaintiffs' counsel have not demonstrated a need for her

---

[18] The Court notes that Plaintiffs' counsel request fees for Cunningham's participation in conference calls related to the dental settlements, even though they have documented no reason for his participation on that issue. <u>See, e.g.</u>, Pls. Exs. 9, 17, and 18 [Dkt. Nos. 1850-9, -17, -18]. This is particularly unacceptable because Plaintiffs' counsel is already billing for its three highest billers, Terris, Millian, and Perkins, to participate in these conferences. At a rate of $562 an hour, and in the absence of any demonstrated need for Cunningham's participation, such fee requests are unreasonable.

participation, the fees requested for Perkins' work that are unrelated to the dental mediation shall be **reduced by 10%.**

## XIV. ACROSS-THE-BOARD REDUCTION FOR OVERSTAFFING

Defendants request a 15% reduction of all fees for overstaffing. The Court has noted several incidents of overstaffing and unnecessary billing for duplicative efforts in this case. See supra Sec. III, VI, VII, VIII, and XIII.

This Court has repeatedly praised Plaintiffs' counsel for its excellent representation of the members of the Plaintiff class. Salazar III, 2014 WL 342084, at *10; Salazar v. Dist. of Columbia, 750 F. Supp. 2d 70, 75 (D.D.C. 2011); Salazar v. Dist. of Columbia, 123 F. Supp. 2d 8, 12 (D.D.C. 2000). However, the Court has also repeatedly found that Plaintiffs' counsel request unreasonably high amounts in fees because they overstaff this case. Salazar III, 2014 WL 342084, at *6 (citing multiple prior opinions noting Plaintiffs' counsel propensity for overstaffing).

The Court strongly reminds Plaintiffs' counsel that its obligation is to use the least amount of attorney time necessary to effectively represent the members of the class. As discussed above, the Court will carefully scrutinize Plaintiffs' requested fees for intra-office conferences in the future, in the hope that this will minimize part of the over-staffing issue. This

-36-

includes conferences with Plaintiffs' counsel's high-billing co-counsel, Cunningham and Perkins, for whom Plaintiffs' counsel must justify in detail the necessity for their particular participation.[19]

At this time, however, because the Court has made specific reductions to categories of fees where Defendants have identified instances of overstaffing, Defendant's request for an additional across-the-board reduction shall be **denied**. See Salazar III, 2014 WL 342084, at *16.

## XV. **EXPENSES**

Defendants raise several challenges to various expenses sought by Plaintiffs' counsel. Defs.' Opp'n at 46-50. Many of these challenges were resolved in Salazar III.

In that opinion, the Court concluded that Plaintiffs' counsel were entitled to two types of expenses under 42 U.S.C. § 1988 -- "costs as defined by 28 U.S.C. § 1920," and expenses "considered part of the traditional attorney's fee." 2014 WL 342084, at *13 (citing Harvey v. Mohammed, 951 F. Supp. 2d 47, 67-69 (D.D.C. 2013)). The Court also concluded that Defendants

---

[19] The Court is well aware that lawyers in private practice have the luxury of overstaffing cases for which they will be paid by their clients. Public interest lawyers suing government entities do not have this luxury, primarily because the ultimate payer of fees is the taxpayer. See Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co., 743 F.2d 932, 941 (D.C. Cir. 1984).

had not waived the right to challenge Plaintiffs' counsel's litigation expenses. Salazar III, 2014 WL 342084, at *13.

The Court then addressed Defendants' challenges to specific types of expenses. The Court upheld Plaintiffs' counsel's ability to charge for ground transportation costs, telephone charges, postage, and messenger and delivery services. Id. at *13-14. The Court also concluded that Plaintiffs' counsel were entitled to recover money spent on fax transmissions, photocopying, and printing expenses. Id. at *14. However, the Court found that the appropriate rates for reimbursing faxing, black and white printing, copying, and scanning should be .15/page, and the rate for color copying should be .25/page. Id. at *14-*15 (discussing Johnson v. Dist. of Columbia, 850 F. Supp. 2d 74, 81-82 (D.D.C. 2012) and Squires ex rel. Squires v. Breckenridge Outdoor Educ. Ctr., No. 10-309, 2013 WL 1231557, at *7 (D. Colo. Mar. 27, 2013)).

Defendants raise no new arguments as to those categories of expenses. Therefore, the Court will again permit Plaintiffs' counsel to recover for ground transportation costs, telephone charges, postage, messenger and delivery services, faxing, copying, printing, and scanning. However, the rates for faxing, printing, scanning, and black and white copying shall be reduced

-38-

to .15/page, and the rate for color copying shall be reduced to .25/page.[20]

Defendants raise two new challenges. First, they argue that they should not have to pay for fees for private process servers. Defendants are correct that such expenses are neither "a customary element of an attorney's fee" nor are they taxable under section 1920. Sexcius v. Dist. of Columbia, 839 F. Supp. 919, 927-28 (D.D.C. 1993); see Harvey, 951 F. Supp. 2d at 72 (denying reimbursement for private process servers in case evaluating expenses under section 1988). Thus, Plaintiffs' counsel's request for $1,930 spent on private process servers shall be **denied**.

Second, Defendants challenge the $1,528.95 charged by Plaintiffs' counsel for purchasing transcripts of the regular status conferences and transcripts of proceedings before the District of Columbia Office of Administrative Hearings. See Affidavit of Bruce J. Terris at ¶ 27(m) (July 22, 2013) [Dkt. No. 1850-2]. 28 U.S.C. § 1920 defines costs to include fees for "printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Whether a

---

[20] Although Plaintiffs filed an affidavit regarding the rates charged by an outside vendor in the District of Columbia, Plaintiffs have still failed to explain the higher-than-average costs charged by their firm. See Affidavit of Emily R. Gregg (Dec. 4, 2013) [Dkt. No. 1903-44].

transcript was necessarily obtained "is a question of fact to be determined by the district court." Sykes v. Napolitano, 755 F. Supp. 2d 118, 120 (D.D.C. 2010).

The Court finds that the costs of the transcripts were reasonable and necessarily obtained in order to efficiently and effectively represent the plaintiff class. For example, at the status conferences, one party often agreed to take certain actions requested by the other party or the Court; D.C. employees, such as Ms. Colleen Sonosky, the very able Associate Director of the Department of Health Care Finance, provided information and detailed explanations for the benefit of all counsel; and various deadlines for submission/completion of court filings as well as substantive reports were set. Thus, the cost of obtaining these transcripts is reasonable and reimbursable.

In sum, the Court finds that Plaintiffs' counsel are entitled to reimbursement under section 1988 for the majority of their litigation expenses. However, they are not entitled to fees for private process servers, and they will again be reimbursed at lower rates for their faxing, printing, and copying expenses.

**XIV. CONCLUSION**

For the above reasons, Plaintiffs' Motion for an Award of Litigation Costs, Including Attorneys' Fees and Expenses, for 2012 and For Work in the District Court That Had Been Held In Abeyance Related to Defendants' Motion to Terminate the Consent Decree [Dkt. No. 1850] is **granted in part and denied in part**.

An Order shall accompany this Memorandum Opinion.

March 21, 2014

Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF