**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                              :
OSCAR SALAZAR, et al.,        :
                              :
        Plaintiffs,           :
                              :
    v.                        :    Civil Action No. 93-452 (GK)
                              :
DISTRICT OF COLUMBIA, et al., :
                              :
        Defendants.           :
                              :
```

**MEMORANDUM OPINION**

On September 2, 2014, Plaintiffs filed a Motion to Reverse the Ruling in the Fair Hearing of Class Member Stevenson Denying Reimbursement of Personal Care Aide Services [Dkt. No. 2007]; the District of Columbia ("the District," "the Government" or "Defendant") filed its Opposition on October 20, 2014 [Dkt. No. 2019]; and Plaintiffs filed their Reply on November 14, 2014 [Dkt. No. 2023]. Plaintiffs seek reversal of a decision ("OAH Opinion") by an Administrative Law Judge ("ALJ") of the District of Columbia Office of Administrative Hearings ("OAH") granting in part and denying in part Magnolia Stevenson's request for reimbursement of certain medical expenses. Final Order on Cross-Motions for Summary Adjudication ("OAH Opinion"), Pls.' Ex. A [Dkt. No. 2007-1]. For the reasons that follow, Plaintiffs' Motion shall be **denied.**

I.   **BACKGROUND**

   A.   **Historical Background**

      1.   *The Salazar Class*

On March 3, 1993, Plaintiffs filed their class-action Complaint [Dkt. No. 1] on behalf of several named plaintiffs and other similarly situated individuals alleging violations of federal law in the course the District's administration of its Medicaid program. On June 18, 1993, Plaintiffs filed their Amended Complaint [Dkt. No. 27].

Over the long life of this case, the Plaintiff class has always been described as a collection of several sub-classes, with each sub-class consisting of Medicaid applicants and recipients with a particular set of claims. Plaintiff's Amended Complaint; Amended Memorandum-Order of October 6, 1994 [Dkt. No. 92]; Order of November 3, 1994 [Dkt. No. 100]. Plaintiffs' Amended Complaint stated that "Plaintiffs' class consists of:

> All persons who, now or in the future will reside in the District of Columbia who have applied for or who have attempted to apply for Medicaid and who have experienced one or more of the following conditions: (a) a delay in excess of 45 days in processing their initial Medicaid application or application to recertify Medicaid coverage; (b) as newborns of mothers eligible for Medicaid at the time of their birth, the lack of immediate Medicaid coverage using their mothers' Medicaid number; (c) the inability to apply for Medicaid at disproportionate share hospitals and federally-qualified health centers; (d) the inability to submit their completed Medicaid applications to the District of Columbia Department of Human Services; (e) after being found eligible, the lack of advance notice of the discontinuance, suspension or

obligation to recertify their Medicaid benefits; (f) after being found eligible, the lack of effective notice of the availability of early and periodic screening, diagnostic and treatment services for children under 21 years of age; (g) after being found eligible, the lack of EPSDT services for children under 21 years of age.

Amended Complaint at ¶ 76.

In the Amended Memorandum-Order of October 6, 1994, which granted Plaintiff's Motion for Class Certification, the Court noted that "for analytical clarity the class should be certified as five separate sub-classes rather than as one comprehensive class[.]"[1] Amended Memorandum-Order at 6. All class members must fit into one or more of the five sub-classes, which "correspond to the causes of action in Plaintiffs' Complaint." Id. at 6 n.2.

On November 1, 1994, the Parties filed a Joint Motion to Amend the Class Definition [Dkt. No. 98]. On November 3, 1994, the Court issued an Order [Dkt. No. 100] granting the Parties' Joint Motion. This Order did not substantively alter the types of claims that would suffice for inclusion in the Plaintiff class. Rather, the Order served to clarify the previous definition and to reemphasize the relationship between individuals' claims and class membership. The Order defined the class as follows:

All persons who have applied, have attempted to apply, or will apply in the future during the pendency of this

[1] Plaintiffs' Amended Complaint presented seven causes of action, but the third cause of action was dismissed and the sixth and seventh were consolidated for the purposes of the sub-class definitions. Amended Memorandum-Order at 6-7. Thus, five sub-classes resulted. Id.

