## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR SALAZAR, *et al.*, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>    v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>     Defendants. | Civil Action No. 93-452 (GK)<br>*In Forma Pauperis* |

### PLAINTIFFS' MOTION FOR MODIFICATION OF THE SETTLEMENT ORDER

Pursuant to the modification provisions in paragraphs 71 and 72 of the January 25, 1999 Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997, ECF No. 663 (hereafter "Settlement Order"), this Court's inherent equitable authority, and Rule 60(b)(5) of the Federal Rules of Civil Procedure or, in the alternative, Rule 60(b)(6), plaintiffs respectfully move this Court to modify the Settlement Order.

As set forth in the accompanying Memorandum of Points and Authorities, this Court retained jurisdiction to modify the Settlement Order. Additional injunctive relief is now needed to effectuate the remaining provisions of the Settlement Order concerning Early and Periodic, Screening, Diagnostic and Treatment (EPSDT) services and the central purposes of the application processing and recertification provisions of the Settlement Order. With respect to EPSDT services, those eligible for such services—namely, children (and their parents or caretakers) and pregnant women—are all subject to Medicaid renewal under the Modified Adjusted Gross Income (MAGI) method. Pl. Ex. 23, ECF No. 2070-21, p. MCAC 10. Such individuals are generally "non-disabled" and therefore subject to the 45-day processing rule for

Medicaid applications.  42 C.F.R. 435.911(a)(2).  In order to access EPSDT benefits, children and their families must be able to receive timely determinations on their applications and not be subject to loss of coverage at renewal without adequate advance notice.  In addition, the relief sought is necessary to fulfill the central purposes of the application processing and recertification provisions of the Settlement Order, namely, to provide a durable remedy of systemic relief to ensure that the District of Columbia timely processes Medicaid applications and protects the due process rights of Medicaid recipients at the time of renewal.

In support of this motion, in addition to the attached brief and exhibits, plaintiffs rely on and incorporate by reference, the briefing and evidence submitted in connection with their Motion for a Preliminary Injunction Concerning District of Columbia Medicaid Applications and Renewals. ECF Nos. 2070, 2071, December 22, 2015; ECF No. 2083, January 29, 2016.

Plaintiffs respectfully request that this Court modify the Settlement Order to require that defendants provisionally approve all Medicaid applications pending more than 45 days and that defendants continue the eligibility of all Medicaid recipients due to renew until defendants demonstrate to the Court that they are complying with the Constitution, federal law, and applicable regulations in connection with application processing and Medicaid renewals.

### STATEMENT PURSUANT TO LOCAL CIVIL RULE 7(m)

Plaintiffs' counsel conferred with defendants' counsel, Bradford Patrick, concerning this motion on January 27, 2016.  Mr. Patrick stated that defendants opposed this motion and that ten days' advance notice was necessary under paragraph 80 of the Settlement Order before the motion could be filed.  Plaintiffs have waited the requisite ten days before filing this motion.

Respectfully submitted,

 /s/ Zenia Sanchez Fuentes

JANE PERKINS                                    BRUCE J. TERRIS, Bar #47126
NATIONAL HEALTH LAW PROGRAM     KATHLEEN L. MILLIAN, Bar #412350
101 East Weaver Street, Suite G-7          LYNN E. CUNNINGHAM, Bar #221598
Carrboro, NC 27510                              ZENIA SANCHEZ FUENTES, Bar #500036
(919) 968-6308                                    Terris, Pravlik & Millian, LLP
                                                      1121 12th Street, N.W.
                                                      Washington, DC  20005-4632
                                                      (202) 682-2100, ext. 8484

                                                      *Counsel for Plaintiffs*

February 9, 2016

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR SALAZAR, *et al.*, on behalf of themselves and all others similarly situated,<br><br>                                 Plaintiffs,<br><br>                    v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>                                 Defendants. | )<br>)<br>)<br>)<br>)<br>)          Civil Action No. 93-452 (GK)<br>)          *In Forma Pauperis*<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR MODIFICATION OF THE SETTLEMENT ORDER

In their Motion for Preliminary Injunction Concerning District of Columbia Medicaid Applications and Renewals (ECF Nos. 2070, 2071, December 22, 2015) and their Reply Brief (ECF No. 2083, January 29, 2016), plaintiffs showed, based on defendants' own documents (Pl. Exs. 1-7, 9-17, 21-23; 37, 38, 40-42, 55, 56; Def. Exs. A, D, G), the testimony of Medicaid advocates and providers of medical services (Pl. Exs. 24-28, 30, 33), and the testimony of Medicaid recipients (Pl. Exs. 29, 31, 32, 48, 49), that defendants are systemically violating the rights of members of the plaintiff class by failing to make determinations on Medicaid applications within 45 days and by failing to provide adequate and timely notice to Medicaid recipients before benefits are terminated at renewal.  *See* U.S. Constitution, 5th Am.; 42 U.S.C. 1396a(a)(8); 42 C.F.R. 435.911(a), 435.912(c)(3), 435.919, 435.930(b); D.C. Code 4-205.26, 4-205.55; *see also Salazar v. District of Columbia*, 954 F. Supp. 278, 324, 326 (D.D.C. 1996) (finding defendants violated the plaintiff class members' rights by failing to make determinations on Medicaid applications within 45 days, failing to provide adequate timely notice to Medicaid

recipients before benefits are terminated, and failing to furnish Medicaid to all eligible individuals until they are found to be ineligible). As a result, the plaintiff class is suffering irreparable harm. At least 2,655 Medicaid applications have now been pending more than 45 days and many others have had their Medicaid coverage unlawfully terminated without advance notice at renewal. Plaintiffs incorporate by reference the submissions in support of their motion for a preliminary injunction.

