UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR SALAZAR, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 93-452 (GK) |
| DISTRICT OF COLUMBIA, *et al.*, | : |
| Defendants. | : |

## MEMORANDUM OPINION

On April 4, 2016, this Court granted Plaintiffs' Motion for Modification of the Settlement Order [Dkt. No. 2093] enjoining the District of Columbia ("the District" or "Defendants") to (1) "provisionally approve all Medicaid applications pending over 45 days until a final determination can be made," and (2) "to continue the eligibility of all Medicaid recipients due to be renewed or recertified for 90 days after each recipient's renewal or recertification deadline unless Defendants have affirmatively determined that the recipient is no longer eligible for Medicaid." April 4, 2016 Order at 2-3 [Dkt. No. 2109].

The matter now before the Court is Defendants' Motion to Stay the Court's Order Filed on April 4, 2016 ("Mot.") [Dkt. No. 2114], pending Defendants' Motion for Reconsideration [Dkt. No. 2113] and, if necessary, appeal, filed April 14, 2016. On April 25, 2016, Plaintiffs filed their Opposition ("Pls.' Opp.") [Dkt. No. 2126]; on May 2, 2016, the District filed its Reply (Defs.' Reply") [Dkt. No. 2129], and on May 4, 2016, the District filed a Notice of Appeal with the Court of Appeals [Dkt. No. 2131].

Rule 62 of the Federal Rules of Civil Procedure permits a Court to stay a judgment pending disposition of a motion to alter or amend judgment, or pending an appeal. Fed. R. Civ. P. 62(b)(3) and 62(c). The following factors must be considered in determining whether a Rule 62 stay is

warranted: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay." Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

Upon consideration of Defendants' Motion to Stay, the Opposition, and the Reply, the Court concludes, for the following reasons, that the requested Stay shall be **granted**.

1. As to the likelihood that the District will prevail on the merits of the appeal, "[i]t will ordinarily be enough that the movant has raised questions going to the merits, so serious, substantial, and difficult as to make them a fair ground of litigation and thus for more deliberative investigation." Baker v. Socialist People's Libyan Arab Jamahirya, 810 F. Supp. 2d 90, 97 (D.D.C. 2011) (citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d at 844)).

In this case, the District has in fact raised serious issues about the difficulties that would flow from extensive and unintended effects of the Court's Order. In the District's view, the Court's Order of April 4, 2016, will cause great confusion among Medicaid beneficiaries and will divert much needed resources from the District's on-going efforts to comply with the Affordable Care Act ("ACA"), 26 U.S.C. 5000A. For example, the District argues that the Court has misunderstood the breadth of the ruling in Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 391 (1992), as to a court's authority to fashion new remedies under changing conditions. The District also argues that the actual relief imposed by the Court was not tailored to remedy the Plaintiffs' allegations of harm to EPSTD eligible children, as well as eligible adult beneficiaries.

Both of these examples are sufficiently serious and substantial to warrant "more deliberative investigation."

2.  As to "the likelihood that the moving party will be irreparably harmed absent a stay," the District makes its strongest argument. The District argues that it will be irreparably harmed if the Stay is not granted. In its view, the provisions of the April 4, 2016, Order do not involve a "simple turn of a switch." Mot. at 10. Rather, that Order, if not stayed, will literally halt the considerable progress the District has made in attempting to comply with the ACA.

On pages 10-15 of its Motion, the District offers detailed evidence as to the steps it must take to comply with the April 4, 2016 Order. Among other things, it must allocate resources to "build and modify the systems' functionality required to perform the two categories of tasks which are contained in the Court's Order." Mot. at 10. The Declaration of Claudia Schlosberg, the District of Columbia Medicaid Director and Senior Deputy in the Department of Health Care Finance ("DHCF") explains that in order to comply with the April 4, 2016 Order, there would have to be reprogramming of multiple systems that support Medicaid eligibility determinations and renewals, modifications to existing beneficiary notices, development and programming of new beneficiary notices, development of new business processes and modifications to existing business processes, and new manual procedures. In addition, eligibility workers must be re-trained and new "scripts" must be developed for all call centers, educational videos, and robocalls that provide beneficiaries with information and assistance regarding the application and renewal process. Declaration of Claudia Schlosberg in Support of Motion to Stay ("Schlosberg Decl." [Dkt. No. 2114-1]. Ms. Schlosberg goes into enormous detail about what each of these changes would entail in terms of staff, time, and effect they would have on the District's attempt to comply with the

ACA requirements related to applications for, approvals of, and renewals of eligibility. Schlosberg Decl. at ¶¶ 7-34.

