## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| OSCAR SALAZAR, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Civil Action No. 93-452 (GK)** |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

In 1993, Plaintiffs filed this Complaint alleging various statutory and Constitutional violations by the District of Columbia ("Defendants" or "District") in the course of administering its Medicaid Program. 42 U.S.C. § 1396, *et seq*. The Plaintiffs have again alleged failure of the District to meet the dental needs of eligible children under the Medicaid Program and have filed this Motion to Enforce the Dental Order ("Mot.") [Dkt. No. 2094].

Upon consideration of the Motion, Opposition ("Opp.") [Dkt. No. 2142], Reply ("Rep.") [Dkt. No. 2165], Revised Opposition ("Rev. Opp.") [Dkt. No. 2173], and Supplemental Reply ("Sup. Rep.") [Dkt. No. 2178], and the entire record herein, and for the reasons set forth below, Plaintiffs' Motion to Enforce is **denied**.

### I.    BACKGROUND

In 1996, after a lengthy bench trial, the Court found the District to be in violation of the Medicaid Act. See Salazar v. District of Columbia, 954 F. Sup. 278 (D.D.C. 1996), and issued a 56 page Opinion setting forth detailed findings of fact and conclusions of law. The Government then took an appeal of the 1996 Order to the Court of Appeals. However, shortly before oral argument, the Parties decided to enter into a Settlement Order ("the 1999 Settlement Order") [Dkt. No. 663].

Section 36 of the 1999 Settlement Order mandated that the District "shall provide or arrange for the provision of early and periodic, screening, diagnostic and treatment services ("ESPDT") when they are requested by or on behalf of children." 1999 Settlement Order ¶ 36. A number of its requirements exceeded obligations imposed by federal law.

In 2004, the Plaintiffs again alleged violations of the Medicaid Act and Section 36 of the 1999 Settlement Order. The Court found the District to still be in violation of Section 36 obligating the District to provide EPSDT dental services, and entered the 2004 Dental Order [Dkt. No. 1033], which again included standards exceeding those required by federal law in order to ensure provision of dental services to the eligible children.

Between 2006 and 2012, the District filed various Motions, many of which asked the Court to vacate or modify the 2004 Dental Order, or to terminate the 1999 Settlement Order. See e.g. [Dkt Nos. 1153, 1618, and 1627]. These Motions were either denied or withdrawn. On April 20, 2012, at the request of the Parties, the Court entered an Order referring the case for mediation [Dkt. No. 1790]. The Parties mediated in good faith from July 2012 to August 2014, but, unfortunately, were unable to reach a final agreement. Rev. Opp. at 5.

From 1999 until the present time, Plaintiffs and the District of Columbia have been working diligently, overcoming many obstacles in their way, including the difficult transition to Obamacare, to ensure that the children of the District were receiving the services to which they were entitled under the various provisions in Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* and accompanying regulations, 42 C.F.R. § 430, *et seq.*

## II.   STANDARD OF REVIEW

District Courts have the authority to enforce the terms of their mandates.  See The Fund for Animals v. Norton, 390 F. Supp. 2d 12, 15 (D.D.C. 2005).  A motion to enforce may be granted when a "plaintiff demonstrates that a defendant has not complied with a judgment entered against it."  Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004).  A motion to enforce should be denied if a plaintiff "has received all relief required by that prior judgment."  Id. (citing Watkins v. Washington, 511 F.2d 404, 406 (D.C. Cir. 1975).

## III.   ANALYSIS

### A.   Plaintiffs Have Not Violated Paragraph 80 of the Settlement Order

As an initial matter, Defendants argue that Plaintiffs' Motion to Enforce violates Paragraph 80 of the Settlement Order which requires that

> Before any party moves the Court to enforce or construe this Order . . . it shall give the other party 10 days' notice of its intention. During that 10 day period, the parties shall negotiate in good faith in an effort to resolve the dispute without seeking a decision from the Court before filing it.

The District admits that Plaintiffs gave it 10 days' notice before filing the Motion to Enforce. However, Defendants argue that Plaintiffs failed to negotiate in good faith in an effort to resolve this dispute without the involvement of the Court.  In light of the two years of good faith, but unsuccessful, mediation which preceded the filing of Plaintiffs' Motion, the Court finds that Plaintiffs have not violated Section 80 of the Settlement Order.

**B.     The Major Provisions of the 2004 Dental Order**

In its Opposition to Plaintiffs' Motion, the District set forth the major requirements contained in the 2004 Dental Order, which includes both preventive and therapeutic dental services. The following is an overview of all those requirements:

