UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OSCAR SALAZAR, *by his parents and next friends,* on behalf of himself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 93-cv-452 (TSC) |
| THE DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Before the court is the District of Columbia's "Motion to Modify the Settlement Order to Waive Financial Penalties on Managed Care Organizations for Fiscal Year 2020." ECF No. 2355. For the reasons set forth below, the court will GRANT the motion in part and DENY the motion in part.

**I.   BACKGROUND**

Plaintiffs filed this class action lawsuit in 1993 against the District of Columbia, "principally alleging that the District's administration of its Medicaid program violated the Medicaid statute, its implementing regulations, District of Columbia law, and the United States Constitution." *Salazar by Salazar v. D.C.*, 896 F.3d 489, 493 (D.C. Cir. 2018). After a jury trial, final judgment and an appeal, the parties reached an agreement in 1999, after which the court approved a Settlement Order ("Order"), over which the court retained jurisdiction "to make any necessary orders enforcing or construing" the agreement. *Id*. at 493—94.[1]

---

[1]   A more thorough discussion of the history of this case appears in *Salazar v. District of*

The only remaining requirement under the Order is the District's obligation to "provide or arrange for the provision of early and periodic screening, diagnostic and treatment services (EPSDT) when they are requested by or on behalf of children" under twenty-one years old. ECF No. 663, Settlement Order ¶ 36; *see id.* ¶¶ 36-60; *Salazar*, 896 F.3d at 495. A key component of the EPSDT benefit is the well-child visit—a periodic health screening that includes a physical exam, immunizations, health and developmental health history review, and laboratory tests, when appropriate. *Memisovski ex rel. Memisovski v. Maram*, No. 92 C 1982, 2004 WL 1878332, at *20 (N.D. Ill. Aug. 23, 2004) (citing 42 U.S.C. § 1396d(r)); *see* 42 C.F.R. § 440.40(b). The EPSDT benefit also includes vision services, dental services, hearing services, and "[s]uch other necessary health care, diagnostic services, treatment, and other measures … to correct or ameliorate defects and physical and mental illness and conditions discovered by screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r); *see also* 42 C.F.R. § 440.40(b).

The District provides these services through Managed Care Organizations (MCOs) which must: 1) "provide each EPSDT screen, laboratory test and immunization within sixty (60) days of its due date, based on the child's age"; and 2) "meet an 80% participant ratio" each fiscal year for all children enrolled in the MCO. Order ¶ 45 (a) – (b). "A state's participant ratio is 'the extent to which the number of eligible beneficiaries who should be screened during the year receives at least one initial or periodic screening service." ECF No. 2308, Defs. Renewed Mot. Terminate Order at 5 n.4 (citing State Medicaid Manual § 5360(B)) (cleaned up). This "ratio is calculated by dividing the number of Medicaid-eligible children who received at least one initial or periodic screening service in a given year by the number of Medicaid-eligible children who should have received at least one initial or periodic

---

*Columbia,* 123 F. Supp. 2d 8 (D.D.C.2000), *Salazar v. District of Columbia,* 954 F. Supp. 278 (D.D.C.1996), and *Salazar by Salazar v. D.C.*, 896 F.3d 489, 493 (D.C. Cir. 2018).

screening service in that year." *Salazar*, 954 F. Supp. at 304.

If a MCO participant ratio falls below 80%, it must develop and implement a corrective action plan. Order ¶ 45(e). Should the ratio fall below 75%, the MCO must pay the District at least "$45 for each enrollee that is required to be added to the numerator in the MCO's EPSDT participant ratio to meet the 80% requirement." Order ¶ 45(e). The Order requires the District to enforce this penalty provision. *Id*.

In fiscal year (FY) 2019, the year before the onset of the COVID pandemic, the District's participant ratio was 63%, four points above the national average of 59%. ECF No. 2355, Defs. Br. at 6; Defs. Ex. A at 2; *see* ECF No. 2326-1. Its participant ratio had been above the national average since FY 2015. *See* Defs. Br. at 6; Defs. Ex. A at 1.

On March 11, 2020, at the onset of the COVID pandemic, the District's Mayor issued a "Declaration of Public Emergency and a Declaration of Public Health Emergency," and later a stay-at-home order. Defs. Br. at 6. Although the District and the MCOs worked together to offer new programs and strategies to address the COVID crisis and help ensure that enrollees had the greatest possible access to EPSDT Services, unsurprisingly, health care visits declined. Defs. Br. at 8—10, 12—13. For example, MCO CareFirst reported 2,041 fewer EPSDT appointments from March to September 2020, compared to the same time period the previous year. Defs. Br. at 9; Defs. Ex. B, Sonosky Decl. ¶ 19. The impact was most dramatic in April 2020, when CareFirst reported 83 EPSDT appointments, compared with 666 in April 2019. Defs. Br. at 9; Sonosky Decl. ¶ 19. In May 2019, it reported 794 appointments, compared to 167 in May 2020. Defs. Br. at 9; Sonosky Decl. ¶ 19. The District's overall participant ratio for FY 2020 was 50%. Defs. Br. at 10. It asks this court to modify the Order to waive the financial penalties as suitably tailored to address the changed circumstances, arguing that the COVID pandemic presented unforeseen and changed circumstances that justify relief from the penalty provision of the Order.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides relief from a "final judgment, order, or proceeding." The Supreme Court has recognized that this provision applies to consent decrees. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992) (citing *Railway Employees v. Wright,* 364 U.S. 642, 650–651 (1961)). Rule 60(b)(5) "provides three independent, alternative grounds for relief": (1) "the judgment has been satisfied, released, or discharged"; (2) "it is based on an earlier judgment that has been reversed or vacated"; or (3) "applying it prospectively is no longer equitable." *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015). "The vast majority of motions for modification and termination of consent decrees, especially those involving institutional reform, invoke Rule 60(b)(5)'s third clause": applying the agreement is no longer equitable. *Id.* at 327.

