**Plaintiffs' Exhibit 2**
Civ. No. 93-452 (TSC)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OSCAR SALAZAR, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 93-452 (TSC)
*In Forma Pauperis*

**AFFIDAVIT OF KATHLEEN L. MILLIAN**

1.      I am a partner in the Washington, D.C., law firm of Terris, Pravlik & Millian, LLP (hereafter "Terris, Pravlik & Millian" or "TPM").  The firm has served as lead counsel for the plaintiff class in this action since the case was first investigated in 1992.

2.      This affidavit is filed in support of our motion for attorneys' fees for the fourth quarter of 2022, which encompasses the three month period from October 1, 2022 through December 31, 2022.  Pursuant to the procedure in the Settlement Order in this case, the parties have settled this request for attorneys' fees.  Plaintiffs file this motion pursuant to the procedures agreed to in the Order of July 19, 2004 (ECF No. 1029), to satisfy Rule 23(h)(1) of the Federal Rules of Civil Procedure.

3.      Our firm was founded in 1970 by the late Bruce J. Terris and engages exclusively in litigation areas that have come to be identified as public interest law.  The firm engages almost exclusively in litigation in the areas of poverty, civil rights, and environmental law.

4.      The cases that Terris, Pravlik & Millian handles are in areas of the law where people traditionally have not been represented.  Almost all of the firm's work is done without charge to the client or the client pays for only a small proportion of the work and expenses based on the hope

that the client will prevail and attorneys' fees will be awarded by the court or will be received in

settlement. The firm, therefore, does not have billing rates that reflect the value of its attorneys'

services in the marketplace. *See SPIRG v. AT&T Bell Laboratories*, 842 F.2d 1436, 1442 (3d Cir.

1988); *see also Salazar v. District of Columbia*, 809 F. 3d 58, 64-65 (D.C. Cir. 2015)(in affirming

fee awards based on prevailing market rates from the LSI *Laffey* Matrix, the court of appeals

necessarily determined that TPM does not have rates that reflect the value of its services in the

marketplace); and *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019)(in reversing the fee

award based on the new USAO matrix, the court of appeals necessarily recognized that TPM does

not have rates that reflect the value of its services in the marketplace).

5.      I graduated from Cornell University in 1982 with a Bachelor of Science degree and

from Stanford Law School in 1985. Before beginning employment with Terris, Pravlik & Millian,

I was a judicial clerk to the Honorable James K. Singleton of the Alaska Court of Appeals from

1985 to 1986. I began employment with the firm in 1987 and became a partner in 1992. In the

last 30 years, I have successfully litigated complex environmental and civil rights cases in the

federal courts. For the work encompassed in this fee petition, I supervised the case.

6.      The attorney time sought in this fee request—from October 1, 2022 through

December 31, 2022—was expended by Alicia C. Alcorn, Michael L. Huang, Todd A. Gluckman,

Zenia Sanchez Fuentes, and me. Resumes for the lawyers for whom we seek fees are attached as

Plaintiffs' Exhibit 11.

(a)      Alicia Alcorn (ACA) graduated from George Mason University School of

Law in May 2004, where she served as an officer with the Association for Public Interest Law

chapter. Ms. Alcorn worked as a legal assistant with TPM for six years before joining the firm as

an attorney in 2004; she became a partner in 2012.

2

(b)      Michael L. Huang (MLH) graduated from the Georgetown University Law Center in 2007, where he served as Notes Editor for the Georgetown Law Journal.  Before joining the firm in 2012, Mr. Huang was an associate counsel to the State & Local Legal Center and a clerk to the Honorable Erik P. Christian of the Superior Court of the District of Columbia.  He became a partner in 2019.

(c)      Todd A. Gluckman (TAG) graduated from Cornell Law School in 2005.  Before joining the firm in 2011, Mr. Gluckman was a clerk to the Honorable Frederick J. Martone of the United States District Court for the District of Arizona and an associate at White & Case LLP.

(d)      Zenia Sanchez Fuentes (ZSF) graduated from the George Washington University Law School in 2005, where she participated in the Public Justice Advocacy Clinic and was a law clerk at the District of Columbia Public Defender Service.  Before attending law school, Ms. Sanchez Fuentes worked as a consultant for a global management consulting company.  She became a partner in 2013.

7.      The firm's paralegals and clerks who worked on this case for the time period covered in this application were: Amelia Medina Blanco (AMB), Braelyn Parkman (BTP), and Lily Greenberg Call (LGC).

8.      In identifying the time for which we seek compensation, we have exercised billing judgment.  We are seeking compensation only for time that we would have billed to paying clients.  Indeed, in several instances, we are not seeking compensation for time that we would have billed to paying clients.

9.      In the exercise of billing judgment concerning the attorneys' fees and expenses encompassed in this fee petition, Plaintiffs eliminated significant fees.

10.     All the work for which Plaintiffs seek payment in this application involves the monitoring of the Settlement Order, including individual class members' issues, work that resulted directly from the monitoring of the Settlement Order (*e.g.*, attorneys' fees applications), and engaging in settlement discussions with defendants concerning a strategy to exit the Settlement Order and terminate the case. Therefore, all the time included in this application was reasonably expended by Plaintiffs' counsel in the representation of the plaintiff class.

11.     For each time period at issue, we have divided the time spent in this case by attorneys and paralegals into clients, categories, and subcategories. For each time period, the lodestar amounts, *i.e.*, the number of hours of work for each attorney and paralegal in each subcategory multiplied by the rates, are set forth in summary tables. *See* Pl. Ex. 7.

12.     Computer printouts of Plaintiffs' contemporaneous time records setting forth the work performed for the fourth quarter of 2022 are attached as Plaintiffs' Exhibit 6. The time records in Plaintiffs' Exhibit 6 are organized by the same clients, categories, and subcategories as in the summary in Plaintiffs' Exhibit 7.

13.     <u>Work Monitoring Defendants' Compliance with the Settlement Order</u>. During the fourth quarter of 2022, Plaintiffs' monitoring work included reviewing, monitoring, and analyzing data in Defendants' quarterly Early and Periodic Screening, Diagnostic and Treatment (EPSDT) services HealthCheck and Notice and Outreach Reports; reviewing the FY 2022 fourth quarter updates to the Participant Ratio Corrective Action Plans (CAPs) from each Managed Care Plan (MCP)[1] and meeting with defendants to discuss these; monitoring the DC Register for regulations affecting the plaintiff class and Defendants' compliance; developing settlement offers and engaging in settlement discussions with Defendants concerning a strategy to exit the Settlement

---

[1] Formerly referred to as Managed Care Organizations or MCOs.

Order and terminate the case, and providing status updates to the Court concerning these settlement discussions.

14.    In *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 10-11 (D.D.C. 2000), this Court held that the below market rates in the Settlement Order do not apply to the "fees sought for the work of Plaintiffs' counsel on . . . settlement." Nonetheless, in the interest of advancing the current exit strategy settlement discussions, Plaintiffs are seeking only the Settlement Order rates for their counsel's settlement work.

15.    Work on Individual Medicaid Claims. Work on individual claims involved assisting families of Medicaid-eligible children under 21 who experienced a denial, reduction, or termination of services or had difficulty obtaining medical services, and assisting individuals with claims for reimbursement by the District of Columbia for medical expenses that should have been covered by Medicaid, consistent with the Court's Order and Memorandum Opinion of May 18, 2015 (ECF Nos. 2045, 2046).

16.    The issues presented by individual class members can be very time consuming. Frequently, our clients do not keep the kinds of detailed records necessary to satisfy an MCP or government agency, and we must obtain records and information for them. Moreover, some of our clients have difficulty in obtaining adequate and timely EPSDT services for their children who have complex special needs involving numerous medical professionals and service providers. Assisting these clients with obtaining timely services can be time-consuming because we often must coordinate among providers, the MCP, and the family to resolve issues through negotiation and, when necessary, through the formal appeals and grievances procedures. The most time-intensive cases involve children and adolescents with severe behavioral, emotional, and

intellectual disabilities in need of prompt, medically necessary services prior to or following extended stays in institutions.

17.    Pursuant to paragraph 64 of the Settlement Order, Plaintiffs provided brief assistance of no more than 15 minutes to numerous individuals who contacted our law firm to request legal assistance and were ultimately determined not to be members of the plaintiff class. If additional assistance was provided, it was not billed to defendants.

18.    Work on Attorneys' Fees Matters Not Subject to the Agreed Rates in the Settlement Order.  For the fourth quarter of 2022, non-monitoring work included the following attorneys' fees work: the preparation of Plaintiffs' fees request for settlement of the third quarter of 2022, negotiations for the settlement of fees for the second quarter of 2022, the preparation and submission of Plaintiffs' application for fees from the fourth quarter of 2021 through the first quarter of 2022, and a small amount of work for the preparation of Plaintiffs' application for fees for the second quarter of 2022.

19.    Agreed Rates Set Forth in the Settlement Order.  Plaintiffs have updated the rates set forth in paragraphs 64 and 65 of the Settlement Order for the work of Plaintiffs' counsel relating to monitoring Defendants' compliance with the Settlement Order and providing legal assistance to members of the plaintiff class.  The Legal Services Consumer Price Index (LSI), produced by the Bureau of Labor Statistics of the United States Department of Labor in January of each year starting with 1999, was divided by the LSI for the preceding January.  *See* Pl. Ex. 3, p. 1.  This results in the adjustment factor.  The rates from the preceding year are multiplied by the adjustment factor to calculate the next year's rates.  For example, the LSI for January 1999 (175.7) is divided by the LSI for January 1998 (168.6).  The result (1.0421115) is the adjustment factor for updating rates from January 1, 1998, to January 1, 1999.  Each rate in the January 1, 1998, year is multiplied

by the adjustment factor to produce the rate for that experience level for the next year. For example, multiplication of the 1998 paralegal rate ($75) by the adjustment factor (1.0421115) gives the 1999 rate of $78. The updated hourly rate applicable to paralegals for the work in 2022 is $170. The updated rates for 1998 through 2022 for lawyers and paralegals are set forth in Plaintiffs' Exhibit 4.

20.    Under paragraph 64 of the Settlement Order, the paralegal rate applies to all work on individual claims whether done by attorneys, law clerks, or paralegals.

21.    <u>Market Rates for Non-Monitoring Work</u>.  For the work not subject to the agreed Settlement Order rates (*i.e.*, the work on attorneys' fees matters and the District's motion to waive financial penalties on the MCPs), Plaintiffs request hourly rates under the *Laffey* matrix for 2022-2023 for attorneys and paralegals with Terris, Pravlik & Millian. The *Laffey* matrix is based on a fee schedule for the District of Columbia which has been accepted by this Court and the Court of Appeals for the District of Columbia Circuit. This fee schedule is called the "*Laffey* matrix" because it was first accepted by this Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371-375 (D.D.C. 1983), affirmed, 746 F.2d 4 (D.C. Cir. 1984), overruled in part on other grounds, *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988)(*en banc*). The rates in the *Laffey* matrix were updated by the parties in *Save Our Cumberland Mountains v. Hodel*, *supra*, 857 F.2d at 1525, through May 31, 1989. *Covington v. District of Columbia*, 839 F. Supp. 894, 898, 904, n. 9 (D.D.C. 1993), affirmed, 57 F.3d 1101 (D.C. Cir. 1995), certiorari denied, 516 U.S. 1115 (1996); *Trout v. Ball*, 705 F. Supp. 707, 709, n. 10 (D.D.C. 1989). This fee schedule was accepted by this Court as applicable to the work of Plaintiffs' counsel in this case (*Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000), *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014), and *Salazar v. District of Columbia*, 30 F. Supp. 3d 47, 51-52

(D.D.C. 2014)), and affirmed by the Court of Appeals for the District of Columbia Circuit. *Salazar*

*v. District of Columbia*, *supra*, 809 F.3d at 63-65.

22.     To obtain hourly rates for the work not subject to the agreed Settlement Order rates,

Plaintiffs applied the following methodology.  First, Plaintiffs obtained monthly data for June from

the LSI.  Pl. Ex. 3, p, 1.  Second, Plaintiffs applied the LSI to the updated *Laffey* matrix rates for

each experience level in order to produce a current hourly rate for each experience level.[2]  These

calculations are set forth in Plaintiffs' Exhibit 5.

23.     Under this methodology, the *Laffey* rates applicable during the second half of 2022

and first half of 2023 are:

| Years out of Law School | 6/1/2022-5/31/2023 |
|---|---|
| 20+ | $997 |
| 11-19 | $829 |
| 8-10 | $733 |
| 4-7 | $508 |
| 1-3 | $413 |
| Paralegal | $225 |

24.     Based on information available to me, the LSI *Laffey* Matrix rates are below the

current market rates for complex federal litigation in Washington, D.C.

[2] Specifically, the LSI for June of each year, starting with 1989, was divided by the LSI for the preceding June.  This results in the adjustment factor.  The matrix rates from the preceding year were multiplied by the adjustment factor to get the next year's rates.  For example, the LSI for June 1989 (114.6) was divided by the LSI for June 1988 (107.1).  The result (1.070028) was the adjustment factor for updating rates from the year from June 1, 1988, to May 31, 1989, to the year from June 1, 1989, to May 31, 1990.  Each rate in the June 1, 1988, to May 31, 1989, year was multiplied by the adjustment factor to produce the rate for that experience level for the next year.  For example, multiplication of the 20+ experience level rate ($265) for the period from June 1, 1988, to May 31, 1989, by the adjustment factor (1.070028) gave the rate of $284 for the next year.

25.       Our firm bills paralegal time on its cases in the same manner as attorneys' time.  As a result, we have included paralegal time in the lodestar calculations.  *See Missouri v. Jenkins*, 491 U.S. 274, 284-88 (1989).

26.       In our application, we have also requested reimbursement for the expenses that we incurred.  These are expenses that we would bill to paying clients and that law firms typically charge their clients.  We have not attached the back-up documentation for our expenses because Defendants' counsel has previously informed us that they do not want us to produce the back-up documentation for the expenses relating to fees applications.  Plaintiffs request a total of $573.22 in out-of-pocket litigation expenses incurred in the time period covered in this application.  *See* Pl. Ex. 8.

27.       For the time period covered in this application, we divided the expenses into categories, shown in Plaintiffs' Exhibit 8.  I describe below the expenses included each of the following categories:

(a)       Document Production B&W.  This category includes the cost of black and white printing, photocopying, scanning, and faxing of documents in connection with the case.  Our firm charges 15 cents per page for these types of document production.

(b)       Postage.    This  category  includes  postage  and  delivery  costs  for correspondence with class members.

(c)       Travel Expenses.  This category includes the cost of travel to and from the District of Columbia Court of Appeals for an oral argument.

(d)       Lexis/Westlaw.  This  category  includes  the  cost  of  Westlaw  for  legal research.  These expenses are charged at cost.

28.     For work done for the fourth quarter of 2022, with the billing reductions explained above, Plaintiffs incurred attorneys' fees of $88,362.29 for Terris, Pravlik & Millian, attorneys' fees for co-counsel of $1,260.00, and out-of-pocket expenses of $573.22, for a total of $90,195.51. *See* Pl. Exs. 6-10.  Plaintiffs are entitled to these fees and expenses.  However, in the interest of avoiding litigation, Plaintiffs have agreed to settle the fees and expenses for $76,666.18.

29.     All the work set forth in this fee petition for Terris, Pravlik & Millian was reasonably expended by my firm in representation of the plaintiff class and is directly related to the Settlement Order in the case.  The records will enable me, if necessary, to supplement the description of any of the work or expense categories contained in the time and expense reports. Thus, if the Court requests, I would be pleased to supplement this affidavit or to discuss any category in more detail, including the nature of the work or expense and the amount of time expended or expenses incurred.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 27, 2023.

 */s/ Kathleen L. Millian*
KATHLEEN L. MILLIAN