**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| OSCAR SALAZAR, et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, et al., <br><br> Defendants. | Civil No. 93-452 (TSC) <br> *In Forma Pauperis* |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE JOINT
MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT**

BRIAN L. SCHWALB
Attorney General for the District
  of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General
Civil Litigation Division
HONEY MORTON [1019878]
Assistant Chief, Equity Section
HELEN M. RAVE [90003876]
Assistant Attorney General
400 Sixth Street, NW, Suite 10100
Washington, DC 20001
(202) 735-7520

*Counsel for Defendants the District
  of Columbia, et al.*


KATHLEEN L. MILLIAN, DC Bar 412350
ZENIA SANCHEZ FUENTES, DC Bar 500036
*MOLLY BERNSTEIN, DC Bar 90025167
Terris, Pravlik & Millian, LLP
1701 K Street, NW, Suite 500
Washington, DC 20006-1525
 (202) 682-2100


JANE PERKINS
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308

*Application for D.D.C. Admission Pending*

*Counsel for Plaintiffs*

August 3, 2026

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS.................................................................................................... 1

INTRODUCTION ........................................................................................................... 3

STATEMENT OF FACTS .............................................................................................. 4

    I.      PROCEDURAL HISTORY............................................................................ 4

    II.     SUMMARY OF THE SETTLEMENT ...................................................... 6

            A.     Duration of the Settlement Agreement ......................................... 7
            B.     A New Medicaid Reimbursement Regulation for Medicaid
                 Beneficiaries ................................................................................. 7
            C.     Public Accountability for Delivery of the EPSDT Benefit......................... 8
            D.     Expert Advisors for the District's Provision of the EPSDT Benefit ........ 11
            E.     Child-Health Focused Organizational Grants........................................... 12

LEGAL STANDARD FOR FINAL APPROVAL OF A CLASS ACTION
       SETTLEMENT UNDER FEDERAL RULE 23.................................................... 13

ARGUMENT.................................................................................................................. 14

    I.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE
           SETTLEMENT AGREEMENT ........................................................................... 14

            A.     The Class Representatives and Class Counsel Adequately
                 Represented the Class. .................................................................. 14
            B.     The Settlement Agreement Is a Product of Fair, Arm's-Length
                 Negotiations. ................................................................................. 15
             C.     The Relief Provided for the Class Is Adequate...................................... 16

                 1.     Both Parties Considered the Costs, Risks, and Delay of
                       Proceeding Without a Settlement.................................................. 16

                 2.     The Process for Distributing Relief to the Class Is
                       Effective........................................................................................ 17

                 3.     Defendants Will Pay the Negotiated Attorneys' Fees and
                       Costs of Plaintiffs' Counsel. ......................................................... 17

             D.     Class Members Are Treated Equitably Under the Settlement
                   Agreement...................................................................................... 18

E.      Additional Factors Weigh in Favor of Final Approval Including the Opinion of Experienced Counsel and the Reaction of the Class. ............. 18

CONCLUSION....................................................................................................... 19

**INTRODUCTION**

Plaintiffs and Defendants, the District of Columbia, *et al.*, (together, "the Parties"), jointly move this Court for final approval of the Settlement Agreement, filed as Exhibit A to the Parties' Joint Notice Lodging the Settlement Agreement with the Court (ECF 2506). The Settlement Agreement resolves the open issues in this class action lawsuit and provides an exit strategy for the District of Columbia to end this Court's oversight of various aspects of its Medicaid program for children under age 21 and its Medicaid reimbursement procedures.

Under the terms of the Settlement Agreement, once the Settlement Agreement is finally approved by the Court following notice to the Plaintiff class and the August 13, 2026 fairness hearing, the current Settlement Order (ECF 663), and all associated orders, will be vacated, and the Parties will operate under the Settlement Agreement and the associated Final Approval Order. The Settlement Agreement provides for the Court to retain limited jurisdiction to decide motions to remedy any alleged breach of the Settlement Agreement and attorneys' fees motions. *See* ECF 2506-1, para. 52. If there are no such motions pending on October 31, 2027, the Expiration Date of the Settlement Agreement, the Parties will file a Stipulation of Dismissal of the case with prejudice within fifteen days.

This Settlement Agreement sets forth agreed measures concerning the implementation by the District of Columbia ("the District") of the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) benefit and notice of the benefit to Medicaid enrollees and provides for the promulgation of a District of Columbia regulation memorializing the reimbursement procedures set forth in several Orders of this Court for Medicaid beneficiaries to obtain reimbursement of out-of-pocket expenses that should have been covered by DC Medicaid. The Settlement Agreement also provides guidelines for disbursing the balance of the escrow fund from this case now held by the Clerk of the Court—totaling, as of July 27, 2026, $554,404.49. The escrow funds will be used

to pay a stipend to Medicaid beneficiaries for participation in a new Child-Health Focused Subcommittee within the District's Medicaid Advisory Committee,[1] and to provide grants to local child-serving organizations for projects that benefit the Plaintiff class. In response to a joint motion from the Parties, this Court ordered disbursement of $200,000 of the escrow fund on May 14, 2026, to the National Health Law Program as a fiscal agent for the advising services of two EPSDT Child-Health Advisory Experts. *See* ECF 2527. That work is underway.

The Settlement Agreement is the product of robust, arm's-length negotiations spanning more than two years and provides additional meaningful relief to the Plaintiff class while also facilitating the end of Court oversight. For the reasons set forth below, the Settlement Agreement is fair, reasonable, and adequate, and merits final approval. The Parties, therefore, request that this Court approve the Settlement Agreement.

## STATEMENT OF FACTS

### I.    PROCEDURAL HISTORY

This case has a long history, which the Parties summarize briefly below, as relevant to the proposed Settlement Agreement.

In 1993, Plaintiffs filed this class action against the District to enforce Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, and accompanying regulations, 42 C.F.R. § 430, *et seq.*, and the Due Process Clause of the Fifth Amendment regarding the District's practices and procedures in providing medical assistance to eligible persons under the District's Medicaid program. This Court's certification of the Plaintiff class in 1994 included five subclasses, the fifth

---

[1] The Settlement Agreement refers to the District's Medical Care Advisory Committee (MCAC). However, since the Settlement Agreement was signed, the Medicaid advisory committee has two components that are now called the Medicaid Advisory Committee (MAC) and Beneficiary Advisory Council (BAC).

of which is the EPSDT subclass, defined as children under 21 years of age who are eligible for Medicaid and have claims relating to the lack of EPSDT services or the lack of effective notice about the availability of those services. *See* Order of November 3, 1994, ECF 100.

After a trial, this Court found that the District had violated 42 U.S.C. § 1983 by depriving plaintiffs of their statutory and constitutional rights. *Salazar v. District of Columbia*, 954 F. Supp. 278, 323–35 (D.D.C. 1996). While the Court's judgment was pending on appeal, the Parties entered into a comprehensive Settlement Order that this Court approved in an Order issued on January 22, 1999. Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997 (hereafter "Settlement Order"), ECF 663. The Settlement Order has been modified by consent and as a result of enforcement motions several times between 1999 and 2017. *See, e.g.*, Order of August 8, 2000, ECF 779; Order on Children's Blood Lead Testing and Dental Health, February 28, 2003, ECF 928; Order on Children's Dental Health, October 18, 2004, ECF 1033; Consent Order of April 27, 2009, ECF 1473; Consent Order of August 11, 2014, ECF 2004.

Sections II, III, and IV of the Settlement Order have been terminated by the Court. *See* Minute Order of February 24, 2009; Amended Memorandum Opinion and Order of October 18, 2013, ECF 1886. However, Sections V and VI, which enjoin the District to improve its provision of the EPSDT benefit and notice to the EPSDT class of the benefit, remain in force. Likewise, Section VII concerning reimbursement procedures for Medicaid beneficiaries remains in effect. Related orders enforcing the EPSDT sections of the Settlement Order, namely, the Lead Blood Testing Order (ECF 928) and the Dental Order (ECF 1033), also remain in effect, as do the Reimbursement Procedures Orders (ECFs 550, 617) and the Stipulated Order relating to reimbursement of Medicaid enrollees by managed care plans (ECF 1082). Since the issuance of

the Settlement Order, three different Court-appointed monitors have monitored the District's performance, and the District has provided regular periodic reporting to Plaintiffs and the Court. As provided by the Settlement Order (ECF 663, para. 64), and since its issuance more than 25 years ago, Plaintiffs' counsel have represented hundreds of members of the Plaintiff class, including the EPSDT subclass, in individual matters relating to appropriate procedures for terminating Medicaid, reimbursement requests, and required EPSDT services under the Settlement Order.

At the Parties' request, this Court referred the case to mediation in December 2022 and ordered that regular status reports be provided by the Parties. The Parties engaged in more than two years of mediated settlement negotiations and moved for preliminary approval of their Settlement Agreement on October 31, 2025. *See* ECF 2506. This Court preliminarily approved the Settlement Agreement on May 1, 2026, and set a fairness hearing for August 13, 2026. *See* ECF 2522.

## II.    SUMMARY OF THE SETTLEMENT

The Settlement Agreement (ECF 2506-1) includes changes to the District's policies, practices, and procedures related to specific aspects of the EPSDT benefit and requires the District to memorialize in a District of Columbia regulation the procedure for the reimbursement of Medicaid beneficiaries for out-of-pocket expenses that should be covered by DC Medicaid. Additionally, the Parties have agreed to processes that will deploy the balance of the escrow funds to provide grants to child-health focused projects benefiting the Plaintiff class, to hire expert advisors to assist the District in continuing to improve the delivery of the EPSDT benefit, and to offer stipends for community participation by Medicaid beneficiaries in a Child-Health Focused Subcommittee of the District's Medicaid Advisory Committee.

If the Settlement Agreement is approved by the Court, the Parties have agreed that the Court will also vacate the Settlement Order (ECF 663) and all ancillary orders in the case. *See* Proposed Order Granting Final Approval of the Settlement Agreement and Disbursing Escrow Funds.

The following is a summary of the material terms of the Settlement Agreement.

### A.    Duration of the Settlement Agreement

The term of the Settlement Agreement is two years from the date of the Parties' execution of the agreement, through October 31, 2027. ECF 2506-1, para. 51. The Court retains jurisdiction to adjudicate any motions alleging breach of the Settlement Agreement throughout its term. *Id.*, para. 52. The Parties have further agreed that if there is a pending motion to enforce the Settlement Agreement on the date that the Settlement Agreement terminates, then the termination of the Settlement Agreement does not affect the Court's jurisdiction to adjudicate the pending motion(s), order appropriate relief, and, if relief is granted, ensure compliance with any resulting order(s). *Id.*, paras. 51-52.

### B.    A New Medicaid Reimbursement Regulation for Medicaid Beneficiaries

The Settlement Agreement requires that, within six months of the Effective Date of the Settlement Agreement, the District issue a regulation formalizing the process that is set forth in orders of this Court in this case (ECFs 550, 617, 663, 1082) for Medicaid beneficiaries to seek reimbursement for expenses they have incurred for medically necessary services, supplies, or equipment that should have been covered by DC Medicaid. ECF 2506-1, para. 8. The District issued the final regulation on April 10, 2026, after a period of public comment on its proposed regulation. *See* 29 DCMR § 933. The reimbursement regulation applies to all DC Medicaid

7

beneficiaries and extends the time frame for Medicaid beneficiaries to submit a reimbursement request from six months to one year from the date of service. *Id.*[2]

### C.    Public Accountability for Delivery of the EPSDT Benefit

The Settlement Agreement requires the District to take actions designed to further bolster long-term public accountability for its provision of the EPSDT benefit. In accordance with the Settlement Agreement, the District has revised its Medicaid HealthCheck Periodicity Schedule for fluoride varnish and lead testing requirements to align with currently applicable guidance. ECF 2506-1, paras. 4-6.[3] On a semi-annual basis, the District will collect and monitor the results of audits conducted by Managed Care Plans (MCPs) to ensure compliance with their contractual obligations to meet children's appointment wait-time standards. *Id.*, para. 15. Separately, for any MCPs with appointment wait-time metrics that fall below 90% compliance, as reported in the District's External Quality Review Organization Annual Technical Report, the District will require the development and implementation of a corrective action plan. *Id.*, para. 16.

Pursuant to the Settlement Agreement, the District requested on April 29, 2026, that a new billing code be added to the District's fee schedule for services covered by Medicaid. If approved,

---

[2] In one respect, the Parties dispute whether the regulation meets the standards "outlined in" this Court's previous reimbursement orders, as the Settlement Agreement requires, *see* ECF 2506-1, para. 8, which protects the rights of Medicaid beneficiaries who have to pay out of pocket for services or supplies that Medicaid should have covered. Plaintiffs invoked the Settlement Agreement's dispute resolution process with the mediators in this case, *see id.*, para. 54, in an attempt to resolve the dispute. The Parties remain in mediated negotiations and, if the dispute is not resolved, Plaintiffs reserve the right to take appropriate next steps under paragraph 55 of the Settlement Agreement.

[3] The periodicity schedule, with changes made pursuant to paragraphs 5 and 6 of the Settlement Agreement in footnotes 10, 24, and 25, is available online at https://www.dchealthcheck.net/documents/DC-HealthCheck-Periodicity-10-2025-FINAL.pdf (archived here on April 17, 2026).

the new billing code would allow providers to bill for point-of-care blood lead testing of children. ECF 2506-1, para. 14.

Within 12 months of the Effective Date, the District will create a Child-Health Focused Subcommittee within its Medicaid Advisory Committee that will include Medicaid beneficiaries who are parents or guardians of children eligible for the EPSDT benefit and is mandated to discuss major proposed changes to EPSDT policies and to meet at least six times per year. ECF 2506-1, paras. 17-18. The Settlement Agreement emphasizes beneficiary involvement in the subcommittee by utilizing a $10,000 portion of the escrow funds for $75 per meeting stipends for Medicaid beneficiaries who attend the Child-Health Focused Subcommittee and by ensuring that beneficiary participation is included in the subcommittee's mission statement and its recurring agendas. *Id.*, paras. 18, 21.

Beginning in Calendar Year 2026, the District has begun to implement and oversee a District-guided value-based purchasing (VBP) program focused in part on the delivery of EPSDT services under the District's Medicaid managed care program. The District's VBP program[4] requires MCPs to develop and implement agreements with pediatric providers and recommends that such agreements include measures related to well child visits, preventive services such as blood lead level testing and immunizations, and preventative and diagnostic dental services. ECF 2506-1, para. 30. The District has agreed to publish an annual report that will disclose the number of VBP arrangements across MCPs and include additional details about the quality measures and performance, with the first report to be published by September 30, 2027. *Id.*, para. 33.

---

[4] The VBP Framework is available online at
https://dhcf.dc.gov/sites/default/files/dc/sites/dhcf/page_content/attachments/DC%20ValueBased
%20Purchasing%20%28VBP%29%20%20Framework%202026-2030_0.pdf (archived here on
July 27, 2026).

To better equip EPSDT beneficiaries and their families to make decisions about their care, the District has and will continue to publish a public-facing annual MCP Child-Health Focused Report Card and a webpage that centralizes the Department of HealthCare Finance's data reports related to managed care, and will publish a Medicaid Managed Care Performance Dashboard. The Report Card will provide timely information comparing the MCPs' performance on child-health specific measures spanning issues of access to care, staying healthy, and common chronic conditions. ECF 2506-1, paras. 22-24. The first Report Card under the Settlement Agreement was published on May 27, 2026.[5] The webpage describes the District's managed care program, provides links to the MCP contracts, and centralizes the agency's MCP-related data reports.[6] ECF 2506-1, para. 26. The MCP Performance Dashboard itself, to be published within 12 months of the Settlement Agreement's Effective Date, will display annual data on selected child-health specific performance measures, including each MCP's percentage of timely prior authorization decisions (*see* D.C. Code § 31-3875.03) and timely resolution of grievances (*see* 42 C.F.R. § 438.408). ECF 2506-1, para. 27.

The Settlement Agreement also requires that the District continue taking a number of actions that are required by the Settlement Order. These include notifying families about the EPSDT benefit at least once a year by sending annual EPSDT and dental brochures to beneficiaries, monitoring beneficiary outreach by MCPs, issuing three child-health related transmittals each year to Medicaid providers, publishing annually the CMS 416 data specific to

---

[5] The Report Card is available online at
https://dhcf.dc.gov/sites/default/files/dc/sites/dhcf/page_content/attachments/DCMedicaid_MCP Childrens_Report_Card_w%20MCP%20Details%20%202026%20%281%29%20%281%29.pdf (archived here on July 27, 2026).

[6] The Webpage is available online at https://dhcf.dc.gov/page/medicaid-reports (archived here on July 27, 2026).

each MCP, requiring pediatric providers who serve the DC Medicaid population to be trained on the EPSDT benefit at least every three years, and maintaining a dental periodicity schedule that complies with the American Dental Association and the American Academy of Pediatric Dentistry recommendations. ECF 2506-1, para. 49.

### D.    Expert Advisors for the District's Provision of the EPSDT Benefit

The Settlement Agreement provides up to $200,000 for two nationally recognized child-health experts, Kay Johnson and Sara Rosenbaum, to advise the District on improvements to its delivery of the EPSDT benefit. ECF 2506-1, para. 39; *see also* ECFs 2507-2, 2507-3 (CVs of Johnson and Rosenbaum). In response to a joint motion from the Parties, this Court ordered the disbursement of $200,000 of the escrow fund on May 14, 2026, to the National Health Law Program as a fiscal agent. *See* ECF 2527. The scope of work of the experts includes an environmental scan of the health care landscape for children covered by Medicaid, a review of District data on key measures of child-health care quality, focus group research and interviews with beneficiaries, and a final report with recommendations for improving the delivery of the EPSDT benefit in the District. ECF 2506-1, paras. 40–41.

In addition, the Settlement Agreement provides $100,000 to fund a study of participant-directed services for children with high medical needs that will review programs that other state Medicaid agencies have implemented to provide participant-directed services for children. Participant-directed services would allow families to designate individuals who are not certified nursing aides to serve as home health care workers for their child with special needs when a certified nursing aide is not available to care for the child. The study will culminate in a final report that will be public and will include a review of the options available to states to implement participant-directed services; and what, if any, special circumstances the District would need to

11

consider before implementing a participant-directed services program for children. ECF 2506-1, paras. 43–44.

### E. Child-Health Focused Organizational Grants

Under the Settlement Agreement, the Parties agree to allocate approximately $338,000 of the *Salazar* Escrow Fund in organizational grants for projects that benefit the Plaintiff class. ECF 2506-1, para. 45.[7] The grant opportunity will be available to a designated group of District-based organizations with individual project budgets for one-year grants ranging from $50,000 to $200,000 for projects that address the unmet needs of DC Medicaid-eligible children and adolescents under age 21, support the District's Medicaid-eligible child and adolescent-serving healthcare workforce, empower and educate Medicaid beneficiary families and caregivers, and improve delivery and quality of child-health services. *Id*., paras. 45–46.

*    *    *

On December 1, 2025, the Parties filed their Joint Motion for the Disbursement of the Balance of the *Salazar* Penalty Escrow Fund to Fiscal Agent (ECF 2508). On May 1, 2026, the Court directed the Parties in a Minute Order to show cause "why such an order is not premature at this juncture and otherwise indicate why their motion should not be stayed pending final approval of the Settlement Agreement." The Parties filed their response and moved alternatively for the Court to disburse the funds for the two EPSDT Advisory Experts. ECF 2526. The Court granted the alternative motion and disbursed $200,000 for the EPSDT Advisory Experts. ECF 2527. The Parties now request that the Court order disbursement of the remainder of the escrow funds as part of its final approval of the Settlement Agreement.

---

[7] This amount will increase if the other projects funded as part of the Settlement Agreement (the Expert EPSDT Advisory projects and the stipend for Medicaid beneficiaries serving on the child-health subcommittee of the MAC) do not expend all of the funds allocated to them.

12

**LEGAL STANDARD FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT
UNDER FEDERAL RULE 23**

For the Court to grant final approval of a settlement of a class action, such as the one presented here that binds class members, it must conduct a fairness hearing and find "that [the settlement] is fair, reasonable, and adequate" after consideration of the following four factors:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). *See also* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:39 (6th ed. 2023).

Final approval of the proposed class action settlement lies within the discretion of the court. *See United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996). "The exercise of this discretion, however, is constrained by the 'principle of preference' favoring and encouraging settlements in appropriate cases." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999)). In addition, to protect the rights of absent class members, "the court is said to have a 'fiduciary duty' toward absent class members in assessing the fairness of a proposed settlement and the reasonableness of class counsel's fees." 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:40 (6th ed. 2023). *See also Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 193 (D.D.C. 2017).

**ARGUMENT**

## I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

All four factors under Rule 23(e)(2) weigh in favor of the conclusion that the proposed Settlement Agreement is fair, reasonable, and adequate. The Court should therefore grant final approval of the Settlement Agreement.

### A.    The Class Representatives and Class Counsel Adequately Represented the Class.

Adequate class representation "embraces two components: the class representative (i) must not have antagonistic or conflicting interests with the unnamed members of the class and (ii) must appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019) (en banc) (internal quotations omitted).

Here, there are no conflicting interests between class representatives and absent members of the class. Plaintiffs' counsel has maintained close contact with hundreds of EPSDT subclass members over the past 27 years through the individual representation permitted under the Settlement Order.

Likewise, class counsel has adequately represented the class throughout the lengthy litigation of the case and in the settlement negotiations. The experienced and dedicated lawyers from Terris, Pravlik & Millian, LLP and the National Health Law Program (NHeLP) participated in every mediation session over the course of more than two years. These lawyers have extensive experience litigating complex civil rights class action lawsuits in federal court. In addition, the long-running individual representation carried out by these lawyers—and their resulting familiarity with continued child-health issues—informed the negotiations and settlement process. Further, class counsel continues to be committed to providing all necessary resources to litigate this matter and "fairly and adequately represent the interests of the class," Fed. R. Civ. P.

14

23(g)(l)(B), throughout the settlement term, as they have done in the more than three decades of litigating this case.

**B.      The Settlement Agreement Is a Product of Fair, Arm's-Length Negotiations.**

Courts evaluate whether the settlement negotiations were "conducted fairly and without any undue pressure" as part of the process to determine if the settlement is the product of a fair, arm's-length negotiation. *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 487 (D.D.C. 2019). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49, 55 (D.D.C. 2008) (internal citations omitted).

Here, the Parties reached the terms of the Settlement Agreement after more than two years of detailed negotiations between experienced counsel. Further, the extensive mediation process commenced after more than three decades of litigation between the Parties and nearly three decades of the District reporting to and being monitored by this Court, the Court Monitors, and Plaintiffs. The negotiations that resulted in the Settlement Agreement were fair and involved no undue pressure. With the guidance of skilled mediators, the Parties exchanged dozens of written proposals and responses that culminated in the Settlement Agreement now being proposed to the Court for its approval. At times, upon Plaintiffs' request, the mediation sessions included District representatives who provided additional information necessary to evaluate the proposed settlement terms.

The mediation process under the oversight of the Court-appointed mediators was thorough and fair, and the resulting Settlement Agreement is the product of arm's-length negotiations between the Parties. Therefore, a presumption of fairness, adequacy, and reasonableness should apply, and this factor weighs in favor of final approval.

C.    **The Relief Provided for the Class Is Adequate.**

1.    **Both Parties Considered the Costs, Risks, and Delay of Proceeding Without a Settlement.**

"Under this factor, courts typically compare[] the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case." *Kinard v. East Capitol Family Rental*, 331 F.R.D. 206, 215–16 (D.D.C. 2019) (internal citation and quotations removed); *see also* Manual for Complex Litigation § 21.62 (4th ed. 2004) (explaining that the "[r]easonableness [of a settlement agreement] depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims"). Although a failure to reach settlement in this case would lead to briefing on a motion to vacate the Settlement Order, rather than a trial and possible appeal, this factor calls for evaluating the costs, risks, and delay of proceeding without an agreement between the Parties. This factor has been called "the most important factor" a court considers when evaluating a proposed settlement, *see, e.g.*, *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 8 (D.D.C. 2006), and the D.C. Circuit has stated that analyzing this factor is the court's "primary task" in evaluating a proposed class settlement. *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998).

In light of the Court's strong indication that the case should conclude after more than three decades of litigation, the Parties ultimately have agreed that it is in the interest of both the Plaintiff class and the District to enter into the Settlement Agreement. It is in the best interests of the Plaintiff class to obtain commitments from the District to improve its provision of the EPSDT benefit as it transitions away from Court oversight, to secure mechanisms that ensure longer term public accountability about the EPSDT program, and to memorialize the Medicaid reimbursement

16

process in a regulation. For the District, it is in its best interests to obtain certainty as to the end of Court oversight in this case.

### 2.    The Process for Distributing Relief to the Class Is Effective.

The Plaintiff class was certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure (ECF 92, p. 6) and sought only injunctive relief. Likewise, the Settlement Agreement only includes terms that implement injunctive relief and provides no individual relief to class members. Therefore, the factor concerning the effective distribution of relief to class members is not applicable here. *See C.K. through P.K. v. McDonald.*, 816 F.Supp.3d 284, 310 (E.D.N.Y. 2026) ("Because the relief provided by the Settlement Agreement is equitable in nature and will be effectuated by the settlement terms alone, the effectiveness of any proposed method of distributing relief to the class need not be considered as a separate issue." (internal quotation omitted)). The Settlement Agreement also proposes distribution of the *Salazar* escrow fund for the benefit of the Plaintiff class. *See* Memorandum Order of April 27, 2010, ECF 1582. The uses of the escrow fund—the Medicaid advisory subcommittee stipends for beneficiaries, expert advisors to help improve the District's EPSDT benefit, and grants to child-serving organizations—benefit the EPSDT subclass as a whole. Additionally, the Parties have agreed that NHeLP will serve as the Fiscal Agent to disburse the escrow funds in accordance with agreed-upon procedures. *See* Statement of Responsibilities of the Fiscal Agent, ECF 2506-2.

### 3.    Defendants Will Pay the Negotiated Attorneys' Fees and Costs of Plaintiffs' Counsel.

For the monitoring of the District's compliance with the Settlement Agreement through October 31, 2027, the Parties have negotiated that the District will pay Plaintiffs' attorneys $70,000. ECF 2506-1, para. 66. For the period prior to the Court's final approval of the Settlement Agreement and vacation of the Settlement Order, Plaintiffs' counsel will continue to submit to the

17

District, pursuant to paragraph 67 of the Settlement Order, as modified by Order of March 19, 2013 (ECF 1801), their reasonable time and expenses for work conducted under the terms of the Settlement Order. ECF 2506-1, para. 64, citing the Settlement Order, ECF 663, paras. 64–67. Any motion for Plaintiffs' fees and expenses incurred prior to final approval of the Settlement Agreement that has not been submitted by the date of the approval will be submitted to the Court following final approval, in accordance with Rule 23(h) of the Federal Rules of Civil Procedure.

### D. Class Members Are Treated Equitably Under the Settlement Agreement.

The overarching principle for this factor is "to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed. 2023). The injunctive relief provided for in the proposed Settlement Agreement applies uniformly to all members of the EPSDT subclass and all Medicaid beneficiaries seeking reimbursement for out-of-pocket expenses that should have been covered by Medicaid. There are no potential conflicts among these class members, because there is no differential treatment between different class members or groups of class members. For these reasons, this factor weighs in favor of final approval.

### E. Additional Factors Weigh in Favor of Final Approval Including the Opinion of Experienced Counsel and the Reaction of the Class.

Courts in this circuit also generally consider the opinion of experienced counsel and the reaction of the class in determining whether to grant final approval to a proposed settlement agreement. *See Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 5 (D.D.C. 2008) (citing *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104). The "[o]pinion of [] experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a

18

proposed settlement." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. Civ. 99-0790 (TFH), 2003 WL 22037741 at *6 (D.D.C. June 16, 2003) (internal citations omitted).

Here, counsel for the Parties represent that they believe the Settlement Agreement is fair, reasonable, and adequate. Further, the Plaintiff class was provided notice of the settlement. *See* Joint Report to the Court, July 30, 2026, ECF 2532. In accordance with Rule 23(c)(2)(B), this Court found that the notice was "the best notice practicable under the circumstances." Order of Preliminary Approval, ECF 2522, p. 3. The requirement to "provide the Class Notice by email or text to class members for whom the District and/or Managed Care Plans (MCPs) have contact information," (*id*., p. 3) meets the Rule 23 requirement to provide "individual notice to all members who [could] be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As of the deadline for objections to the Settlement Agreement by class members of July 30, 2026, the Parties have not received any written objections. Therefore, both additional factors weigh in favor of approval.

Finally, counsel for the Parties represent that there are no other agreements made in connection with the Settlement Agreement. Fed. R. Civ. P. 23(e)(3); *see* ECF 2506-1, para. 73 ("This Agreement represents the entire agreement between the Parties concerning the matters set forth and supersedes all prior discussions, negotiations, understandings, and agreements between the Parties relating to the subject matter of this Agreement, whether oral or written.").

## CONCLUSION

For the foregoing reasons, the Court should grant final approval of the Settlement Agreement and order the disbursement of the remainder of the escrow funds to the fiscal agent. The Parties jointly request that the Court enter the attached proposed order granting final approval of the Settlement Agreement and disbursing the funds.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District
   of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section
HELEN M. RAVE [90003876]
Assistant Attorney General
400 Sixth Street, N.W., Suite 10100
Washington, D.C.  20001
(202) 735-7520
helen.rave@dc.gov

*Counsel for Defendants the District*
   *of Columbia, et al.*


August 3, 2026

/s/ *Zenia Sanchez Fuentes*

KATHLEEN L. MILLIAN, DC Bar 412350
ZENIA SANCHEZ FUENTES, DC Bar 500036
*MOLLY BERNSTEIN, DC Bar 90025167
Terris, Pravlik & Millian, LLP
1701 K Street, NW, Suite 500
Washington, DC 20006-1525
 (202) 682-2100


JANE PERKINS
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308

**Application for D.D.C. Admission Pending*

*Counsel for Plaintiffs*

20