litigation, for medical assistance pursuant to Title 19 of the Social Security Act ("Medicaid"), and all persons who have received, are receiving, or will receive in the future during the pendency of this litigation, Medicaid in the District of Columbia with respect to the following claims:

Any claims for declaratory, injunctive, or other relief premised on the alleged lack of immediate Medicaid coverage for newborns using the Medicaid number of their mothers, who are eligible for Medicaid at the time of the babies' birth [Sub-Class I]

Any claims for declaratory, injunctive, or other relief premised on an alleged inability to apply for Medicaid at disproportionate share hospitals and federally-qualified health centers [Sub-class II][2]

Any claims for declaratory, injunctive, or other relief premised on an alleged delay in excess of 45 days in the processing of Medicaid applications [Sub-class III]

Any claims for declaratory, injunctive, or other relief premised on an alleged lack of advance notice of the discontinuance, suspension or obligation to recertify Medicaid benefits, after being found eligible [Sub-class IV]

Any claims for declaratory, injunctive, or other relief premised on an alleged lack of effective notice of the availability of early and periodic screening, diagnostic and treatment ("EPSDT") services for children under 21 years of age, and/or an alleged lack of EPSDT services for eligible children under 21 years of age [Sub-class V].

Id. at 1-2. Thus, in order to be a member of the Plaintiff class an individual must meet the criteria of the preamble paragraph above (i.e., be a present, past, or future, Medicaid applicant or recipient) and have claims that fall into one of the five sub-class categories.

---

[2] Claims involving the first two sub-classes were resolved before trial.

## 2.    Injunctive Relief

After years of litigation and some successful negotiation by the Parties, on October 16, 1996, this Court issued an Opinion setting forth extensive findings of fact and conclusions of law. See Salazar v. Dist. of Columbia, 954 F. Supp. 278 (D.D.C. 1996). "In particular, the Court ruled that Defendants had failed to process Medicaid applications for non-disabled, non-foster care [non-public assistance] applicants within 45 days, had terminated or suspended eligible persons' benefits without adequate notice, had failed to provide EPSDT services to eligible families, and had failed to notify those eligible families about the availability of such services." Memorandum Opinion of December 28, 1998 at 2 [Dkt. No. 653] (summarizing findings detailed in Salazar, 954 F. Supp. 278).

Of particular relevance here, the Court found that the District's failure "to process large numbers of Medicaid applications within 45 days of receipt" and inaccurate eligibility determinations caused many Medicaid applicants and beneficiaries to incur out-of-pocket costs for services that should have been covered by Medicaid. Salazar, 954 F. Supp. at 289-302. The Court also found that the District maintained an "unofficial, unwritten practice" of reimbursing Medicaid beneficiaries by "advising the participating provider [e.g., hospital, doctor, or other medical service provider] to reimburse the recipient for any out-of-pocket

- 5 -

medical expenditures and thereafter to submit a routine claim for the same expenditures to [the District]." Id. at 323. "Medicaid recipients [were] not notified about the unofficial policy[.]" Id.

In order to redress the harm caused by the District's practices, on September 15, 1997, the Court issued a Reimbursement Procedures Order that established "reimbursement procedures for class members who incurred out-of-pocket expenses because of untimely or inaccurate eligibility determinations made by Defendants." Reimbursement Procedures Order of Sept. 15, 1997 at 1 [Dkt. No. 550]. The Order incorporated a document titled "Summary Notice of Reimbursement Procedures for Class Members' Out-of-Pocket Expenses[,]" which contained the detailed procedures for obtaining reimbursement of out-of-pocket expenses. Id. Att. A.

Pursuant to the Reimbursement Procedures, "[a]ll class members have the right to be repaid any money they spent from March 2, 1990, to the present, on drug prescriptions, doctor visits, or hospitalizations at a time that they were eligible for Medicaid and the three (3) months prior to their Medicaid application." Id. Att. A at 2. In order to begin the reimbursement process, "[c]lass members are to submit the 'Medicaid Reimbursement Form' with supporting documents to" the District. Id. The Procedures give class members notice of their "right to a fair hearing" in the event they are unsatisfied with the District's resolution of their claims. Id. at 3. Finally, the Procedures state that if class

members are "not satisfied with the result of the fair hearing, [they] will have 30 days to appeal to the United States District Court for the District of Columbia." Id.

### 3. Other Relevant Medicaid Reimbursement Procedures

Federal regulations provide Medicaid beneficiaries with the right to a hearing when they believe a state Medicaid "agency has taken an action erroneously." 42 C.F.R. § 431.220.[3] If the beneficiary prevails at the hearing, "[t]he agency must promptly make corrective payments, retroactive to the date an incorrect action was taken[.]" Id. § 431.246. In addition, the District of Columbia Code provides individuals dissatisfied with the outcome of a hearing before the D.C. Office of Administrative Hearings with a right of appeal to the District of Columbia Court of Appeals. D.C.C. § 2-1831.16.

### B.   Factual Background[4]

Magnolia Stevenson is 96 years old and suffers from late-stage Alzheimer's disease. Pls.'s Ex. E at ¶ 2 [Dkt. No. 2007-5]. The Parties agree that at all times relevant to Plaintiffs' Motion, she was an enrolled beneficiary of Medicaid's Elderly and

---

[3] The District of Columbia is defined as a state for purposes of Medicaid. 42 U.S.C. § 1301(a).

[4] Unless otherwise noted, the facts that follow are drawn (often quoting verbatim) from the "Undisputed Facts" set forth in the Office of Administrative Hearings' Final Order on Cross-Motions for Summary Adjudication ("OAH Opinion"). Pl.'s Ex. A [Dkt. No. 2007-1].

Physically Disabled ("EPD") Waiver program. OAH Opinion at 7; Gov't's Opp'n at 4; Pls.' Mot. at 1; Pls.' Ex. C at 6 [Dkt. No. 2007-3]. Under the EPD Waiver program, Magnolia Stevenson is eligible to receive eight hours of personal care aid ("PCA") services per day, seven days per week.

In August of 2013, ASAP Services became Magnolia Stevenson's PCA service provider. Patience Breckenridge, an ASAP employee, became her assigned aide.

In October or November of 2013, Ms. Breckenridge informed Magnolia Stevenson and her daughter, Deborah Stevenson, that ASAP Services had issued Ms. Breckenridge bad checks and had otherwise failed to pay her regularly. Admirably, Ms. Breckenridge continued to provide services to Magnolia Stevenson despite these problems.

On December 13, 2013, Ms. Breckenridge told someone in the Stevenson family that she was quitting her job with ASAP Services because of the company's continuing failure to pay her and that she would no longer be providing services to Magnolia Stevenson.

Beginning on December 14, 2013, Magnolia Stevenson's family repeatedly contacted ASAP Services in an effort to restore PCA services for her. Having heard no response from ASAP, on December 17, 2013, Deborah Stevenson called Social Services Representative Melvin Gains at the District's Department of Healthcare Finance ("DHCF"). She left Mr. Gains a message, but he too never called back.

Determined to help her mother, on December 18, 2013, Deborah Stevenson found the contact information for Maude Holt, the District's Health Care Ombudsman. From December 18 to 23, 2013, she called the offices of Ms. Holt, DHCF, and ASPA Services, but could not reach anyone who would help her.

On December 23, 2013, Deborah Stevenson spoke with Mirka Shephard, an Associate Health Care Ombudsman with DHCF. Ms. Shephard coordinated a conference call with Deborah Stevenson and Erica Battle, a representative of ASAP Services. Ms. Battle acknowledged that since December 14, 2013, ASAP had failed to provide Magnolia Stevenson with the PCA services to which she was entitled.

On December 24, 2014, Magnolia Stevenson's counsel requested a fair hearing from OAH to address ASAP's failure to provide PCA services as well as other issues that have since been resolved.

While Deborah Stevenson was working to restore her mother's Medicaid services, she made sure that her mother did not go without the care she needed in the interim. From December 17, 2013 through January 25, 2014, she paid Ms. Breckenridge directly to care for Magnolia Stevenson.[5] Although Magnolia Stevenson continued to be

---

[5] As with many other facts in this case, the record below is far from clear as to whose money was used. Several payments to Ms. Breckenridge were made in cash while others were made by check from an account bearing Deborah Stevenson's name. Pls.' Ex. C at 15-86 [Dkt. No. 2007-3]. However, all submitted Medicaid Reimbursement Request Forms list Magnolia Stevenson as the

enrolled in the EPD Waiver program, ASAP Services did not provide her with a PCA aide during this period. Nor did DHCF assist her in obtaining PCA services during this period.

On January 15, 2015, Health Care Ombudsman Maude Holt told Magnolia Stevenson's counsel in an e-mail that "Ms. Stevenson should be able to get reimbursed for the monies the [sic] has paid out of pocket for her expenses." Pls. Ex. C at 53.

On or about January 25, 2014, ASAP Services' Staffing Coordinator, Lisa Nelson, told Deborah Stevenson that ASAP Services could provide another PCA aide to her mother. Deborah Stevenson declined this offer on her mother's behalf because ASAP Services had been found grossly deficient in serving its patients by the D.C. Government.

On January 29, 2014, Deborah Stevenson submitted a Medicaid claim form to DHCF, seeking reimbursement of $1,620 for PCA service payments made to Ms. Breckenridge between December 17, 2013 and January 25, 2014. The claim form listed Magnolia Stevenson as the "Medicaid Recipient Requesting Reimbursement." Pls.' Ex. C at 32.

Ms. Breckenridge continued to provide PCA services to Magnolia Stevenson until April 25, 2014. See Pls.' Ex. F at 7 [Dkt. No. 2007-6]. Between December 2013 and April 2014, her daughter

---

"Medicaid Recipient Requesting Reimbursement." Id. There is nothing in the Record to suggest that DHCF, OAH, or any other component of the District ever asked for clarification as to the financial relationship between Magnolia and Deborah Stevenson.

submitted approximately 14 claims to DHCF for reimbursement of $5,040 of payments to Ms. Breckenridge (the initial $1,620 claim plus additional claims totaling $3,420). See Pls.' Ex. C at 32-112.

On April 15, 2014, an ALJ with OAH held a status conference regarding the reimbursement claims, none of which had been paid by DHCF. After the hearing, the District and Magnolia Stevenson filed cross-Motions for Summary Adjudication.[6]

On June 6, 2014, the ALJ granted in part and denied in part the Parties' cross-Motions, holding that the District was required to pay the claim for $1,620 to reimburse payments for Ms. Breckenridge's services up to January 25, 2013. However, the ALJ ruled that ASAP's January 25th offer to provide another PCA aide to Magnolia Stevenson terminated any right to further reimbursement. Accordingly, the ALJ denied all post-January 25th reimbursement claims, which totaled $3,420.

On June 18, 2014, Magnolia Stevenson sought reconsideration of the ALJ's decision, arguing that the refusal to accept a new PCA from ASAP Services was justified because the company had been found to be "grossly deficient in serving its patients." Pls.' Ex. B at 2 [Dkt. No. 2007-2]. The ALJ denied Magnolia Stevenson's Motion for Reconsideration and advised her that she could file an

---

[6] OAH's "summary adjudication" procedure is analogous to summary judgment procedures covered by Fed. R. Civ. P. 56.

appeal with the District of Columbia Court of Appeals. Id. at 5-6.

Magnolia Stevenson declined to file an appeal with the District of Columbia Court of Appeals. Instead, on September 2, 2014, Plaintiffs filed a Motion with this Court to Reverse the Ruling in the Fair Hearing of Class Member Stevenson Denying Reimbursement of Personal Care Aide Services. On October 20, 2014, the District filed its Opposition, and on November 14, 2014, Plaintiffs filed their Reply.

## III. LEGAL ANALYSIS

Plaintiffs ask this Court to reverse OAH's determination that Magnolia Stevenson is entitled to only partial reimbursement for PCA expenses incurred between December 2013 and April 2014. The District argues that Magnolia Stevenson should have brought her appeal before the District of Columbia Court of Appeals instead of this Court. In the alternative, the District contends that this Court should uphold the merits of the OAH Opinion.

### A.   Magnolia Stevenson Has Standing to Pursue Her Claims.

The District contends that Magnolia Stevenson lacks standing before this Court because she did not suffer an injury that would be redressed by the relief sought. "The Supreme Court has explained that 'the irreducible constitutional minimum of standing contains three elements.'" Teton Historic Aviation Found. v. U.S. Dep't of

Def., No. 13-5039, 2015 WL 2145859, at *3 (D.C. Cir. May 8, 2015)

(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

> First, a plaintiff must show injury in fact, or an invasion
> of a legally protected interest which is (a) concrete and
> particularized; and (b) actual or imminent, not conjectural
> or hypothetical. Second, the plaintiff's injury must be
> fairly traceable to the challenged action of the defendant.
> Third, . . . the plaintiff must demonstrate redressability,
> or a substantial likelihood that the requested relief will
> remedy the alleged injury in fact.

Id. (internal citations and quotation marks omitted). Because

Constitutional standing is a bedrock jurisdictional requirement,

the Court must assure itself that Plaintiffs have standing to

pursue their claims. Florida Audubon Soc. v. Bentsen, 94 F.3d 658,

663 (D.C. Cir. 1996).

The District argues that Magnolia Stevenson suffered no

injury because her daughter, Deborah, arranged for private

provision of the necessary care services. In the District's view,

if anyone was injured, it was Deborah, not Magnolia Stevenson.

The District goes on to argue that even if Magnolia Stevenson

was injured, her injury would not be redressed by the grant of

Plaintiffs' Motion because it believes repayment would accrue to

her daughter Deborah, not to her.

Plaintiffs have put forth credible evidence that Magnolia

Stevenson, who is 96 years old and suffers from late-stage

Alzheimer's disease, is incapable of managing her own affairs. See

Pls.'s Ex. E at ¶ 2. Her daughter and other children look after

their mother and ensure that she has the care she needs. This Court has previously recognized that individuals often pay the medical expenses of dependent family members, and that reimbursement is warranted to redress the injury caused by out-of-pocket expenses that should have been paid by Medicaid. See e.g., Reimbursement Procedures Order of Sept. 15, 1997, Att. A at 2 [Dkt. No. 550] ("If you spent money for drugs, doctor visits, or hospitalizations for a family member (such as a child) who was eligible for Medicaid, you are also entitled to be repaid that money.").

Moreover, Magnolia Stevenson did suffer an injury: she was entitled to receive personal care services from Medicaid and did not receive them. See CC Distribs., Inc. v. United States, 883 F.2d 146, 150 (D.C. Cir. 1989) ("a plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit"). The fact that her family stepped in to avoid catastrophe does not absolve the District of its obligation to provide the personal care services to which Magnolia Stevenson was entitled. The District's position leads to the conclusion that a tort victim whose family paid his medical bills would lack standing to sue the tortfeasor to recoup his medical expenses. Constitutional standing is simply not so limited.

Furthermore, the injury caused by Medicaid's failure to provide services would be redressed by a cash payment equal to the cost of equivalent services. Regardless of whether Deborah

- 14 -

Stevenson used her own funds to cover the cost of her mother's care, Magnolia Stevenson has invoked her own right under 42 C.F.R. § 431.246[7] to "prompt[] . . . corrective payments, retroactive to the date an incorrect action was taken" as compensation for the District's failure to provide PCA services.

In short, Magnolia Stevenson has identified a benefit that she was wrongfully denied and has requested the cash equivalent of that benefit as compensation. That is sufficient to demonstrate that her asserted injury would be redressed by the requested relief. Accordingly, Magnolia Stevenson has standing under Article III.

### B.    Magnolia Stevenson Is Not a Member of the Plaintiff Class.

The District argues that Magnolia Stevenson is not a member of the <u>Salazar</u> Plaintiff class. Plaintiffs assert, but never specifically argue, that she is a member of the Plaintiff class. See Pl.'s Mot. at 1 (the word "class" appears only in the heading, and nowhere in the body, of Plaintiffs' brief); <u>see also</u> Pl.'s Reply at 10-11. Rather than address the question of class membership, Plaintiffs contend that "regardless of whether Magnolia Stevenson should be considered a member of the [P]laintiff

---

[7] On each and every Medicaid Reimbursement Form submitted to the District, Magnolia Stevenson is listed as the "Medicaid Recipient Requesting Reimbursement." Pls.' Ex. C at 15-86 [Dkt. No. 2007-3].

class or not, she is entitled to the relief that she is seeking here[.]" Pls.' Reply at 11.

As described above, the Salazar class is made up of Medicaid applicants and recipients who fall into one or more of the three remaining sub-classes. Supra at 2-4. Each sub-class "correspond[s] to [a] cause[] of action in Plaintiffs' Complaint." Amended Memorandum-Order of October 6, 1994 at 6; see also Order of November 3, 1994; Plaintiff's Amended Complaint. Plaintiffs fail to identify which, if any, of the sub-classes include Magnolia Stevenson.

For the following reasons, the Court concludes that Magnolia Stevenson does not meet the criteria for any of the three remaining sub-classes. Even if counsel had not resolved Sub-classes I and II, Magnolia Stevenson does not present claims relating to services for newborns or an inability to apply for Medicaid at disproportionate share hospitals. Thus, Sub-classes I and II are clearly inapplicable. Magnolia Stevenson does not complain of any delay in excess of 45 days in the processing of her Medicaid application. Accordingly, she is not included in Sub-class III. While Sub-class IV applies to Medicaid recipients whose Medicaid eligibility was terminated without advance notice, the Parties agree that at all times relevant to Magnolia Stevenson's claims,

she remained a beneficiary of the District's EPD Waiver program.[8] Therefore, she cannot be a member of Sub-class IV. Finally, Magnolia Stevenson does not seek EPSDT services, for which she would not be eligible, so she is not a member of Sub-class V. Because Magnolia Stevenson is not a member of one or more of the Salazar sub-classes, she cannot be a member of the Plaintiff class.

### C. The 1997 Reimbursement Procedures Order Provisions Permitting Direct Appeal to This Court Do Not Apply to Magnolia Stevenson's Claims.

Having concluded that Magnolia Stevenson is not a member of the Plaintiff class, the Court must determine whether the remedial provisions permitting direct appeal to this Court nevertheless apply to her claims. Over the course of many years, this Court's orders -- with the exception of one[9] -- have required  class membership with respect to the scope of injunctive relief. See Amended Memorandum-Order of October 6, 1994 (certifying class); Order of November 3, 1994 (amending class definition); Amended Remedial Order of May 9, 1997 at 24 [Dkt. No. 493] ("Reimbursement

---

[8] As the ALJ put it, "[t]he following facts are not in dispute: At all times relevant to this case, Ms. Stevenson has received Medicaid services under the Elderly and Physically Disabled (EPD) Waiver program. She has been found eligible to receive eight hours of PCA services per day, seven days per week." OAH Opinion at 7. Magnolia Stevenson did not challenge this statement in her Motion for Partial Reconsideration before the ALJ. See Pls.' Ex E.

[9] See Order on Reimbursement Procedures of July 30, 1998 at 1 [Dkt. No. 617] (ordering publication of certain notice documents to "all current and future Medicaid recipients").

of class members shall be made when the class member presents reasonable and reliable documentation or other evidence of their out-of-pocket expenses."); Reimbursement Procedures Order of Sept. 15, 1997 at 1 ("reimbursement procedures for class members who incurred out-of-pocket expenses"); Remedial Order January 25, 1999 at ¶ 62 [Dkt. No. 663] (repeating language of May 9, 1997 Order).

Plaintiffs nonetheless rely on the Court's Reimbursement Procedures Order of Sept. 15, 1997 to establish Magnolia Stevenson's right to appeal to this Court for relief from OAH's Order. They contend that even if Magnolia Stevenson is not a member of the Salazar class, she may still benefit from the injunctive relief available under the Reimbursement Procedures Order.

Plaintiffs argue that "[t]he plain terms of this Court's 1997 Reimbursement Procedures Order and subsequent orders make clear that relief is available to family members to seek reimbursement for out-of-pocket expenditures for medical services that should have been covered by DC Medicaid." Pls.' Reply at 4. In other words, Plaintiffs contend that the Reimbursement Procedures are available to all Medicaid beneficiaries with unreimbursed out-of-pocket costs.

However, the Reimbursement Procedures Order cannot be stretched that far. By its own terms, the Order created "reimbursement procedures for class members who incurred out-of-pocket expenses because of untimely or inaccurate eligibility

determinations made by Defendants." Reimbursement Procedures Order at 1 (emphasis added). The Order's notice provision lists several situations to which the Procedures would apply:

> This means that you are entitled to repayment (1) if you spent money on drug prescriptions, doctor visits, or hospitalizations <u>while you were waiting for a decision on your Medicaid application</u> . . . (2) <u>in the three months prior</u> to your application for Medicaid (if you were later found eligible), (3) if you were <u>improperly cut-off from Medicaid at recertification</u> and had to spend your own money on drug prescriptions, doctor visits, or hospitalizations or (4) if the pharmacy, clinic, doctor's office or hospital <u>said that you were not on Medicaid when you actually were</u> and you had to spend money . . . .

Reimbursement Procedures Order, Att. A at 2 (emphasis added).

These examples demonstrate that the Reimbursement Procedures were crafted to benefit individuals who paid out-of-pocket expenses <u>because of</u> eligibility determination and recertification issues which defined the class. That was not the case with Magnolia Stevenson because her out-of-pocket expenses arose from a provider error that was wholly unrelated to her Medicaid eligibility.

Furthermore, the Reimbursement Procedures Order itself indicates that it is meant to benefit only class members. The Order's Attachment A, upon which Plaintiffs rely heavily, is titled "Summary Notice of Reimbursement Procedures for <u>Class Members'</u> Out-of-Pocket Expenses." <u>Id.</u> (emphasis added). At several points, the Order refers to the rights and responsibilities of class members. <u>Id.</u> at 2 ("All class members have the right to be repaid any money they spent . . . at a time that they were eligible for

Medicaid"); Id. ("Class members are to submit [particular reimbursement forms]").

Attempting to expand the Reimbursement Procedures' application, Plaintiffs cite language in this Court's Orders that, in their view, demonstrates that the Reimbursement Procedures apply "to all current and future Medicaid recipients." Pls.' Reply at 11 (quoting Remedial Order ¶ 62 [Dkt. No. 663]). It is true that many of this Court's orders appear to use the terms "class members" and "all Medicaid recipients" interchangeably. For example, the passage that Plaintiffs quote, paragraph 62 of the Court's January 25, 1999 Remedial Order, states

> Defendants shall provide corrective payments to Medicaid recipients who have incurred out-of-pocket medical expenses that should have been paid by Medicaid to all current and future Medicaid recipients and all those who were Medicaid recipients or were eligible for Medicaid at any time since March 2, 1990. Reimbursement of class members shall be made when the class member presents reasonable and reliable documents or other evidence of their out-of-pocket expenses.

[Dkt. No. 663] (emphasis added). While the language could have been more precise, reference to the class definition, however, dispels any confusion that this Court's writing may have caused.

As discussed above, the Salazar class is made up of all Medicaid applicants and recipients who fit within the three remaining claims identified in Plaintiff's Amended Complaint. Each remaining claim corresponds to a sub-class defined in this Court's Order of November 3, 1994. Thus, when Medicaid applicants and

recipients have those claims set forth in the November 9, 1994, Order, they are included as class members.

The Reimbursement Procedures apply to all Medicaid applicants and recipients to the extent that they have claims for out-of-pocket expenses because of untimely or inaccurate eligibility determinations made by Defendants. Those claims correspond to the definitions of Sub-classes III and IV. That is to say, the Reimbursement Procedures apply to all Medicaid applicants and recipients to the extent that they are class members.[10]

The provisions of this Court's orders relating to payment of Plaintiffs' counsel's fees for representing Medicaid recipients also demonstrate that appeal to this Court is limited to class members. The Settlement Order entered by this Court authorizes Plaintiffs' counsel to litigate at the District's expense only

---

[10] Plaintiffs contend that this Court's 1998 Order on Reimbursement Procedures "modified the scope of the 1997 Reimbursement Procedures Order to apply 'to all current and future Medicaid recipients.'" Pl.'s Reply at p. 5 (citing [Dkt. No. 617]). That Order extended the deadline for submission of reimbursement claims and added certain notice requirements. Nowhere does the Order, which was entered with the District's consent, purport to expand the type of claims to which the Reimbursement Procedures apply in order to include non-class members. Indeed, it would be surprising for such an expansion to have gone unopposed by the District. Finally, this Court's Remedial Order of January 25, 1999 -- issued after the 1998 Order -- reemphasizes the importance of class membership with respect to the scope of the Reimbursement Procedures. Remedial Order at ¶ 62 ("Reimbursement of class members shall be made when the class member presents reasonable and reliable documentation or other evidence of their out-of-pocket expenses.").

class members' appeals from OAH fair hearings at the District's expense. The Court's Remedial Order of January 25, 1999 describes the following process:

> Plaintiffs' counsel may respond to all calls which come to their office and make reasonable inquiry to determine whether the caller is a member of the plaintiff class. If the caller is a member of the plaintiff class, Plaintiffs' counsel may provide the caller with legal assistance. The reasonable time and expenses of Plaintiffs' counsel in making such inquiry and providing such assistance shall be deemed compensable monitoring of this Order . . . .

Remedial Order at 40-41 [Dkt. No. 663] (emphasis added).[11]

The Reimbursement Procedures Order states that Plaintiffs' counsel may provide free legal assistance to individuals seeking to appeal the result of a fair hearing to this Court. Reimbursement Procedures Order Att. A at 3 ("You may obtain free legal assistance to help you present your claim at the fair hearing or during the appeal by contacting Terris, Pravlik & Wagner . . . ."). If the Reimbursement Procedures Order applied to non-class members as Plaintiffs argue, Plaintiffs' counsel would be obliged to provide free legal services to any and all non-class Medicaid recipients without compensation from the District. No such outcome was ever contemplated by the Parties or this Court.

---

[11] See also Amended Remedial Order of May 9, 1997 at 24 [Dkt. No. 493] ("If the caller [to the offices of Plaintiffs' counsel] is a member of the [P]laintiff class, [P]laintiffs' counsel may provide the caller with legal assistance. The reasonable time and expenses of Plaintiffs' counsel in making such inquiry and providing such legal assistance shall be deemed compensable[.]").

Finally, this Court has previously "emphasize[d]" with respect to class-member claims for EPSDT services "that [it has never meant] to suggest that every 'garden variety' individual claim" appealing an OAH decision "should be brought to the Court." Memorandum Opinion of May 29, 2008 at 4 n.3 [Dkt. No. 1363] (emphasis in original). Appeal to this Court of matters not presenting "class-wide issues" would "conflict with and replace the Fair Hearing Process that has been established in the District of Columbia and approved by [the federal Centers for Medicare & Medicaid Services], which provides for final judicial review by the District of Columbia Court of Appeals." Id. at 5 (internal quotation marks omitted). The same is true for reimbursement claims.

For all these reasons, the Court concludes that the Reimbursement Procedures Order provision permitting appeal to this Court does not apply to Magnolia Stevenson's claims.

## III. CONCLUSION

For the forgoing reasons, Plaintiffs' Motion to Reverse the Ruling in the Fair Hearing of Class Member Stevenson Denying Reimbursement of Person Care Aide Services [Dkt. No. 2007] is hereby **denied**. An Order shall accompany this Memorandum Opinion.


May 18, 2015

*Gladys Kessler*

Gladys Kessler
United States District Judge


**Copies to:** attorneys on record via ECF