In addition to the Court's authority to issue preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, upon which plaintiffs rely in their preliminary injunction motion, plaintiffs show below that this Court has authority to modify the Settlement Order under paragraph 71 of the Settlement Order, its inherent equitable powers, and under Rule 60(b)(5) or, in the alternative, Rule (b)(6) of the Federal Rules of Civil Procedure.

In this motion, plaintiffs seek a modification of the Settlement Order which would protect the rights of Medicaid applicants and recipients until defendants are able to make an evidentiary showing to the Court that they are complying with all applicable laws in the timely processing of Medicaid applications and the protection of due process of Medicaid recipients at renewal.

I

### THIS COURT HAS BROAD AUTHORITY TO MODIFY THE SETTLEMENT ORDER UNDER PARAGRAPH 71 OF THAT ORDER

In paragraph 71 of the Settlement Order (ECF No. 663), the parties agreed that this Court has explicit and broad authority to modify the Settlement Order: "[e]xcept as provided in Paragraph 70 above [for certain modification requests made by defendants], either party shall have the right to move the Court for modification of this Order at any time for any reason." *See Salazar v. District of Columbia*, 633 F.3d 1110, 1122 (D.C. Cir. 2011) (affirming the denial of

defendant's Rule 60(b)(6) motion to vacate, but noting that the defendant "is not without remedies," because "Paragraph 71 of the Settlement Order provides for modification 'at any time for any reason'"); *Brief of Appellants in Salazar v. District of Columbia*, 2011 WL 2109890, at *45 (D.C. Cir. May 27, 2011) (defendants note that the parties "agreed to allow modifications at any time for any reason").  Thus, paragraph 71, a result of thorough and lengthy negotiations between the parties, expressly reserves the Court's jurisdiction over requests for modifications made at any time for any reason.

This Court also has authority to modify the Settlement Order under its power in "equity to modify a decree of injunctive relief," which the Court of Appeals for the District of Columbia Circuit has described with respect to this very Settlement Order as "long-established, broad, and flexible."  *Salazar v. District of Columbia*, 633 F.3d 1110, 1116-1118 (D.C. Cir. 2011) (quoting *United States v. Western Electric Co.*, 46 F.3d 1198, 1202 (D.C. Cir. 1995)); *see also New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 167 (D.D.C. 2008) (quoting *United States v. Western Electric Co.*, *supra*, 46 F.3d at 1202) (extending the termination date of the injunctive relief after finding that the district court had modification authority under, *inter alia*, the consent decree's modification clauses and the court's inherent authority).

Therefore, this Court has authority under paragraph 71 and its inherent equitable powers to modify the Settlement Order.

## II

## MODIFICATION IS WARRANTED UNDER RULE 60(b)(5) OR, IN THE ALTERNATIVE, RULE 60(b)(6)

Even if the parties had not agreed in paragraph 71 of the Settlement Order that this Court, on motion, may modify the terms of the Settlement Order "at any time for any reason," the Supreme Court has recognized that district courts need flexibility to modify decrees in long-

3

running institutional reform cases such as this one (*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380, 381 (1992)):

> The upsurge in institutional reform litigation since *Brown v. Board of Education*, 347 U.S. 483 (1954), has made the ability of a district court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased. * * * [internal citations omitted]

*See also Salazar v. District of Columbia*, *supra*, 633 F.3d at 1116 ("Rule 60(b)'s concern with finality, * * * does not carry the same significance in long-running equitable relief as it would in an action where the court's role had ended * * *").

Paragraph 72 of the Settlement Order states that "the general body of federal law governing motions to modify orders in contested matters pursuant to Rule 60(b) of the Federal Rules of Civil Procedure shall apply" to motions for a modification.  ECF No. 663, para. 72. Federal Rule of Civil Procedure 60(b) provides that on "just terms" a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if, among other things, "applying it prospectively is no longer equitable" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (b)(6).

A motion under either Rule 60(b)(5) or (b)(6) must "be made within a reasonable time." Fed. R. Civ. P. 60(c).  *See Salazar v. District of Columbia*, *supra*, 633 F.3d at 1117 (noting that "this court has not identified a standard for assessing 'reasonable time' under Rule 60(b)[, but] has, however, considered prejudice to the non-moving party").  Timeliness is measured from the date of the change in circumstances asserted to justify Rule 60(b) relief.  *See Salazar v. District of Columbia*, 671 F.3d 1258, 1260 (D.C. Cir. 2012) (measuring reasonableness from the date of the proclaimed change in the law).

4

Here, plaintiffs moved this Court promptly after obtaining documents from defendants showing systemic problems with the timely processing of Medicaid applications and renewals. Prior to the status conference held on October 22, 2015, plaintiffs sought information from defendants concerning delays and backlogs in the processing of Medicaid renewals and applications.  Plaintiffs' Agenda Notice for Status Conference, Sept. 10, 2015, ECF No. 2061, pp. 1-2.  At the status conference, defendants refused to provide any information and suggested that plaintiffs file a Freedom of Information Act (FOIA) request and attend the next meeting of the Medical Care Advisory Committee (MCAC) to obtain this information.  Transcript, Pl. Ex. 58, pp. 7, 11, 13, 17, 18.  Plaintiffs received partial responses to their October 27, 2015 FOIA request (Pl. Ex. 20, ECF No. 2070-18) on December 3 and December 4, 2015 (Pl. Exs. 21, 22, ECF Nos. 2070-19, 2070-20) and received some more information at the MCAC meetings on October 28, 2015 (Pl. Ex. 23, ECF No. 2070-21) and December 10, 2015 (Pl. Ex. 1, ECF No. 2070-2).[1]  At the status conference with this Court on December 10, 2015, defendants again refused to provide any information about the delays and backlogs in the processing of Medicaid applications and renewals.  Transcript, Pl. Ex. 59, pp. 4-6.  At the December 10 status conference, plaintiffs informed defendants and the Court that they would be filing a motion to address the delays and backlogs in the processing of Medicaid renewals and applications.  *Id.*, pp. 8-10.  Plaintiffs filed their motion for preliminary relief soon after, on December 22, 2015. ECF Nos. 2070, 2071.  This motion seeking relief under Rule 60(b) is being filed within two

---

[1] Plaintiffs note that at the most recent MCAC meeting on January 27, 2016, no information was discussed concerning the backlog in processing Medicaid applications and renewals.  Sharon Decl., Pl. Ex. 57, para. 44; *see also* Pl. Ex. 52, ECF No. 2083-3 (application and renewal backlog is not on the MCAC agenda).  Moreover, since plaintiffs filed their motion for preliminary injunction, defendants have cancelled the regular monthly meetings with the Economic Security Administration (ESA) and Medicaid advocates, closing yet another avenue for advocates and the clients they serve to obtain information.  ECF No. 2083-1, Pl. Ex. 50 (cancelling January 13, 2016 meeting); Pl. Ex. 60; attached (cancelling February 10, 2016 meeting).

months of receipt of information from defendants in December 2015.  This prompt action does not reflect the sort of lengthy delay found to be unreasonable for purposes of a Rule 60(b) motion.  *See Salazar v. District of Columbia*, 729 F.Supp.2d 257, 262-263 (D.D.C. 2010)(seven-year delay between change of law and filing of Rule 60(b) motion unreasonable); *Karim-Panahi v. Washington Metropolitan Area Transit Authority*, No. 08 Civ. 7093, 2008 WL 5640693, at *1 (D.C. Cir. 2008) (district court did not abuse its discretion in finding 18-month delay to be untimely for Rule 60(b) motion).

## A.   MODIFICATION IS APPROPRIATE UNDER RULE 60(b)(5) DUE TO CHANGED CIRCUMSTANCES

Rule 60(b)(5) provides that modification may be warranted when "applying [the Settlement Order] prospectively is no longer equitable," and the Supreme Court has held that, under this rule, a party seeking modification bears the burden of demonstrating that "a significant change either in factual conditions or in law" warrants revision of the decree.  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992); *see Pigford v. Johanns*, 416 F.3d 12, 23 (D.C. Cir. 2005) ("A movant under Rule 60(b)(5) must demonstrate 'changed circumstances' since the entry of the judgment from which relief is sought" (internal citations omitted)).  Since this Court last issued orders reducing defendants' obligations under sections of the Settlement Order in February 2009 (Pl. Ex. 44, ECF No. 2070-42) and October 2013 (*Salazar v. District of Columbia*, 991 F.Supp.2d 34 (D.D.C. 2013)), there have been significant changed circumstances concerning defendants' compliance with federal law that justify modification of the Settlement Order to protect the plaintiff class.

### 1.   The Status of Defendants' Compliance with the 45-Day Processing Rule for Medicaid Applications Has Changed Significantly

On February 24, 2009, when this Court granted defendants' consent motion to vacate the provisions related to timely application processing in Section II of the Settlement Order (Pl. Ex.

44, ECF No. 2070-42), defendants represented that they were "fully compliant with federal law and the terms of the Settlement Order of January 22, 1999 in this case as to the timely processing of initial Medicaid applications * * *."  ECF No. 1443, p. 5.  However, this is no longer the case and defendants now admit that 2,655 applications in D.C. Health Link have been pending for more than 45 days.  Schlosberg Decl., Def. Ex. A, ECF No. 2077-01, paras. 72, 73.  The number of total affected *individuals* is likely much higher, as a household consisting of various individuals could submit a single application.  However, for some categories of backlogged applications, defendants have not been tracking the number of individuals affected.  DHCF FOIA Response, ECF No. 2070-19, Response 5(b).[2]

Aside from defendants' admissions, plaintiffs submitted evidence from District of Columbia Medicaid providers of widespread failures to process Medicaid applications within 45 days.  Dr. Randi Abramson, Chief Medical Officer of Bread for the City testified that (Pl. Ex. 24, ECF No. 2070-22, para. 7):

> The Medicaid program too often fails to process applications within 45 days.
> Bread for the City enrollment coordinators have intervened with DHS on behalf

_____

[2] Defendants have contended that court intervention is unnecessary because they are following "strategies that have been reviewed and approved by [CMS]."  ECF No. 2077, Def. PI Opp. 32. With respect to applications, defendants submitted a set of instructions drafted by DHCF which they state CMS approved in August 2015.  Schlosberg Decl., Def. Ex. A, ECF No. 2077-01, para. 67 citing Def Ex. G, ECF No. 2077-7.  However, the evidence suggests that defendants have been unable timely to comply with certain of these instructions.  For example, the relevant instructions require that, for "Bucket 6" of the backlog, consisting of individuals "determined eligible for Medicaid * * * [with] no outstanding verifications," defendants must "enroll these individuals immediately" in Medicaid (emphasis added).  Def. Ex. G at 1.  In September 2015, Bucket 6 contained 112 applications.  Pl. Ex. 17, ECF No. 2070-16, p. 3.  At the December 2015 MCAC meeting, defendants admitted that Bucket 6 now encompassed 146 applications.  Sharon Decl., Pl. Ex. 57, para. 43.  Bucket 6 has thus grown since August 2015, rather than having been eliminated as the CMS-approved instructions require.  Thus, although defendants argue that court intervention is unnecessary because CMS has sanctioned its progress in reducing the backlog, the evidence actually shows that defendants have failed to timely comply with the instructions approved by CMS and will be unable to eliminate the backlog fully until June 2016 at the earliest. Schlosberg Decl., Def. Ex. A, ECF No. 2077-01, para. 65.

of families who did not receive decisions on applications within 45 days. In many cases, patients end up filing subsequent applications because they believe that DHS has lost their original application and verifications.

Dr. Abramson then provided examples of five recent patients of Bread for the City who had suffered health consequences because their Medicaid applications were not acted upon within 45 days. Pl. Ex. 24, ECF No. 2070-22, paras. 8-12; *see also* Loubier Decl., Whitman Walker Health, Pl. Ex. 27, ECF No. 2070-25, paras. 10, 11 ("While we will continue to see patients even when their Medicaid is pending or waiting to be processed, we cannot get the medication or care outside of WWH. * * * Adherence to life saving HIV prescription medication means taking these medications daily without interruption.").

Katie Nicol, Senior Manager for Public Benefits and Insurance Navigation at Whitman Walker Health has testified (Pl. Ex. 25, ECF No. 2070-23, para. 2):

> Since January 2015, our team has submitted approximately 640 DC Medicaid applications and renewals. I have worked closely with the DC Economic Security Administration (ESA) [staff] * * * to troubleshoot and resolve cases * * *. However, that these problems continue to recur has led to the conclusion that there are broader systemic issues affecting the eligibility determination process that must be addressed.

Ms. Nicol continues (*id.*, paras. 4, 5, 6):

> I estimate that approximately 25% of [the Medicaid applications submitted by Whitman Walker Health] require[] my or our staff's active intervention with ESA to ensure it is processed and approved accurately. These interventions take a significant amount of WWH staff time. * * * [Even so,] [w]e estimate that approximately 10% of our applications and renewals are not processed within 45 days. * * * It is worth noting that I have seen a subset of cases beyond 45 days which have exceeded the 45-day processing time significantly (beyond 6 months), including approximately 8 cases from January to March 2015 that were still unresolved as of this fall.

In addition, defendants have lost or misplaced applications at service centers and their statistics are not capturing the delays that these applications suffer. *See* Plaintiffs' Motion for Preliminary Injunction, ECF No. 2070, pp. 13-15 and exhibits cited therein; *see* Loubier Decl.,

Whitman Walker Health, Pl. Ex. 27, ECF No. 2070-25, para. 9 ("The system for uploading documents into a consumer's case and then processing the case reflect delayed, manual processes.  There is a backlog and often documents never reach the case file until we [at Whitman Walker Health] begin our advocacy efforts and email copies of the documents to the ESA SWAT Team.").  In a recent case, defendants' own records show that the application of Abebech Yimer for herself and her eight-year-old son was submitted on September 16, 2015, but was not logged as received in ACEDS by defendants until November 23, 2015, when her counsel, Chelsea Sharon of the Legal Aid Society, sent an electronic mail message inquiring about the status of the overdue application.  Sharon Decl., Pl. Ex. 57, attached, paras. 4-16, and Ex. 1 thereto, CS 10-23.  Since Ms. Yimer's application was not logged in when submitted, but over two months later, defendants' delays in processing it would not be evident in their computer systems.  *Id*., para. 14.  Moreover, the 8-year-old child had no access to EPSDT services until after the intervention of his family's lawyer in November and December 2015.  Thus, defendants appear to have gone from near full compliance in 2009 to widespread violations of the right to timely processing of Medicaid applications in the present.

> **2.**  **The Status of Defendants' Compliance with the Due Process Requirements for Advance Notice Prior to Terminating Medicaid at Renewal Has Changed Significantly**

Similarly, there has been a significant change in the factual circumstances surrounding the recertification of Medicaid benefits in the District of Columbia.  On October 17, 2013, this Court granted defendants' motion to modify the Settlement Order and relieved defendants from compliance with the provisions related to timely recertification processing in Section III of the Settlement Order. *Salazar v. District of Columbia*, 991 F. Supp. 2d 34, 39 (D.D.C. 2013).  This Court found that provisions of the Affordable Care Act (ACA) and its implementing regulations conflicted with the Section III requirements and that "[p]laintiffs' counsel has failed to identify

any tangible fact or law that suggests [plaintiff class members'] rights will not be adequately protected in this transitional year." *Id*. at 38.

However, the evidence submitted with plaintiffs' opening and reply briefs in support of their motion for a preliminary injunction shows that numerous members of the plaintiff class are losing their Medicaid benefits at renewal either without adequate advance notice of the obligation to renew or despite having returned their renewal forms.  Dr. Randi Abramson, the Chief Medical Officer at Bread for the City has testified that (Pl. Ex. 24, ECF No. 2070-22, paras. 13, 18):

> DHS frequently terminates Medicaid coverage without providing recipients with any notice that they are required to renew their coverage. * * * Even when individuals receive renewal notices and timely submit the required information, delays and failures in document processing often result in termination of benefits. Bread for the City enrollment coordinators often need to intervene to correct an improper termination, even where Bread for the City assisted the patient in submitting the renewal form and retains proof of submission.

Katie Nicol of Whitman Walker Health testified (Pl. Ex. 25, ECF No. 2070-23, para. 9):

> I have seen a number of consumers who submitted their M1 Medicaid renewals in person at an ESA service center or returned their renewal by mail, but the renewal was not processed and their Medicaid benefits lapsed.

Similarly, Tina Nelson, Managing Attorney for Legal Counsel for the Elderly, testified that (Pl. Ex. 30, ECF No. 2070-28, para. 9):

> For clients receiving PCA [personal care aide] services, they often get multiple, conflicting and inaccurate notices concerning termination and recertification. * * * For clients being recertified, they are sent a notice of impending termination when the DC agency has received but not processed recertification documents, even though there is nothing the clients can do to protect their entitlement to ongoing benefits.

Jennifer Mezey, supervising attorney of the Public Benefits Unit of the Legal Aid Society of the District of Columbia, testified (Pl. Ex. 26, ECF No. 2070-24, para. 5):

> My colleagues and I have handled matters on behalf of a number of Legal Aid clients who have had their benefits erroneously terminated despite having mailed,

10

faxed or turned in their paperwork at DHS service centers, only to have their benefits reinstated once Legal Aid became involved.

The Declaration of Legal Aid Society attorney Chelsea Sharon demonstrates that these problems remain on-going in December 2015 and January 2016.  In December 2015, Me Lissa Gordon and her 19-year-old daughter received incorrect and conflicting information and notices about their obligation to renew Medicaid coverage.  Pl. Ex. 57, paras. 17-30.  After significant efforts by the Legal Aid Society to ensure that Ms. Gordon and her daughter did not lose coverage on December 31, 2015 (*id*., paras. 20-29), the Legal Aid Society received an electronic mail message from Sheryl Johnson of DHCF on January 28, 2016 which stated that Me Lissa Gordon actually "should not have been requested to submit a renewal form."  *Id.,* para. 30 and Ex. 10 thereto, p. 1, CS 065.  With plaintiffs' opening brief in support of their motion for a preliminary injunction, Karla Ayala-Carranza submitted a declaration explaining that even though she timely submitted the renewal form for her family's Medicaid in December 2014, their Medicaid coverage was cut off with no advance notice.  Ayala-Carranza Decl., Pl. Ex. 29, ECF No. 2070-27, paras. 4-12.  Ms. Ayala-Carranza made numerous attempts to correct the termination herself (*id*., paras. 5-10), but her family did not regain coverage until May 2015, after the Legal Aid Society's intervention (*id*., para. 12).  In the meantime, she incurred thousands of dollars in uncovered medical expenses and her son went without other necessary medical services.  *Id*., paras. 9, 11.  Proper renewal procedures were not followed again in December 2015 for the Ayala-Carranza family because they did not receive a renewal form and would have been erroneously terminated from Medicaid without the intervention of a lawyer from the Legal Aid Society.  Sharon Decl., Pl. Ex. 57, paras. 31-41; and Ex. 11 thereto, pp. CS 067-081.  The renewal form for the family contained erroneous information in that the family was informed that it only had 30 days to submit the renewal form, when in fact, it had 60 days,

11

and lacked clear information about which family members were due to be renewed.  *Id*., paras. 35-39.

Plaintiffs' evidence shows that systemic technological failures in the Medicaid renewal system are now rife even though defendants represented to this Court in September 2013 that the promise of improved technology justified relief from Court oversight: "[c]hanged technological circumstances will also affect continued enforcement of Section III [of the Settlement Order regarding recertifications]."  ECF No. 1870, Sept. 20, 2013, p. 9.  Defendants represented that ACEDS "will be retired and go 'off-line' completely by October 1, 2014, when all beneficiaries are fully transitioned and integrated into D.C. Health Link."  *Ibid.*  However, ACEDS, the District's legacy eligibility system, did not go off-line in 2014.  Instead, as of January 2016, defendants predict that ACEDS will not be retired until 2018 at the earliest.  Schlosberg Decl., Def. Ex. A, ECF No. 2077-01, paras. 15, 57.  Far from improving the renewal process, the need to operate both DC Health Link and ACEDS has created new technological problems, as plaintiffs showed in their opening and reply briefs in support of the preliminary injunction motion.  Specifically, defendants admit that, because ACEDS remains the "system of record" for the D.C. Medicaid program, eligibility data must be transferred from DC Health Link to ACEDS in order to activate benefits and that defendants must manually transfer such data if "an issue that prohibits the automatic transfer of data" arises.  *See* Pl. Ex. 21, ECF No. 2070-19, Response 2(e).

This is just one of the many technological problems—including "stuck" applications and renewals, problems with life event processing, and problems with immigration eligibility determinations—that have impacted Medicaid recipients since this Court's Order concerning recertifications in 2013.  *See* Pl. PI Br., ECF No. 2070, pp. 10-13, 18-21, 31.  Indeed, the Centers for Medicare and Medicaid Services (CMS) documented on November 20, 2015 that defendants'

technological problems prevent them from complying with the requirements of federal law for processing Medicaid renewals (Pl. Ex. 38, ECF No. 2070-36, p. 1):

> The District has encountered numerous problems in the timely implementation of new systems necessary to accomplish redetermination and renewal of Medicaid eligibility for populations whose eligibility is based on MAGI. As such, the District has not completed deployment of new systems necessary to accomplish the redetermination and renewal of Medicaid eligibility in accordance with Medicaid and CHIP regulations at 42 CFR 435.916 and 457.343.

Thus, the facts underlying the 2009 and 2013 modifications to the Settlement Order have changed significantly and, in light of these changed circumstances, modification of the Settlement Order is now needed. *See New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 170-171 (D.D.C. 2008) (finding that the delay in the parties' "access to a set of usable, accurate, and certifiably complete technical documentation, as contemplated by [the decree] and by the Court's various remedy-related opinions * * * has deprived the provisions of the [decree] the chance to operate together as intended [and] is entirely incongruous with the original expectations of the parties and the Court").

Moreover, modification of the Settlement Order is necessary because changed circumstances have impeded the Settlement Order from "accomplish[ing its] [intended] result" and "achiev[ing] its principal objects." *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 249-251 (1968).[3] Here, the object of the Settlement Order is to remedy defendants' failure

---

[3] Decisions in the D.C. Circuit have indicated that the *Rufo* standard may be inapplicable to motions, such as the present one, made on behalf of the party who sought the equitable relief, and instead the standard set down in *United States v. United Shoe Machinery Corp.*, 391 U.S. 244 (1968), should apply. In *United Shoe,* the Supreme Court reversed the denial of the government's motion to modify an injunctive order which had not achieved its purpose, stating "If the decree has not, after 10 years, achieved its 'principal objects,' * * *—the time has come to prescribe other, and if necessary more definitive, means to achieve the result." *Id.* at 251-52; *See also Cook v. Billington*, 2003 WL 24868169, at *2 (D.D.C. Sept. 8, 2003) (Kessler, J.) (noting that "there is case law from our Circuit suggesting that the *Rufo* standard is not applicable * * * when 'the party who sought the equitable relief' seeks the modification, [but instead] a wholly different standard applies-namely, that a 'court may [modify] the decree in

to make determinations on Medicaid applications within 45 days and their unlawful termination without notice of Medicaid benefits at renewal. *Salazar v. District of Columbia*, 954 F. Supp. 278, 334 (D.D.C. 1996) ("Defendants are hereby adjudged liable under 42 U.S.C. 1983 for violating the federal and constitutional rights of Medicaid applicants and recipients in the District of Columbia * * *"); Joint Praecipe Summarizing the Proposed Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997, Oct. 19, 1998, ECF No. 631, p. 2 ("The * * * application provisions in the Settlement Order are intended to achieve systemic compliance"), p. 4 ("The * * * recertification provisions in the Settlement Order are intended to achieve systemic compliance").   Defendants' continued failure to manage the Medicaid program in compliance with constitutional and federal statutory law, as evident in the ample evidence before this Court, requires an effective remedy.[4]  *See Thompson v. U.S. Dep't of*

---

order to accomplish its intended result'" (quoting *United States v. Western Electric Co.*, 46 F.3d 1198, 1202 (D.C. Cir. 1995))).  Plaintiffs also meet this alternate *United Shoe* standard because the requested modification is necessary to accomplish the intended result of the Settlement Order, namely, achieving systemic compliance with constitutional and federal statutory law concerning Medicaid applications and renewals.

The logic of these cases also suggests that Rule 60(b) in its entirety may be inapplicable to the present motion. *See* Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may *relieve* a party or its legal representative *from* a final judgment, order, or proceeding for the following reasons * * *" (emphasis added)); *see also New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 168 (D.D.C. 2008) (noting that the rule "which permits the Court on just terms, to relieve a party * * * does not inherently seem to apply when the beneficiary of a decree seeks to extend the decree, rather than relieve itself of obligations." (internal citations and quotations omitted)). If Rule 60(b) does not apply, the Court has specific authority under paragraph 71 of the Settlement Order and inherent authority as set forth in *United Shoe* to grant the relief which plaintiffs seek.

[4] In its 2013 Order terminating Section III of the Settlement Order, this Court again demonstrated its intent to ensure that defendants continue to comply with the constitutional and federal statutory requirements governing Medicaid eligibility and renewal. *Salazar v. District of Columbia*, 991 F. Supp. 2d 34, 38, n. 1 (D.D.C. 2013). In reference to the "ACA regulations [which] provide multiple safeguards to ensure that no members of the plaintiff class whose eligibility must be renewed in 2013 will be denied due process," this Court stated that "members of the plaintiff class can also contact Plaintiffs' counsel, as they have been doing over the years, to obtain legal assistance. [Settlement] Order ¶ 64." *Ibid.* Paragraph 64 of the Settlement Order,

14

*Housing & Urban Development*, 404 F.3d 821, 827–829, 831 (4th Cir. 2005) (defendant's failure to fulfill its obligations under a consent decree constituted an "unanticipated and substantial change of circumstance" sufficient to warrant an extension of the district court's jurisdiction over the decree). This Court should modify the Settlement Order to protect the plaintiff class against defendants' violations of their rights.

## B.   IN THE ALTERNATIVE, MODIFICATION IS WARRANTED UNDER RULE 60(b)(6) DUE TO EXTRAORDINARY CIRCUMSTANCES

Under Rule 60(b)(6), a court may modify an order for "any other reason that justifies relief" as long as the movant demonstrates "extraordinary circumstances." Fed. R. Civ. P. 60(b)(6); *see Salazar v. District of Columbia, supra*, 633 F. 3d at 1119 (explaining that although "[t]he phrase 'extraordinary circumstances' does not appear in the text of Rule 60(b)(6), * * * the Supreme Court has added this gloss to the rule"); *see also Klapprott v. United States*, 335 U.S. 601, 614–615 (1949) (Rule 60(b)(6) is a "catch-all" provision that gives courts discretion to "vacate judgments whenever such action is appropriate to accomplish justice.").

This Court has broad discretion under Rule 60(b)(6) and should find that extraordinary circumstances exist when, as here, there is a high risk of irreparable harm to the parties involved and to the public interest in the absence of injunctive relief. *See Washington Alliance of Technology Workers v. U.S. Dep't of Homeland Security*, No. CV 14-529 (ESH), 2016 WL 308775, at *4 (D.D.C. Jan. 23, 2016) (granting relief under Rule 60(b)(6) considering the public interest and "the significant hardship that a regulatory gap would cause for current and future

---

cited by the Court, permits plaintiffs' counsel to seek attorneys' fees for assisting individuals in the plaintiff class. ECF No. 663, para. 64 ("The reasonable time and expenses of Plaintiffs' counsel in making [an] inquiry [about whether the caller is a member of the plaintiff class] and providing such legal assistance shall be deemed compensable monitoring of this Order under 42 U.S.C. Section 1988 and applicable law interpreting that statutory provision."). The Court explicitly retained jurisdiction over the subclasses by allowing plaintiffs' counsel to provide them legal assistance and seek attorney's fees as part of monitoring.

participants in the STEM OPT program" for persons in the United States on an F-1 student visa).

Plaintiffs showed in their opening and reply briefs in support of their motion for a preliminary

injunction that there are systemic problems with the processing of applications and renewals

causing irreparable harm to the plaintiff class.  ECF No. 2070, pp. 45-47; ECF No. 2083, pp. 21-

25; *see also* Jackson Decl., Pl. Ex. 32, ECF No. 2070-30 (loss of Medicaid without notice after

returning renewal form caused family partial loss of Social Security benefits for six months, to

have to pay out-of-pocket for child's medication, and was "very stressful"); Edmonds Decl., Pl.

Ex. 48, ECF No. 2070-46 (loss of Medicaid without notice after returning renewal form caused

beneficiary to go without prescribed medication and rehabilitation therapy after a car accident);

Rizio Decl., Pl. Ex. 49, ECF No. 2070-47 (loss of Medicaid for child without notice after

returning renewal form caused child to go without prescribed medication and to miss scheduled

doctor's appointments).  Without Medicaid coverage, plaintiff class members are caused very

real harm as they are forced to decide between paying for needed services and medicines out-of-

pocket, or for some other necessary item, such as food, clothing, utilities, or rent. *See Salazar v.*

*District of Columbia*, *supra*, 954 F. Supp. at 325 (finding that defendants' failures were "not

simply an abstract bureaucratic irregularity" but instead had "concrete and often-times

devastating effects on poor, sick, vulnerable people"); *see also Blum v. Caldwell*, 446 U.S. 1311,

1316 (1980) (explaining that Medicaid applicants are "unable to provide for necessary medical

care because of lack of resources"); *Goldberg v. Kelly*, 397 U.S. 254 at 264, 267-268 (1970)

("[W]hen welfare is discontinued * * * that termination * * * may deprive an eligible recipient of

the very means by which to live while he waits").

 Extraordinary circumstances also exist when enforcement of a consent decree "is on-

going and [previously] terminated Consent Decree provisions have a decided impact on the

16

future termination of live Consent Decree provisions * * *." *Hadix v. Caruso*, 461 F. Supp. 2d 574, 589 (W.D. Mich. 2006) (court reopened terminated provisions of a consent decree pursuant to Rule 60(b)(6) and issued a preliminary injunction), remanded, 248 Fed. Appx. 678 (6th Cir. 2007).[5]  In *Hadix*, the district court found that recurring problems resulted from "the cracks" left by the previously terminated provisions and, therefore, "Rule 60(b)(6) relief is not only possible, but it is necessary for the District Court to fulfill its constitutional and statutory role."  461 F. Supp. 2d at 589.  The court rejected the argument that such "cracks" should be addressed through the filing of a new lawsuit, noting that "[a]ny attempt to fracture the lawsuit by forcing separate actions on related topics would do a grave disservice to both prisoners and administrators by forcing them to function under multiple enforcement regimes. In a word, the equities of this suit demand Rule 60(b)6 relief."  *Ibid.*  Similarly, in the present case, the Settlement Order's Early and Periodic, Screening, Diagnostic and Treatment (EPSDT) services program provisions are still live. These children in need, however, cannot begin to enforce their EPSDT claims under the Medicaid program if their applications are unlawfully delayed or their benefits are illegally terminated at renewal.  Those eligible for EPSDT, children (and their parents or caretakers) and pregnant women, are all subject to Medicaid renewal under the Modified Adjusted Gross Income (MAGI) method.  Pl. Ex. 23, ECF No. 2070-21, p. MCAC 10.  Such individuals are generally "non-disabled" and therefore subject to the 45-day processing rule for Medicaid applications.  42 C.F.R. 435.911(a)(2).  Thus, this Court's enforcement of the live provisions of the Settlement Order is impeded by defendants' actions and inactions and, therefore, extraordinary

---

[5] In 2009, after a hearing, the district court found that, *inter alia*, the mental health provisions of the Consent Decree were properly re-opened under Rule 60(b)(6), but that the plaintiffs could not establish that the defendants failed to comply with the district court's preliminary injunction in any way that would support ongoing relief.  *Hadix v. Caruso*, 2009 WL 891709 (W.D. Mich. 2009), affirmed, 420 Fed. Appx. 480 (6th Cir. 2011).

circumstances exist supporting modification.  Plaintiffs are justified in obtaining a modification under Rule 60(b)(6), because defendants' failure to make determinations on Medicaid applications within 45 days, and to provide adequate and timely notice to Medicaid recipients before benefits are terminated affects the enforcement of the Settlement Order's remaining EPSDT provisions.

## III

### THE MODIFICATION REQUESTED IS SUITABLY TAILORED AND WILL EFFECTUATE THE SETTLEMENT ORDER

Plaintiffs seek a modification of the Settlement Order to require defendants to grant provisional eligibility to all persons whose Medicaid applications have been pending longer than 45 days and to continue the eligibility of all Medicaid recipients due for renewal. The added provisions would remain in effect until defendants can show, based on substantial evidence, that the District of Columbia is able to process all Medicaid applications within 45 days and to renew Medicaid eligibility in accordance with the due process standards of the Constitution and other requirements of federal law.

This requested relief is "suitably tailored" to resolve the problems created by the "changed circumstance[s]." *Rufo v. Inmates of Suffolk County Jail*, *supra*, 502 U.S. at 391. Provisional eligibility and the continuation of eligibility for individuals due for renewal allows applicants and current Medicaid recipients to access Medicaid coverage without either waiting more than 45 days for their application to be processed or suffering lapsed coverage.  Moreover, the modification that plaintiffs seek has a specific end point: these modified portions of the decree would end when defendants can demonstrate to the Court that they are no longer failing to process Medicaid applications within 45 days nor failing to protect the due process rights of Medicaid recipients at renewal.  As the Court of Appeals held in *Western Electric*, *supra*, 46

F.3d at 1202 (citing *United States v. United Shoe Machinery Corp.*, *supra*, 391 U.S. at 252): "[a]t the request of the party who sought the equitable relief, a court may tighten the decree in order to accomplish its intended result." With these modifications in place, the central purposes of the application and recertification provisions of the Settlement Order will be vindicated and the EPSDT provisions will be effectuated as well.

## CONCLUSION

For the reasons set forth above and in plaintiffs' opening and reply briefs in support of their motion for a preliminary injunction, plaintiffs request that this Court enter an Order modifying the Settlement Order by: (1) enjoining defendants to approve provisionally all Medicaid applications pending over 45 days until defendants can show, based on substantial evidence, that the District is able to process all Medicaid applications within 45 days, and (2) enjoining defendants to continue the eligibility of all Medicaid recipients due to be renewed until defendants can show, based on substantial evidence, that the District is able to renew Medicaid in accordance with the due process standards of the Constitution and other requirements of federal law, and (3) ordering any additional relief the Court finds appropriate, including reasonable monitoring of defendants' compliance efforts.

Respectfully submitted,

  /s/ Zenia Sanchez Fuentes

JANE PERKINS
NATIONAL HEALTH LAW PROGRAM
101 East Weaver Street, Suite G-7
Carrboro, NC 27510
(919) 968-6308

BRUCE J. TERRIS, Bar #47126
KATHLEEN L. MILLIAN, Bar #412350
LYNN E. CUNNINGHAM, Bar #221598
ZENIA SANCHEZ FUENTES, Bar #500036
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC  20005-4632
(202) 682-2100, ext. 8484

*Counsel for Plaintiffs*

February 9, 2016

19

**LIST OF EXHIBITS**

| Number | Description |
|--------|-------------|
| 57 | Declaration of Chelsea Sharon, January 29, 2016, with exhibits |
| 58 | Excerpt of Transcript of Status Conference, October 22, 2015, cover and pp. 1-20 |
| 59 | Excerpt of Transcript of Status Conference, December 10, 2015, cover and pp. 1-10 |
| 60 | Cancellation Notice of ESA Business Process Enhancement Stakeholder Group, February 10, 2016 |