The District also points out that, given the fact that the renewal process is ongoing, many individuals have already received notices and instructions that they will lose their opportunity to obtain renewal if they fail to return the documentation required for the District to make eligibility determinations. That information would not be correct under the Court's April 4, 2016 Order. The District states it will also be forced to change a significant amount of outreach material to conform with the April 4, 2016 Order and must develop training materials to provide its staff at separate call centers and a specific unit which is dedicated to processing renewals.

There is no question that the resources which will be necessary to implement the changes required by the April 4, 2016 Order must be diverted from other critical ACA projects on which employees have been and are now working. Those projects exist to implement the ACA's complex requirements for timely processing of applications and renewals. In other words, the District claims it will have to move staff working on those projects in order to comply with the April 4, 2016, Order, rather than allowing staff to continue meeting the needs of compliance with the ACA. Clearly, it is not in anyone's interest for the District to fail to continue the ACA compliance tasks.

Finally, if the District's appeal is successful, it will then have to go through a lengthy and expensive process to reverse what was required by the April 4, 2016 Order.

3. As to "the prospect that others will be harmed if the Court grants the stay," (Cuomo, 772 F.2d at 974), this Court cannot ignore the potential harm that Medicaid beneficiaries may suffer if the April 4, 2016 Order is stayed. See Pls.' Opp. at 18. However, the District has shown that the beneficiaries stand to endure more harm if the April 4, 2016 Order is implemented prior

to this Court's decision on Defendants' Motion to Amend or an appeal. See Schlosberg Dec. ¶¶ 6-13, 15-32.

The District believes that there will be great confusion, and that some individuals will lose their eligibility because they will have been told that their coverage will continue for 90 days past their renewal date. If the Court of Appeals overturns the April 4, 2016 Order, those individuals who were told that their coverage would continue for 90 days past their renewal date will lose their coverage in its entirety.

4. As to "the public interest in granting the stay," it appears to be very substantial. The District has estimated how much it will cost the tax payers to make the changes that are needed to comply with the Court's Order of April 4, 2016. The District estimates that it will cost approximately $20,261,624 in local dollars, plus $79,423,169 in federal dollars to comply with the April 4, 2016, Order. Those figures do not include the effect of the 90 day grace period. Even if the District's appeal is successful, it will still be unable to recover those costs from plaintiffs, providers, or beneficiaries. In other words, the burden of replacing those funds will be on the shoulders of the District of Columbia tax payers. Obviously, that result would not be in the public interest.[1]

In conclusion, the District has shown that compliance with the Order will require making substantial changes in the very complex eligibility systems, will require employees to immediately stop work on those systems, thereby impairing deadlines imposed by the federal government in order to promote compliance with the ACA. Finally, as already noted, if the Court of Appeals

---

[1] Plaintiffs have not offered any convincing evidence to overcome the concerns of the District. For example, they have not provided any expert testimony that would question the District's projected financial figures just as they have offered no specific or expert evidence that the District's scenario is incorrect about the difficulties of complying with the April 4, 2016 Order.

rejects this Court's ruling, time -- and money -- would be lost undoing one eligibility system in order to redo and finish the systemic changes required by the ACA.

For all these reasons, the Court believes that the wiser answer to the difficult question raised in the Motion is to avoid as much harm as possible and **grant** it.[2]

May 17, 2016

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**

---

[2] The Court has already granted Defendants' Motion for an Emergency Stay [Dkt. No. 2116].