> The 2004 Dental Order provides that the District must create a detailed dental periodicity schedule that sets forth the ages and frequency that dental services should be provided to children, and to distribute this schedule to all managed care organizations (MCOs), dentists, and pediatric health care providers. In addition, the Dental Order requires the District to submit a yearly CAP with detailed information concerning the provision of EPSDT dental services. In the CAP, the District must address the current number of providers of dental EPSDT services and the District's efforts to maintain a sufficient number of those providers who are willing to and able to provide dental services to EPSDT-eligible children. . The CAP also must address reimbursement rates and streamlining of administrative proceedings to encourage greater provider participation. Id. The District must include detailed information concerning available providers, including names, addresses, and telephone numbers. Id. Moreover, the District must report steps taken to ensure training, skills, and knowledge of providers to deliver EPSDT dental services. Under the CAP, the District annually must distribute a provider bulletin to licensed dentists and pediatric health care providers describing dental health education and discussing guidance regarding oral hygiene for various ages and categories. Id. The District must describe its efforts to coordinate activities and communication among the D.C. Department of Health Care Finance (DHCF), MCOs, dentists, pediatric care providers, and the Department of Health's (DOH) Oral Health Program.     The District also must identify methods in the CAP to assist EPSDT enrollees in making and keeping dental appointments, including the establishment of a hotline to answer basic oral health questions and provide assistance in scheduling appointments and following up to ensure the appointments are kept.

Rev. Opp. at 5-6.

The 2004 Dental Order directed the District to develop and submit to the Court a yearly corrective

act plan ("CAP") for ensuring that all EPSDT-eligible children receive the dental services to which

they were entitled. 2004 Dental Order at 3. The 2004 Dental Order also mandated that the CAP

include specific interim goals and a plan for achieving them, no later than September 30, 2007.

Finally, the 2004 Dental Order required the District to meet the following utilization goals:

> (i)  At least **80 percent** of EPSDT-eligible children in the 6-12 months-old age-category receive at least one oral risk health assessment by a primary care provider as part of the Health Check visit;
>
> (ii)  At least **80 percent** of EPSDT-eligible children in the 12-24 months-old age-category receive at least one oral risk health assessment by a primary care provider as part of the Health Check visit;
>
> (iii)  At least **85 percent** of the EPSDT-eligible children entering school programs for the first time receive an oral health screening by a licensed dentist;
>
> (iv)  At least **70 percent** of all EPSDT-eligible 8-14 year-olds receive protective sealants on their permanent teeth;
>
> (v)  At least **80 percent** of EPSDT-eligible children 3 years old and older receive "any dental services" as reported in line 12a of the CMS Form 416;
>
> (vi)  At least **80 percent** of EPSDT-eligible children 3 years of age and older receive "preventive dental services" as reported in line 12b of the CMS Form 416.

Id. The "[2004] Dental Order also required the District to provide yearly reports to the Court and

[P]laintiffs regarding the number of children receiving dental services." Id. at 6-7.

## C.     The Changes Sought by Plaintiffs

In order to achieve the goals set forth in the 2004 Dental Plan, the Plaintiffs now urge that

the Defendants adopt a five-year CAP with a September 30, 2020 deadline to reach full compliance

with the six performance goals laid out in the 2004 Dental Order.  Plaintiffs also request the District

to take on additional obligations, such as the submission of a five-year CAP "that sets forth specific

requirements . . . concrete steps and measurable, interim deadlines and numerical goals, designed

to reach full compliance with each of the . . . performance goals by September 30, 2020." See Defs.'

Rev. Opp. to Plaintiffs' Motion to Enforce the Dental Order of October 18, 2004, at 2-3.

Plaintiffs do recognize that some of Defendants' efforts, as described in the current five-year

state oral health action plan "are a step in the right direction," but do not go far enough to reach the

six performance goals in paragraph 2(e) of the 2004 Dental Order within a reasonable time frame.

## D.     The District's Response

The Government admits that the 2004 Dental Order's target utilization goals have proven to

be unattainable by the District -- but points out that they have been unachievable by every other

jurisdiction in the United States as well.  However, "the District exceeds federal requirements in the

provision of mandatory and most optional dental services for Medicaid-eligible children, and the

District's dental service utilization rates have ranked above the national average for over five years."

Rev. Opp. at 2.

### 1. Current Progress

#### a. Utilization Goals (i) and (ii)

The Dental Order requires that at least 80 percent of all EPSDT-eligible children 6 to 24

months "receive at least one oral risk health assessment by a primary care provider as part of the

HealthCheck visit." Dental Order ¶¶ 2(e)(i), (ii). On the Oral Health Assessments furnished during well-child visits by primary care providers, the District's well child visit utilization for the 6 to 12 month and 12 to 24 month age groups is 88 percent and 78 percent, respectively. Sonosky Decl. ¶ 102.

### b. Utilization Goal (iii)

The Dental Order requires that at least "85 percent of all EPSDT-eligible children entering school programs for the first time receive an oral health screening by a licensed dentist." Plaintiffs allege that less than 60% of Medicaid-eligible children received such screenings in FY 2014, relying upon data for preventive dental service for children ages 3 to 18 and 6 to 18 to measure the District's compliance. Mot. at 19. To date, the District has not reported data on this utilization goal, but it does not dispute that it has not met this goal. Rep. at 20. However, as reflected in the 2015 CAP, the District has identified action items to encourage the submission of oral health assessment forms so that it may create a more accurate report on the district's compliance with this goal. Rev. Opp. at 23-25.

### c. Utilization Goal (iv)

As to the requirement to provide protective sealants, the 2004 Dental Order required that at least 70 percent of all EPSDT-eligible children 8-14 years old receive protective sealants on their permanent teeth. As of FY 2015, the United States Centers for Medicare and Medicaid Services ("CMS") again concluded that no state has been able to achieve this 70 percent utilization rate. The issue of providing dental services and especially the sealants to Medicaid-eligible children, especially the younger ones, is significant because the sealants are so effective in lowering rates of cavities.

In FY 2014, the District reported that 20.50 percent of its children ages 6-14 did receive protective sealants compared to a national average of 14.88 percent in FY 2015. Sonosky Decl. ¶ 28. In FY 2015, the District reported that 22.67 percent of the EPSDT-eligible children received at least one protective sealant, as compared to a national average of 14.7 percent. Id. See Defs.' Rev. Opp. at 16. Moreover, the District was able to obtain approval from CMS for reimbursement for fluoride varnish so that primary care providers may now bill for treatment up to four times per year for children up to age 3.

The District has advanced its school-based initiatives through which students receive dental assessments and services, including sealants. Sonosky Decl. ¶ 65. In the first half of the 2015-2016 school year, 1,516 students received preventive dental care and 622 students received sealants through this program at 33 DCPS schools, 26 public charter schools, and three Early Childhood Centers.

The District admits that these numbers are limited because of low levels of parental consent to receiving school-based screening. Rev. Opp. at 14. Plaintiffs propose that the District implement an opt-out system, requiring parental involvement only when a parent does not want their child to receive treatment. However, the District responds that parental consent is required for screening, and Plaintiffs have not disputed that.

While it is clear that all of the states, including the District, are having a great deal of difficulty complying with this particular utilization goal, the District denies that it has ignored its relatively low rates of compliance. It argues that it has a State Oral Health Action Plan (SOHAP), which provides specific measures and strategies devoted to sealants including information on enrollment, outreach and education, provider education, and DOH's oral health program to reduce

barriers to produce use of protective sealants.  The District's goal is to reach a 2 percent increase each year measured from FY 2013 to FY 2018.

### d. Utilization Goal (v)

Again, even though no jurisdiction in the country has been able to reach the desired rate of 80 percent of ESPDT eligible children 3 years of age and older receiving any dental services as reported in line 12(a) of the CMS form 416, in FY 2014, the District reported that 60.51 percent of its eligible children received such services, compared to the national average of 52.66 percent. Id. ¶ 28.  In FY 2015, the District reported a rate of 61.38 percent, compared to the national average of 52.72 percent.  Id. ¶ 28.

### e. Utilization Goal (vi)

While no jurisdiction in the country has been able to reach the desired rate of 80 percent of ESPDT eligible children aged 3-20 receiving preventive dental services, in FY 2014, the District reported that 56.32 percent of eligible children had received preventive dental services, compared to the national average of 48.4 percent.  Id. ¶ 28.  That year, the District ranked fourth in the country in the percentage of children ages 1 to 20 who received a preventive dental service, behind only Vermont, Connecticut, and Washington.  Id. ¶30.  In FY 2015, the District reported a rate of 57.38 percent, compared to the national average of 48.24 percent.  Id. ¶ 28.

### 2. Future Plans

The District has also already instituted a plan for improvement.  In 2010, CMS created national and state goals for preventive dental services by 2015 through a national Oral Health Initiative ("OHI").  Rev. Opp. at 9.  The OHI goals include "(1) an increase from 50% to 60% for children ages 1 to 20 enrolled in Medicaid and CHIP (for at least 90 days) who receive a preventive

dental service; and (2) an increase from 17% to 27% for children ages 6 to 9 enrolled in Medicaid and CHIP (for at least 90 days) who receive a sealant on a permanent molar tooth." Rev. Opp. at 9-10.

In its response, the District has set forth, at great length, the particulars of its SOHAP, which was developed in consultation with CMS and other national experts, the numerous local partners with children's oral health stakeholders, and the District's school-based initiatives. The description of these programs indicate clearly how seriously the District has attempted to do everything possible to implement and improve the dental services to Medicaid-eligible children by following the requirements of the 2004 Settlement Order.

Plaintiffs' request for a five-year CAP with interim performance goals not only exceeds the Dental Order's scope, which only requires annual CAPs, but would in essence replace the District's carefully developed SOHAP, which appears to be working quite well.

## IV.   CONCLUSION

The Court concludes that the District is making genuine and reasonable improvement in its sealant programs. As noted, it has consistently ranked above the national average and, perhaps even more importantly, it has developed effective and creative implementation measures such as those mentioned earlier to increase its utilization goals.

The facts set forth in this Opinion, as well as the additional information contained in the briefs of both parties, convince the Court that the District has presented a very credible explanation of how diligently and effectively it has been working in the last few years to meet those goals. Unfortunately, it appears that the September 30, 2020, deadline that Plaintiffs seek is simply not achievable at this time.

-10-

For all these reasons, the Court concludes that Plaintiffs' Motion to Enforce the Dental

Order of October 18, 2004 shall be **denied**.


February 22, 2017                        *Gladys Kessler*

Gladys Kessler
United States District Judge


**Copies via ECF to all counsel of record**