In *Rufo* v. *Inmates of Suffolk County Jail,* 502 U.S. 367, 376, 380-83, 393 (1992), the Supreme Court held that, pursuant to the third clause of Rule 60(b)(5), a court must apply a "flexible" approach in assessing motions for relief from a judgment, and a party seeking such relief must first establish that a "significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." Revision of the decree "may be warranted" when: (1) "changed factual conditions make compliance with the decree substantially more onerous," (2) "a decree proves to be unworkable because of unforeseen obstacles," or (3) "enforcement of the decree without modification would be detrimental to the public interest." *Id*. at 384 (citations omitted).

## III. ANALYSIS

The District contends that the proposed modification will not prejudice Plaintiffs because the penalties are paid directly to the District, not the Plaintiffs, and the waiver request applies only to the penalties for FY 2020. *See* Order ¶ 45(e).

Plaintiffs agree that the COVID pandemic constituted a significant change in circumstances but disagree that relief from the penalty provision is warranted. They first argue that the District has not shown that waiving the penalties is in the public interest. Plaintiffs argue that the District has failed to show the MCOs will be harmed absent the waiver because the MCOs are paid an upfront stipulated amount for each enrollee and those payments appear to have already been made. Citing *American Council of the Blind v. Mnuchin*, 878 F.3d 360, 368 (D.C. Cir. 2017), Plaintiffs also argue that, while a court may consider costs to a third party when evaluating the public interest under Rule 60(b)(5), "there must be adequate evidentiary support for the cited costs." ECF No. 2358, Pls. Opposition at 6.

But *American Council* does not stand for the proposition Plaintiffs claim it does. One of the issues in that case was whether the costs of the proposed modification outweighed the cost to the party opposing the modification. *American Council*, 878 F.3d at 366-71. By contrast, the issue here is whether it would be equitable to modify the Order by waiving a penalty. Thus, Plaintiffs' singular focus on costs is a red herring. Moreover, a district court may grant relief from a judgment due to changed circumstances where applying the judgment "prospectively is no longer equitable" or where "any other reason justifies relief." *Salazar by Salazar* v. D.C., 896 F.3d 489, 492 (D.C. Cir. 2018) (citing Fed. R. Civ. P. 60(b)(5) & (6)) (emphasis added).

Plaintiffs also contend that the penalties will not harm the MCOs because they are purportedly receiving overpayments as a result of the COVID pandemic—Plaintiffs claim the MCOs' profits have increased because they receive their stipulated per enrollee payments but have fewer EPSDT appointments. Pls. Opposition at 6. Plaintiffs provide no evidentiary support for this argument, nor do they explain what legal authority supports denying relief on this basis.

Plaintiffs next argue that any new programs and strategies the MCOs implemented during the COVID pandemic were no different than pre-pandemic activities or were implemented in a "limited and much delayed fashion." Pls. Opposition at 9-10. Consequently, they argue, the MCOs' efforts were not nearly as extensive or timely as the District claims they were. *Id*.

Whether or not the court credits this interpretation of the evidence, Plaintiffs have not explained how or why the timing or extent of the MCOs' programs affects whether it would be equitable to assess penalties for significantly reduced participant ratios during a global pandemic.

Next, Plaintiffs appear to argue that the requested relief assumes that the MCOs maintained the requisite 80% participant ratios prior to the pandemic, and the pandemic caused the subsequent decline. Pls. Opposition at 7-8. Plaintiffs point out that only one of the current MCOs—the one with the smallest number of enrollees and which shares its losses with the District—met the required participant ratio in the two years prior to FY 2020. Pls. Opposition at 7. Plaintiffs further argue that any relief under Rule 60(b)(5) should be tailored to the circumstances, and thus only a partial waiver based on a 75% participant ratio cap, rather than an 80% cap, is warranted.

The District counters that Plaintiffs provide no explanation for why their proposed 75% cap constitutes an appropriately tailored modification. The court agrees that Plaintiffs have not explained why a cap of 75% instead of 80% is sufficiently tailored to the changed circumstances. However, the court is persuaded by Plaintiffs' argument that the penalties should be reduced, rather than waived, particularly where even prior to the pandemic the participant ratios were consistently below what the Order requires.

In addition, using MCO performance prior to the pandemic would provide an appropriate and equitable benchmark from which to calculate penalties. Thus, for each MCO,

its penalty shall be determined by calculating the difference between the required 80% benchmark and the average participant ratio for the FY17 through FY19 reporting period. Therefore, if the MCO had a participant ratio of 40% for FY20, but an average 55% participant ratio from FY17 through FY19, then its FY20 penalty shall be calculated based on the difference between the 55% percent ratio and 80% benchmark. This result equitably protects the interests of the MCOs, while suitably tailoring the proposed modification to the changed circumstances.

## IV.  CONCLUSION

For the reasons set forth above, the court will enter a separate order granting the District's motion in part and denying the motion in part.

Date:  March 31, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge